UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------X

ABRAHAM and MINA REMBAUM, *et al*,

        Plaintiffs,

vs.

BANCO SANTANDER, S.A., BANCO SANTANDER INTERNATIONAL, OPTIMAL INVESTMENT SERVICES, S.A., and JONATHAN CLARK,

        Defendants

---------------------------------X

No. 10-CIV-4095 (SAS)

## DECLARATION CONCERNING BAHAMIAN LAW PURSUANT TO FED. R. CIV. P. 44.1

Robert H.T. Hildyard, pursuant to 28 U.S.C. § 1746, declares the following:

### I. Qualifications

1. I am an English Barrister and a member of the Chambers of Mr George Bompas QC, 4 Stone Buildings, Lincoln's Inn, London, England. I was called to the Bar of England and Wales by the Inner Temple in 1977. I specialise in company law and commercial litigation, and I have been involved in cases in those fields since I commenced practice as a barrister in 1978.

2. Between 1992 and 1994 I was one of three Counsel on a Panel of Standing Counsel to the Crown in Chancery matters, having particular responsibility in that context for advising the Department of Trade & Industry on company law matters. In 1994 I was appointed Queen's Counsel. In 2001 I was appointed a Deputy Judge of the High Court of England and Wales, sitting (part time) in the Chancery Division (the division in the High Court which deals with, among other things, company law disputes).

3. In connection with my practice I have served on the Company Law Steering Group reporting to the Department of Trade & Industry, advising on the review and substantial revision of UK company law. This particularly included a review of the rules governing shareholder claims, derivative actions and the principle of reflective loss, with which this Declaration is substantively concerned. I am a consulting editor of a two-volume guide to the ensuing legislation (the Companies Act 2006) published by the Oxford University Press, entitled *Annotated Companies Acts*. A revised paperback edition has just been published. Between 2002 and 2008 I served as a member of the Financial Reporting Review Panel, a body established by the UK Government to examine the annual accounts of public and large private companies to see whether they comply with statutory requirements

4. In 2006 I was appointed Attorney-General to the Duchy of Lancaster, an ancient possession of the English Crown: this too is a part-time appointment and involves advising the Government Minister responsible to H.M. the Queen in relation to that ancient possession, including issues of corporate governance. I was also appointed to be a Bencher of Lincoln's Inn, which is to say that I am on its governing body.

5. I am able to provide expert evidence about the company law of the Bahamas because the Bahamian legal system is based on principles of English common law and its company legislation is largely based on or derived from UK legislation. The Courts of the Bahamas treat the decisions of the English Courts as authoritative; and the Privy Council in London (which occasionally now sits in the Bahamas) is the final court of appeal for the Bahamas. I have been called to the Bahamian Bar to appear in the Courts there in individual cases on a number of occasions. One such occasion was the trial of the proceedings in a dispute relating to a fund called the Oracle Fund; one of the issues in that case concerned the principle of reflective loss, with which this case is concerned. I have also appeared in cases on Bahamian law in the Privy Council, both in London and in Nassau.

## II. The Scope of this Declaration

6. I have been instructed as an expert witness in the above-captioned matter by U.S Counsel for Banco Santander, S.A., Banco Santander International, Optimal Investment Services, S.A., and Jonathan Clark (collectively, the "Santander Defendants").

7.      I approach my task on the basis that it is my duty to assist the Court on matters within my expertise, and that this duty is paramount and overrides any obligation to those instructing and/or to those responsible for paying me my fees

8.      The claims or counts within the Complaint that I have been asked to consider from the point of view of Bahamian law are Counts 5 to 7, 9 to 10, and 15.

9.      Counts 5 to 7 and 15 are claims against various Santander Defendants for damages premised on the existence and breach of an enforceable duty, whether of care or fiduciary, in respect of their management of the assets of the Optimal Funds, namely two Bahamian bodies corporate Optimal Strategic U.S. Equity Ltd. and Optimal Arbitrage Ltd. Both such bodies corporate are wholly owned by a third Bahamian body corporate namely Optimal Multiadvisors Ltd., in which the Plaintiffs and the Class invested as shareholders Count 9 is a third-party claim seeking damages for breach of the Investment Management Agreement between Optimal and the funds at issue. Count 10 is an unjust enrichment claim seeking restitution and the establishment of a constructive trust of any benefits or other compensation obtained by the Santander Defendants from their (allegedly) wrongful or inequitable conduct and breaches of fiduciary duty.

