UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE OPTIMAL U.S. LITIGATION

No. 10 Civ. 4095 (SAS)

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO
DISMISS CERTAIN FEDERAL SECURITIES FRAUD CLAIMS IN FOURTH
AMENDED CLASS ACTION COMPLAINT**

Shawn Patrick Regan
**HUNTON & WILLIAMS LLP**
200 Park Avenue
New York, NY 10166
Telephone:  (212) 309-1000
Facsimile:  (212) 309-1100
Email:      sregan@hunton.com

- and -

Samuel A. Danon (admitted *pro hac vice*)
Gustavo J. Membiela (admitted *pro hac vice*)
Paulo R. Lima
**HUNTON & WILLIAMS LLP**
1111 Brickell Avenue, Suite 2500
Miami, FL  33131
Telephone:  (305) 810-2500
Facsimile:  (305) 810-2460
Email:      sdanon@hunton.com
Email:      gmembiela@hunton.com
Email:      plima@hunton.com

*Counsel for Defendants Banco Santander, S.A., Banco
Santander International, Optimal Investment Services,
S.A., and Jonathan Clark*

Dated:  July 5, 2011

**Table of Contents**

Page

Table of Authorities ...................................................................................................... i

I.    Count 11 Fails to State a Claim Against Any Defendant Based on Statements in The
      Multiadvisors EMs, Because None Was the Maker of The Statements Therein. ................... 1

      A.    *Janus* Rejects Plaintiffs' Contention That Optimal Investment
            Management Services ("OIS") And Banco Santander "Made" The
            Statements in The EMs. ..................................................................................... 2

      B.    Plaintiffs' New Allegations do Not Overcome *Janus's* Bar on Liability. ............... 3

      C.    Plaintiffs do Not Adequately Allege That OIS is The Alter Ego of
            Multiadvisors. ................................................................................................... 4

II.   The Complaint Fails to State Claims Under Section 20(a) Against OIS And
      Santander With Respect to Statements in The Explanatory Memoranda ............................ 7

      A.    Counts 13 And 15 do Not State a 20(a) Claim Against OIS or Santander,
            Because The Complaint Does Not Allege Scienter on The Part of Optimal
            U.S. or Multiadvisors. ....................................................................................... 7

      B.    Count 14 Does Not State a 20(a) Claim Against Santander Based on Its
            Control of OIS, Because, Under *Janus*, OIS Cannot be a Primary Violator. .......... 9

## Table of Authorities

**Page(s)**

**Cases**

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
   493 F.3d 87 (2d Cir. 2007)..................................................................................8, 9

*In re CitiSource Sec. Litig.*,
   694 F. Supp. 1069 (S.D.N.Y. 1988)......................................................................8

*FR 8 Singapore Pte Ltd v. Albacore Maritime Inc.*,
   2011 WL 1465765 (S.D.N.Y. Apr. 15, 2011).....................................................5, 6

*Janus Capital Group v. First Derivative Traders*,
   No. 09-525, slip op. (U.S. June 13, 2011) ................................................. passim

*Kiobel v. Royal Dutch Petroleum*,
   621 F.3d 111 (2d Cir. 2010)...................................................................................5

*Presbyterian Church of Sudan v. Talisman Energy, Inc.*,
   453 F. Supp. 2d 633 (S.D.N.Y. 2006)....................................................................5

*Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital Inc.*,
   531 F.3d 190 (2d Cir. 2008)...................................................................................8

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007)................................................................................................8

*United States v. Bestfoods*,
   524 U.S. 51 (1998)..................................................................................................6

**Statutes & Rules**

15 U.S.C. § 78u-4(b)(1) ..............................................................................................8

Rule 10b-5.............................................................................................................1, 2, 7

**Other Authorities**

14 *Halsbury's Laws of England* ¶ 121 (5th ed. 2009) ............................................5, 6

In light of the Supreme Court's June 13 decision in *Janus Capital Group v. First Derivative Traders*, No. 09-525, slip op. (U.S. June 13, 2011), Defendants respectfully submit this memorandum of law in support of their renewed[1] motion to dismiss federal securities fraud claims based on allegedly materially misleading statements and omissions in Explanatory Memoranda ("EMs") issued by Optimal Multiadvisors, Ltd. ("Multiadvisors").  The claims pleaded in the Fourth Amended Class Action Complaint ("FAC"), though amended specifically to address *Janus*, still fail to state a claim because *Janus* stands for the proposition here that only Multiadvisors, the issuer of the EMs, may be held liable for any allegedly false or misleading statements or omissions therein.  Only Multiadvisors "made" the statements set forth in the EMs.

