UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE OPTIMAL U.S. LITIGATION | No. 10 Civ. 4095 (SAS) |

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS CERTAIN FEDERAL SECURITIES FRAUD CLAIMS IN FOURTH AMENDED CLASS ACTION COMPLAINT**

**HUNTON & WILLIAMS LLP**
200 Park Avenue
New York, NY 10166

**HUNTON & WILLIAMS LLP**
1111 Brickell Avenue, Suite 2500
Miami, FL 33131

August 2, 2011

I.     **OIS Did Not "Make" Any Statement in the Explanatory Memoranda.**

Plaintiffs' primary argument why OIS was the "maker" of allegedly false statements in the Explanatory Memoranda ("EMs") issued by Optimal Multiadvisors ("Multiadvisors") is that OIS held all its voting shares. (Pl. Br. 2-3.) This argument confuses authority over the election of directors (which OIS had) with "authority over the content of the statement and whether and how to communicate it," *Janus Capital Group, Inc. v. First Derivative Traders*, 131 S.Ct. 2296, 2303 (2011), *Janus*'s touchstone for statement "maker" status. To hold that mere control over the election of an entity's directors encompasses the type of statement-specific "authority" *Janus* requires would be to confuse the standard for control-person liability under Section 20 with the standard for primary actor liability under Section 10(b). The Supreme Court in *Janus* expressly rejected this blurring of distinct standards:

> First Derivative's theory of liability based on a relationship of influence resembles the liability imposed by Congress for control [under Section 20(a)]. To adopt First Derivative's theory would read into Rule 10b-5 a theory of liability similar to – but broader in application than . . . what Congress has already expressly created expressly elsewhere. We decline to do so. *Id.* at 2304.

Defendants respectfully submit that *Janus* requires this Court similarly to decline to equate control/influence over an entity's management, with "authority over the statement." Even taking at face value Plaintiffs' misleading allegations about proposed edits to the EMs by OIS's Karine Courvoisier (Pl. Br. 4.), they show at most that Multiadvisors adopted suggestions of Ms. Courvoisier, in much the same way that a speechmaker adopts suggestions of a speechwriter, the very type of relationship *Janus* rejected as being equivalent to "authority over the statement." *See id.* at 2302, 2305 ("Although JCM, like a speechwriter, may have assisted Janus Investment Fund with crafting what Janus Investment Fund said in the prospectuses, JCM itself did not make those statements for purposes of Rule 10b-5.").

Plaintiffs argue that the EMs "attributed" statements to OIS. (Pl. Br. 6-8.) The argument is based on a misreading of *Janus*. The proper reading of *Janus* is that the Court's discussion of

circumstances under which an entity to which a statement had been "attributed" could be deemed its "maker" was intended to *absolve* the preparing entity from primary liability. "One who prepares or publishes a statement on behalf of another is *not* its maker. And in the ordinary case, attribution within a statement or implicit from surrounding circumstances is strong evidence that a statement was made by – *and only by* – the party to whom it is attributed." *Janus*, 131 S.Ct. at 2302 (emphasis added). In other words, there can be only one "maker" of a statement. By so clarifying its holding, *Janus* did not open the door to arguments that multiple entities can "make" the same statement simultaneously. Such an intent is belied not only by the liability-limiting focus of *Janus*, but also by its plain language: "For purposes of Rule 10b-5, *the* maker of a statement is *the* person or entity with ultimate authority over the statement . . . ." *Id.* (emphases added).