10.     In this Declaration I address the following issues:

   (1) whether a shareholder of a Bahamian body corporate may bring a claim in respect of loss or damage sustained by that body corporate in consequence of some default or breach of duty owed to that body corporate;

   (2) whether a shareholder in such a body corporate may recover damages or compensation for any diminution of the value of his shares in consequence of some default or impropriety in the conduct and management of its business or affairs

### III. Review of Relevant Bahamian Legal Principles

11.     My analysis assumes the application of Bahamian law. Although the Second Amended Class Action Complaint (the "Complaint") asserts claims under or pursuant to New York law, it is established in England that the law of incorporation governs the relationship of

the company and its shareholders, including the question whether a shareholder has a right to claim in respect of wrongs to a company: *Konamaneni and Others v Rolls-Royce Industrial Power (India) Ltd.* [2002] 1 BCLC 336, especially at paras [45] to [50]. The Judge in that case, Lawrence Collins J., is now (as Lord Collins) a Justice of the UK Supreme Court (which replaced the House of Lords as the U.K.'s highest Court in October 2009). In my opinion, the same analysis and conclusion would be adopted in the Bahamas. I understand that the law of incorporation of the Optimal Funds and Optimal Multiadvisors Ltd. is the law of the Bahamas

12   In my opinion, the pleas in the Complaint which assert that a fiduciary duty and duty of care were directly owed to the Plaintiffs by the Santander Defendants in respect of their management and direction of the Optimal funds at issue do not disclose any basis for any such duty and would, in terms of Bahamian law, be misconceived. Furthermore, even if such a duty could be established, any claim to enforce it by way of monetary damages or compensation for its breach would offend against the rule precluding recovery by a shareholder in a corporation of "reflective" loss (that is to say, loss in consequence (or reflective) of loss to that corporation.

### A. Whether a Shareholder May Sue in Respect of a Wrong Done to the Company

13   It is a well-established principle of English and Bahamian company law that a shareholder has not the right or standing to sue in that capacity in respect of a wrong done to the company The proper legal person to vindicate such a wrong or a breach of duty (of whatever nature) to the company is that company itself.

14.   That is because, in the event of a breach of duty to the company or some other actionable wrong against the company, the legal right of redress is the property of the company, and it is for the company to vindicate the injury to its own property or prospects Any loss to a shareholder is a consequence of that injury to the company: it is not direct. It is the company, not the shareholder, that is vested with a cause of action; and the shareholder has no direct cause of action either to remedy the wrongful act or for loss sustained in consequence of the diminution in value of his shareholding.

15.   This basic principle, that the proper plaintiff in an action to seek redress for a wrong done to the company is the company itself, is usually referred to as the *Rule in Foss v*

*Harbottle*. The case from which the Rule takes its name was decided in the U.K.'s highest Court (the House of Lords) in 1843: so the rule is almost as old as company law itself.

16. Indeed, the *Rule in Foss v Harbottle* can be seen as the inexorable consequence of the fundamental principle of company law, that a company is a legal entity separate and distinct from its shareholders, and its property belongs to the company and not to its shareholders. Its property includes any legal chose of action, and (subject to paragraph 19 below) it is the company alone which can sue (and see *per* Lord Millett in *Johnson v Gore Wood & Co (a firm)* [2002] 2 AC 1 at 61). It also follows that it is for the company, acting through its proper organ (usually its board of directors), to decide whether or not to pursue any claim, and not for individual shareholders.

17. There is an exception to the *Rule in Foss v Harbottle* where the company's proper organ is demonstrated to be improperly frustrating a *prima facie* valid claim of realisable value to the company. In tightly restricted circumstances, the Court may allow shareholders to sue in right of the company if otherwise the *Rule in Foss v Harbottle* would be an engine for the misuse of majority power. This procedural device is known in England and the Bahamas, as in the U.S., as a "derivative action".

18. However, the onus is on the putative derivative claimant to show *prima facie* proof that the proceedings are in the interests of the company and the company is being improperly prevented from bringing a claim that it is in its interests to pursue. In that context, the Court will not gainsay the decision of the company's proper organ unless it is persuaded that decision is not one which a reasonable and independent board could have made in good faith and improper, or that it constitutes a fraud on the minority of shareholders (in the wider sense equated with an abuse of misuse of majority power).

19. The restrictive rules relating to derivative actions are complex and controversial. In England they have recently been codified (and in that process substantially changed to give the Court far more control of a derivative claim); in the Bahamas they remain rooted in common law. But I do not see there is any present need or justification for delving into them now: the simple fact is that the Complaint is not couched, and it is at least doubtful that it could ever be couched, as a derivative claim: indeed the Complaint is framed in a way entirely inconsistent with a derivative claim. A derivative claim would require the joinder of the Optimal funds and Optimal Multiadvisors Ltd. and indeed would (at least in part) have to

be "double derivative" in form (which though logically possible is, so far as I am aware, unprecedented in the Bahamas). Far from asserting such a claim, the Complaint particularly emphasises that none of the Optimal funds or Optimal Multiadvisors Ltd. is intended to be a party.

20. For present purposes, the point is that the claims in the Complaint premised on either a breach of duty to the company (of whatever nature) or seeking to vindicate a breach of such a duty owed to the company are misconceived in terms of Bahamian law.