**I.     Count 11 Fails to State a Claim Against Any Defendant Based on Statements in The Multiadvisors EMs, Because None Was the Maker of The Statements Therein.**

In *Janus,* the plaintiffs were shareholders of Janus Capital Group ("JCG") who alleged violations of Rule 10b-5 based on misstatements in prospectuses issued by Janus Investment Fund ("JIF").  *Janus*, at 3-4.  JCG is a publicly traded company that created the Janus family of mutual funds, including JIF.  *Id.* at 1.  One – and only one – director of the fund, JIF, was associated with the fund's investment advisor, Janus Capital Management ("JCM"), a wholly owned subsidiary of JCG.  *Id.* at 1-2.  The remaining directors of the fund had no affiliation with JCM.  *Id.* at 2.

The lawsuit named JCG and JCM, but not JIF, as defendants.  The question presented in *Janus* was whether the defendants had "made" the allegedly false statements in JIF's prospectuses, in violation of Rule 10b-5 (making it unlawful for "any person, directly or

---

[1] In their initial motion to dismiss, Defendants moved to dismiss the 10b-5 claims related to the alleged misstatements in the Explanatory Memoranda for the same reasons set forth herein.  *See* Defs.' Memorandum of Law.  (D.E. #15, pp. 18-19.)

indirectly, ... [t]o *make* any untrue statement of a material fact" in connection with the purchase or sale of securities). The Supreme Court held that they had not, because "the maker of a statement is the person or entity with ultimate authority over the statement, including its content and whether and how to communicate it." *Id.* at 6. In declining to hold the funds' investment manager and its parent company liable, the Court rejected the view that "making" a statement encompasses preparing a statement for someone else to state. "One who prepares or publishes a statement on behalf of another is not its maker." *Id.* For this reason, the Court held that the fund's investment manager, who was alleged to have been "significantly involved in preparing the prospectuses," could not be liable as a "maker" of false statements. *Id.* at 12. Because there was no allegation that the investment adviser had filed the prospectuses, and no allegation that the face of the prospectuses indicated that the statements therein were those of "JCM rather than Janus Investment Fund – a legally independent entity with its own board of trustees," neither JCM nor JCG could be held liable. *Id.* at 11.

A.    ***Janus* Rejects Plaintiffs' Contention That Optimal Investment Management Services ("OIS") And Banco Santander "Made" The Statements in The EMs.**

The relevant facts in this case are strikingly similar to those in *Janus*. As in *Janus*, where the prospectus had been issued by the underlying fund, JIF, here the EMs – *i.e.*, the Bahamian equivalent of a prospectus – state on their face that they were issued by Multiadvisors (s*ee, e.g.*, FAC ¶ 190, Ex. 11 at 6), which is not a defendant in this case. (*Id.* ¶ 70.) As in *Janus*, Multiadvisors has no assets apart from those owned by its investors. *See Janus*, at 2; FAC ¶ 2. And as in *Janus*, where one, but only one, member of JIF's board was affiliated with JCM, *Janus,* at 2, here too, Multiadvisors had one director affiliated with OIS (Manuel Echeverría Falla ("Echeverría")), while the remaining two (Anthony Inder Rieden and Brian Wilkinson)

were independent.  Notwithstanding the single adviser-affiliated director, the Court concluded

that JIF was a legally "separate" and "independent" entity.  *Id.* at 10.

        Applying the holding of *Janus* here, no defendant is the "maker" of the allegedly

false and misleading statements in the EMs.  Review of the EMs attached as Exhibits 11-16 to

the FAC shows that the EMs were issued by Multiadvisors, not OIS or its parent, Banco

Santander, S.A., and no statement therein, much less any allegedly false statement, is attributed

to any defendant.  No OIS- or Santander-affiliated individual signed the EMs.  Multiadvisors

alone, with its independent board of three directors, two of whom have no affiliation with OIS or

Santander (s*ee, e.g.*, FAC Ex. 13 at 10-11), was the only "entity with ultimate authority over the

statement, including its content and whether and how to communicate it."  *See Janus*, at 6.

    **B.**    **Plaintiffs' New Allegations do Not Overcome *Janus's* Bar on Liability.**

        In the FAC, Plaintiffs assert that OIS, the investment manager, should be

considered the "maker" of the statements in the EMs.  (FAC ¶ 361.)  Yet none of these new

allegations undercuts the force of *Janus*'s holding here.  Plaintiffs allege that OIS should be

considered the "maker" because it is listed on the EMs and because its role is described therein.