But even if "attribution" of a statement could expand the population of statement "makers" beyond one, it would not supply a basis here to hold any Defendant liable as "the maker" of the EMs. The cover page of the fund does indeed identify OIS, as well as the fund's several other support professionals (auditor, counsel, custodian, etc.), as professionals who support the fund, but the formatting of the cover page and of several others plainly show that the issuer of the EMs is "Optimal Multiadvisors, Ltd." alone and not those other professionals, *e.g.*, PwC, HSBC, Lennox Paton, and OIS. *E.g.*, FAC Ex. 13 at 2 ("Explanatory Memorandum; June 2004; Optimal Multiadvisors, Ltd."); FAC Ex. 14 at 2 ("Explanatory Memorandum; October 2006; Optimal Mutliadvisors, Ltd."). No statement, and certainly none that is the basis for suit, is attributed to OIS. Nor can Janus be read to support an argument that the EMs "attributed" authorship to OIS because they, in places, discuss OIS or discuss subjects that are within OIS's responsibility (*e.g.*, due diligence). The prospectuses in *Janus* also discussed the responsibility

2

of the investment manager for curbing market timing, *Janus*, 131 S.Ct. at 2300, but that did not cause the Court to conclude that JCM was the maker of the prospectuses. Voting control of an entity cannot suffice for "attribution" either, as Plaintiffs suggest, unless, again, the distinction between "control" under Section 20(a) and "authority" under *Janus* is to be badly blurred. In short, this case is just like *Janus*, and the Court should reject Plaintiffs' argument that OIS was the "maker" of any allegedly false statement in the EMs.

II.  **Plaintiffs Do Not Adequately Allege that OIS Is the Alter Ego of Multiadvisors.**

Plaintiffs fire a series of bullet points to suggest that the traditional alter ego factors were satisfied here. The bullets do not hit their targets.

To take just one striking example, the May 2009 decision by Multiadvisors to satisfy its own (not OIS's or Santander's) statutory, incontestable liability to return withdrawals voidable under U.S. bankruptcy law is not an example of OIS's "*Intermingling of Funds*" with Multiadvisors. Much less is it evidence of OIS having somehow compromised the interests of its fundholders to "extinguish OIS's liability to the Trustee." (Pl. Br. 9.)[1] To the contrary, solely by virtue of the May 2009 settlement with the Madoff Trustee (the first settlement the Trustee executed), Multiadvisors's fundholders became entitled to participate fully in recoveries from the BLMIS SIPA (*i.e.*, bankruptcy) estate, *see* 11 U.S.C. § 502(d) (disallowing claims of creditors who have not fully satisfied clawback liability), a status other large Madoff feeder funds are still struggling to realize to permit their own shareholders to participate in what are anticipated to be

---

[1] There was no such liability, as neither OIS nor Santander had ever received any transfer from BLMIS, and the Trustee acknowledged that they were not complicit in Madoff's fraud. *See* Brief of Trustee at ¶ P of Exhibit A, *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, Adv. Pro. No. 08-1789 (BRL), *entered* Bankr. S.D.N.Y. May 26, 2009 (setting forth Trustee's conclusion that the Optimal Companies and their affiliates, such as Santander and OIS, "were not complicit in the fraud that [BLMIS] and Madoff perpetrated on [BLMIS]'s customers and did not have actual knowledge of the fraud . . . .").

3

meaningful distributions from the BLMIS SIPA estate. As a result of that initiative, as well as the recent SPV exchange offer in which all fundholders were eligible to participate, it is reasonable to predict that Multiadvisors fundholders likely will continue to be the Madoff feeder fund victims who receive the fullest compensation for injuries they suffered as a result of Madoff's fraud. The repeated insinuations by Plaintiffs' counsel that the settlement with the Madoff Trustee and the SPV offer were motivated by anything other than the best interests of Multiadvisors fundholders go beyond the bounds of reasonable advocacy.

Nor is Multiadvisors "inadequately capitalized." Unlike other Madoff feeder funds, the Multiadvisors Optimal U.S. fund has never gone into liquidation. And, as evidenced by the success of the recent SPV offering, its fundholders collectively hold interests through their fundholdings that are extremely valuable to the financially sophisticated third parties who have purchased their stakes in recovery from the BLMIS SIPA estate.

### III. The Complaint Fails to State Claims under Section 20(a) Against OIS and Santander with Respect to Statements in the Explanatory Memoranda.