21. For comprehensiveness, I should perhaps emphasise that the *Rule in Foss v Harbottle* applies to any causes of action vested in the company, and is not restricted to claims against that company's officers or directors. The Rule is triggered whenever the claim is an asset of the company: only the company may assert it, and only the company's constitutional organs may decide whether to do so (with the sole exception of the procedural device of a derivative action as described in paragraphs 17 and 18 above).

22. It should also be noted that the *Rule in Foss v Harbottle* applies, in my opinion, to a Bahamian company regulated by the Investment Funds Act of 2003 (the "IFA") and its accompanying regulations just as it applies to a Bahamian company not so regulated. In my opinion, nothing in the IFA or the regulations issued pursuant thereto creates, either explicitly or implicitly, a parallel fiduciary duty owed directly to shareholders and running along side and in potential competition with the contractual obligations owed between the corporate entity concerned and its service providers

### B.  Whether a Shareholder May Sue for Damage to His Shareholding

23. A further aspect or consequence of the *Rule in Foss v Harbottle*, which may be apparent from what I have already said, is that under English and Bahamian law (in the absence of express statutory provision) a shareholder cannot recover damages or compensation merely because the company in which he is interested has suffered damage. He cannot recover a sum equal to or measured by the diminution in the value of his shares, or equal or to reflect the likely diminution in dividend, because such a "loss" is merely reflective of or parasitic upon the loss suffered by the company. Put another way, if the company is restored, the shareholder's loss will be made good.

24. This has come to be known as the "reflective loss principle"; but it is really a logical corollary of the *Rule in Foss v Harbottle* itself, as explained by the English Court of Appeal in *Prudential Assurance Co. Ltd. v Newman Industries Ltd. (No 2)* [1982] Ch 204, and further elaborated in a sequence of cases in England starting with *Johnson v Gore Wood* [2002] 2 AC 1 (in the House of Lords)

25. By way of further explanation, the reflective loss principle extends the *Rule in Foss v Harbottle* to preclude claims by shareholders, even if they would otherwise have a direct right of action where the company also has a right of action which if successful would make good the shareholder's own loss: and see especially *Johnson v Gore Wood* [2002] 2 AC 1 at 35 (*per* Lord Bingham) and 62 (*per* Lord Millett).

26. To quote Lord Bingham:

> "Where a company suffers loss caused by a breach of duty owed to it, only the company may sue in respect of that loss. No action lies at the suit of a shareholder suing in that capacity and no other to make good a diminution in the value of the shareholder's shareholding where that merely reflects the loss suffered by the company. A claim will not lie by a shareholder to make good a loss which would be made good if the company's assets were replenished through action against the party responsible for the loss, even if the company, acting through its constitutional organs, has declined or failed to make good that loss."

27. Then to quote Lord Millett:

> "If the shareholder is allowed to recover in respect of such loss, then either there will be double recovery at the expense of the defendant or the shareholder will recover at the expense of the company and its creditors and other shareholders. Neither course can be permitted. This is a matter of principle; there is no discretion involved. Justice to the defendant requires the exclusion of one claim or the other; protection of the interest of the company's creditors requires that it is the company which is allowed to recover to the exclusion of the shareholder ... the principle applies even where the loss is caused by a wrong actionable at the suit of the shareholder personally."

28. The Court of Appeal in England has held that the principle applies to a claim by a shareholder in his capacity as a creditor, as well as to any claim in common law or equity whether for damages or compensation: see *Gardner v Parker* [2004] 2 BCLC 554.

29. It follows that even if a shareholder can show a parallel duty owed to him in respect of a breach of duty resulting in loss or damage to his company, the shareholder's claim is trumped and excluded by the principle of reflective loss.

30. Accordingly, so far as the claims in the Complaint assert and seek compensation or damages in respect of losses or a diminution, shortfall or want of assets in the company, the only proper plaintiff according to Bahamian law is that company, and the shareholder has no claim since if the company is made good the shareholder is likewise.

## IV. Conclusion

31. For all these reasons, if treated as governed by Bahamian law and analysed and assessed according to that law, all the Counts which I have to been asked to address comprise claims (whether for breach of fiduciary duty, negligence (gross or otherwise), unjust enrichment or third party breach of contract) that in my opinion could only be brought by or in right of the companies concerned and not by the Plaintiffs or the Class. The *Rule in Foss v Harbottle* and its concomitant rule precluding recovery of reflective or parasitic loss dictate this result. It follows, in my opinion, that in terms of Bahamian law such counts or claims are, at the suit of the Plaintiffs and the Class, misconceived.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on the 22 of December 2010.

*[signature]*
ROBERT H T HILDYARD QC
4 Stone Buildings
Lincoln's Inn
London

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on December 30, 2010, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a Notice of Electronic Filing to counsel of record listed below:

Edward W. Miller, Esq.
648 Franklin Avenue, 2nd Floor
Garden City, New York 11530
*Counsel for Plaintiffs*

                                                      /s/ Paulo R. Lima
                                                      For Hunton & Williams LLP