(*Id.* ¶ 361(a).)  But it is clear from the face of the EMs that they were issued by Multiadvisors.

(*See, e.g.*, *id.*, Ex. 13 at 1.)  And while the EMs refer to and describe the role of OIS, the

investment manager, in the administration of the fund, they do not attribute any statement to OIS.

*Janus* cannot be read to hold that the *subject* of certain statements could be deemed to be their

"maker."  Indeed, the statements at issue in *Janus* concerned the duties of the investment advisor,

which was one of the entities the Court held *not* to be their maker.  *Janus*, at 3-4.

        Plaintiffs contend that "OIS had ultimate authority over the statements in the

EMs, including their content and whether and how to communicate them," because "OIS owned

all the voting stock of Optimal U.S."  (FAC ¶ 361(b).)  But this confuses control over election of

directors with "authority over the content of statements" in documents issued by the legally

independent entity those directors serve.  Nothing in *Janus* authorizes shareholder liability for

corporate statements based on shareholders' right to elect corporate directors.  In accordance

with corporate law, the directors, not the shareholders, of Multiadvisors were and are the parties

responsible for its management, as the EMs make clear:  "The Board of Directors (the

"Directors") manages the business and affairs of the Fund and supervises and monitors the

activities of the Administrator and Investment Manager."  (Ex. 13 at 9.)  *Janus* expressly

rejected, as a matter of law, Plaintiffs' argument that the corporate relationship between the

investment advisor and fund meant that the investment advisor "made" the statements in the

prospectuses.  *Janus*, at 9-10 ("We decline this invitation to disregard corporate form. . . . [I]t is

undisputed that the corporate formalities were observed here.  [The investment advisor] and [the

fund] remain legally separate entities.").   It is also immaterial that Echeverría was both the CEO

of OIS and a director of Multiadvisors.  (FAC ¶ 361(d).)  As noted above, one of the directors of

JIF was also affiliated with JCM, yet the Court did not find that a ground for deeming JCM the

"maker" of any statement issued by JIF.

### C.    Plaintiffs do Not Adequately Allege That OIS is The Alter Ego of Multiadvisors.

Plaintiffs attempt an end-run around *Janus*, alleging that OIS is the "alter ego" of

the Multiadvisors SUS fund in which Plaintiffs invested, and that the Court, therefore, should

"pierce the corporate veil" and hold OIS responsible for the statements made by Multiadvisors.

(*Id.* ¶¶ 284-288.)  Although a case may one day arise in which 10b-5 liability as the "maker" of a

false statement could extend to an "alter ego" entity, this is not that case.

A finding of alter ego liability is generally based on allegations/findings that there

has been a disregard of corporate formalities, separateness, inadequate records, highly

overlapping/identical common officers/directors, undercapitalization, and/or commingling of funds. *Kiobel v. Royal Dutch Petroleum*, 621 F.3d 111, 194 (2d Cir. 2010). And under Bahamian law, which would guide inquiry whether an entity was the alter ego of a Bahamian company[2], there are other requirements to meet. English courts, whose decisions Bahamian courts would generally follow in the absence of specific Bahamian authority to the contrary, *see* 12/22/10 Declaration of Robert Hildyard ¶ 5 (D.E. #17),  emphasize that "ownership and control are not of themselves sufficient to justify piercing the corporate veil." *FR 8 Singapore Pte Ltd v. Albacore Maritime Inc.*, Nos. 10 Civ. 1862 (RJH), 10 Civ. 8083 (RJH), 2011 WL 1465765 at *9 (S.D.N.Y. Apr. 15, 2011). Rather, veil-piercing is authorized "only where special circumstances exist indicating that [the corporate veil] is a mere façade concealing the true facts." *Id.* Also noteworthy is the English legal principle that the corporate veil cannot be pierced when the aspects of the corporate structure/relationships that would shield the alter ego entity from liability if the veil were not pierced, predate the acts giving rise to the liability. As set forth in 14 *Halsbury's Laws of England* ¶ 121 (5th ed. 2009), quoted in *FR 8 Singapore*, "Nor is the court entitled to lift the veil as against a company which is a member of a corporate group merely because the corporate structure has been used so as to ensure that the legal liability (if any) in respect of particular future activities of the company will fall on another member of the group rather than the defendant company." *Id.*, 2011 WL 1465765 at *10.