Plaintiffs do not disagree with the proposition that to assert a claim against OIS or Santander under Section 20(a), they must at least state a claim against the fund, including particularized allegations permitting a strong inference of scienter on behalf of the fund. *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007). To suggest that Multiadvisors had such scienter, Plaintiffs impute to the fund the fraudulent intent of Madoff based upon a statement in the EMs that Madoff served as "the agent and attorney-in-fact of Optimal SUS in connection with its sale of securities . . . ." FAC ¶ 205 (quoting FAC Ex. 13 at 30 (June 2004 EM)). But imputing an agent's knowledge to his principal is forbidden when the agent is defrauding the principal. When "an agent is engaged in a scheme to defraud his principal . . . the presumption that knowledge held by the agent was disclosed to the principal

4

fails because he cannot be presumed to have disclosed that which would expose and defeat his fraudulent purpose." *Center v. Hampton Affiliates, Inc.*, 488 N.E.2d 828, 829 (N.Y. 1985); s*ee also Tree Plateau Co. v. Mount Vernon Mills, Inc.*, 257 N.Y.S.2d 733, 736 (App. Div. 1965) (imputation of agent's knowledge improper when "the conduct and dealings of the agent are such as to raise a clear presumption that he will not communicate the facts to the principal, and, on the contrary, warrant the inference that the agent will conceal or withhold the information"). Put another way, "[w]hen an agent abandons the object of his agency and acts for himself, by committing a fraud for his own exclusive benefit, he ceases to act within the scope of his employment and, to that extent, ceases to act as an agent." *Credit Alliance Corp. v. Sheridan Theater Co.*, 241 N.Y. 216, 220 (1925). Because Madoff was engaged in a Ponzi scheme of which the fund was a victim throughout the period of his purported "agency," Madoff's guilty knowledge cannot be imputed to the fund.

Plaintiffs' additional argument that it may impute the scienter of Echeverria, a fund director, to the fund, is more conventional, but it fails too because the complaint lacks any factual allegations of scienter on Echeverria's part. Plaintiffs note that certain internal memoranda (postdating some of the allegedly misleading statements) concerning Madoff "were addressed to Echeverria or prepared by those reporting to him," but that does not overcome the absence of an allegation that Echeverria read them, or that, having read them, he formed the requisite intent to defraud investors through the dissemination of the EMs. The Complaint contains no allegation of scienter on Echeverria's part.

## CONCLUSION

For the reasons set forth above, Defendants respectfully request that the Court dismiss Counts 11, 13, 14, and 15 in their entirety.

5

Dated:  August 2, 2011

                Respectfully submitted,

By:  /s/ Gustavo J. Membiela

      Shawn Patrick Regan
      **HUNTON & WILLIAMS LLP**
      200 Park Avenue
      New York, NY 10166
      Telephone:  (212) 309-1000
      Facsimile:  (212) 309-1100
      Email:     sregan@hunton.com

      - and -

      Samuel A. Danon (admitted *pro hac vice*)
      Gustavo J. Membiela (admitted *pro hac vice*)
      Paulo R. Lima
      **HUNTON & WILLIAMS LLP**
      1111 Brickell Avenue, Suite 2500
      Miami, FL  33131
      Telephone:  (305) 810-2500
      Facsimile:  (305) 810-2460
      Email:     sdanon@hunton.com
      Email:     gmembiela@hunton.com
      Email:     plima@hunton.com

      *Counsel for Defendants Banco Santander, S.A., Banco Santander International, Optimal Investment Services, S.A., and Jonathan Clark*

6

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on August 2, 2011, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a Notice of Electronic Filing to Plaintiffs' counsel of record listed below:

**LABATON SUCHAROW LLP**
Joel H. Bernstein
Javier Bleichmar
Alan I. Ellman
140 Broadway
New York, New York  10005

Edward W. Miller
648 Franklin Avenue, 2nd Floor
Garden City, New York  11530

**ROBBINS GELLER RUDMAN
& DOWD LLP**
Jack Reise
Michael L. Greenwald
120 E. Palmetto Park Road, Suite 500
Boca Raton, Florida 33432-4809

/s/ Gustavo J. Membiela
Gustavo J. Membiela