Under these veil-piercing standards/principles, alter ego liability for OIS is implausible and not warranted. The hallmark of alter ego liability is disregard of corporate

---

[2] *See Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 453 F. Supp. 2d 633, 683 & n.101 (S.D.N.Y. 2006) ("It is difficult to believe that federal choice of law rules would not require the application of the law of the state of incorporation to a determination of whether to ignore the corporate form.").

separateness or formalities, but Plaintiffs do not sufficiently allege such lack of separateness.

Plaintiffs do not allege that Multiadvisors and its subfund, SUS, were not operated as separate,

proper legal entities, or that they were deliberately undercapitalized.  Rather, they allege only

that OIS "completely dominated and controlled Optimal U.S." through its ownership of its

voting shares.  The exercise by OIS, however, of control over Optimal U.S. through the election

of directors of Multiadvisors (an arrangement that predated the issuance of any EM or the

collapse of Madoff's brokerage firm) is proof of *adherence* to corporate formalities and

separateness, not their disregard.  *See also United States v. Bestfoods*, 524 U.S. 51, 51 (1998) ("It

is a general principle of corporate law . . . that a parent corporation  . . . is not liable for the acts

of its subsidiaries.").  The further allegation that the fund had no "offices, operations, or physical

existence," in addition to being irrelevant to the alter ego analysis, is plainly belied by the other

allegations of the complaint, attesting to the retention by the fund of an administrator (HSBC

Securities Services (Ireland)), legal counsel (Lennox Paton (Bahamas)), auditor

(PricewaterhouseCoopers (Ireland)), as well as an investment manager (OIS (Switzerland)), to

manage the funds' very large investment with Bernard L. Madoff Securities LLC (*see* FAC ¶¶ 4,

164, 210), hardly the trappings of a fly-by-night, "shell" entity.[3]  Indeed, the corporate

relationship between OIS and SUS is very similar to the relationship between JCM and JIF.  And

the *Janus* plaintiffs in *Janus* also argued that the "well-recognized and uniquely close

relationship between a . . . fund and its investment adviser" warranted "disregard[ing] the

---

[3] Plaintiffs' reference in this context to the recent creation of a SPV to permit SUS investors to realize immediate, substantial payment on their share of the approved, $1.5 billion dollar claim to the liquidation estate of Bernard L. Madoff Securities LLC (FAC ¶ 287), is peculiar.  In addition to having nothing to do with whether OIS was the alter ego of Multiadvisors, the allegation that investors who elected to exchange their share received "no consideration" is frivolous, as each shareholder was able to sell their pro rata portion of the Madoff Allowed Claim for very substantial sums.

corporate form." *Janus*, at 9.  But the Court "decline[d] this invitation."  *Id.* at 9-10 (noting that readjustment of liability between investment advisers and funds is a legislative function).

For the foregoing reasons, Count XI, which alleges violations of Rule 10b-5 based exclusively on alleged misstatements in the EMs, should be dismissed in its entirety.

## II.     The Complaint Fails to State Claims Under Section 20(a) Against OIS And Santander With Respect to Statements in The Explanatory Memoranda

Section 20(a) of the Securities Exchange Act provides:

> Every person who, directly or indirectly, controls any person liable under any provision of [the 1934 Act] or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable  . . .

Plaintiffs assert three claims for violations of Section 20(a):  (i) a claim against OIS, based on its alleged control of Optimal U.S. (Count 13); (ii) a claim against Banco Santander ("Santander"), based on its alleged control of OIS (Count 14); and (iii) a claim against Santander based on its alleged control of Optimal U.S. (Count 15).  None of these counts states a claim.[4]

### A.     Counts 13 And 15 do Not State a 20(a) Claim Against OIS or Santander, Because The Complaint Does Not Allege Scienter on The Part of Optimal U.S. or Multiadvisors.

Section 20(a) imposes "joint and several liability" upon primary violators of the Securities Exchange Act and persons who "control" them "to the same extent as such controlled person" is liable to any plaintiff.  Although several cases hold that a complaint asserting control

---

[4] Counts 13 and Count 15 appear to be based solely upon the alleged misstatements in the EMs, not Defendant Clark's alleged misstatements to Pioneer.  (*See* FAC ¶¶ 388, 404.)  And none of the Counts, including Count 14, alleges that any defendant "controlled" Jonathan Clark, who alone is alleged to have made the allegedly false statements identified in Count 12.  Therefore, analysis of whether Counts 13 through 15 state a claim does not turn on whether any corporate Defendant could be held liable for having "controlled" Defendant Clark such that they may be held liable for his misstatements.

person liability under Section 20(a) does not have to formally assert claims also against the controlled person, *see, e.g., In re CitiSource Sec. Litig.*, 694 F. Supp. 1069, 1077 (S.D.N.Y. 1988), it is well-established that the complaint must at least state a claim for such a primary violation by the controlled person such that the controlled person could be liable. *See ATSI Commc'ns*, *Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 108 (2d Cir. 2007).

Accordingly, when the primary violation is a violation of Rule 10b-5, a claim under Section 20(a) must not only identify a false statement, but state with particularity facts giving rise to a strong inference that the primary violator made the false statement with scienter. *See* 15 U.S.C. § 78u-4(b)(1); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 319 (2007). "When the defendant is a corporate entity, this means that the pleaded facts must create a strong inference that someone whose intent could be imputed to the corporation acted with the requisite scienter." *Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital Inc.*, 531 F.3d 190, 195 (2d Cir. 2008).

Although this Court has upheld the allegations of scienter in the complaint with respect to the named Defendants, this Court has not ruled upon the adequacy of any allegation of scienter on the part of Multiadvisors or its subfund SUS. Review of the Fourth Amended Complaint indicates that, in fact, there is none. SUS and Multiadvisors were managed by its three-person Board of Directors, which, during the relevant period, was comprised of Echeverría, the CEO of OIS, Inder Rieden and Wilkinson. Yet the Complaint says nothing about the latter two directors at all. And while the Complaint refers in certain paragraphs to Echeverría, it omits any allegation of scienter on his part. The Complaints' allegations of scienter refer to the mental state of the "Defendants" generally, or of individual defendants, *e.g.*, FAC ¶¶168-87, not that of

the fund's directors.  Accordingly, Count 13 and Count 15, which allege a primary violation by

the SUS fund, must be dismissed.

**B.      Count 14 Does Not State a 20(a) Claim Against Santander Based on Its Control of OIS, Because, Under *Janus*, OIS Cannot be a Primary Violator.**

Count 14, which was present (as Count 12) in the Third Amended Complaint, and

which Plaintiffs have not significantly revised in light of *Janus*, attempts to state a 20(a) claim

against Santander based on its control of OIS.  Because, under *Janus*, OIS cannot be held

primarily liable with respect to misstatements in the EMs, Santander cannot be held liable as an

OIS control person.  Control person liability cannot exist in the absence of liability for the

primary violation by the controlled person.  *See ATSI Commc'ns*, 493 F.3d at 108.

**CONCLUSION**

For the reasons set forth above, Defendants respectfully request that the Court dismiss

Counts 11, 13, 14, and 15 in their entirety.

Dated:  July 5, 2011

Respectfully submitted,

By:  /s/  Shawn Patrick Regan
Shawn Patrick Regan
**HUNTON & WILLIAMS LLP**
200 Park Avenue
New York, NY 10166
Telephone:  (212) 309-1000
Facsimile:  (212) 309-1100
Email:      sregan@hunton.com

- and -

Samuel A. Danon (admitted *pro hac vice*)
Gustavo J. Membiela (admitted *pro hac vice*)
Paulo R. Lima
**HUNTON & WILLIAMS LLP**
1111 Brickell Avenue, Suite 2500
Miami, FL  33131
Telephone:  (305) 810-2500
Facsimile:  (305) 810-2460
Email:      sdanon@hunton.com
Email:      gmembiela@hunton.com
Email:      plima@hunton.com

*Counsel for Defendants Banco Santander, S.A., Banco Santander International, Optimal Investment Services, S.A., and Jonathan Clark*

10

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on July 5, 2011, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF system, which will send a Notice of Electronic Filing to

Plaintiffs' counsel of record listed below:

**LABATON SUCHAROW LLP**
Joel H. Bernstein
Javier Bleichmar
Alan I. Ellman
140 Broadway
New York, New York  10005

Edward W. Miller
648 Franklin Avenue, 2nd Floor
Garden City, New York  11530

**ROBBINS GELLER RUDMAN
& DOWD LLP**
Jack Reise
Michael L. Greenwald
120 E. Palmetto Park Road, Suite 500
Boca Raton, Florida 33432-4809

  /s/ Shawn Patrick Regan
For Hunton & Williams LLP

11