USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/26/11

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------X
                                                    :
**IN RE OPTIMAL U.S. LITIGATION**          :        **OPINION AND ORDER**
                                                    :
                                                    :        **10 Civ. 4095 (SAS)**
                                                    :
                                                    :
------------------------------------------------------------X

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.    INTRODUCTION

This putative class action arises out of Plaintiffs' investment in the

Optimal Strategic U.S. Equity fund ("Optimal U.S." or the "Fund"), which in turn

invested one-hundred percent of its assets with Bernard L. Madoff ("Madoff") and

his firm, Bernard L. Madoff Investment Securities LLC ("BMIS").  Plaintiffs

allege that Defendants failed to conduct adequate diligence regarding Madoff,

ignored "red flags" that should have alerted them to Madoff's fraud, and made

misstatements and omissions in connection with the sale of Optimal U.S. shares,

causing Plaintiffs to lose their investments and allowing Defendants wrongfully to

collect management fees.[1]

---

[1]    Defendants include (1) Optimal U.S.'s investment manager, Optimal
Investment Management Services, S.A. ("OIS"); (2) an employee thereof, Jonathan
Clark; (3) OIS's corporate parent, Banco Santander, S.A. ("Banco Santander"); and
(4) a wholly-owned subsidiary of Banco Santander, Banco Santander International
("Santander U.S.").  Plaintiffs include (1) Pioneer International Ltd. ("Pioneer"),
an investment advisory firm incorporated in the British Virgin Islands; (2) the
"Pioneer Plaintiffs," fifty-six non-U.S. persons and entities who invested in

On May 2, 2011, I granted in part Defendants' motion to dismiss Plaintiffs' Second Amended Complaint ("SAC") for improper forum, lack of standing, and failure to state certain claims.[2]  *First*, and of relevance to this Opinion, I dismissed the Santander Plaintiffs from this action on the grounds that a forum selection clause contained in the Terms and Conditions governing their accounts with SBT ("SBT Terms & Conditions") required them to litigate all of their claims, against all Defendants, in the Bahamas.  *Second*, I dismissed the common law claims for breach of fiduciary duty, aiding and abetting breach of fiduciary duty, gross negligence, third party breach of contract, and unjust enrichment brought by the Pioneer Plaintiffs and Santander Plaintiffs against OIS,

---

Optimal U.S. based on advice provided by Pioneer (whose advice was in turn based on Defendants' misrepresentations); (3) the "Santander Plaintiffs," three foreign citizens/non-U.S. residents to whom Santander U.S. marketed and sold Optimal U.S., and who held their Optimal U.S. investments in accounts with non-party Santander Bank & Trust, Ltd. in the Bahamas ("SBT Bahamas" or "SBT"); and (4) Silvana Worldwide Corp. ("Silvana"), a newly-added Plaintiff who invested in Optimal U.S. from a non-Santander-affiliated bank account.  *See In re Optimal U.S. Litig.*, --- F. Supp. 2d ----, No. 10 Civ. 4095, 2011 WL 1676067, at *1-2 (S.D.N.Y. May 2, 2011) ("May 2 Opinion"); Fourth Amended Complaint ("4AC") ¶ 64.

[2]      *See In re Optimal U.S. Litig.*, 2011 WL 1676067, at *6-17. Defendants' motion to dismiss Plaintiffs' claims under the Securities Exchange Act of 1934 ("Exchange Act") was denied at a conference held on May 10, 2011.  *See* Transcript of 5/10/11 Conference ("5/10/11 Tr.") [Docket No. 36].  This Opinion assumes familiarity with the background and applicable law of this case, as stated in the May 2 Opinion and the May 10 bench ruling.

Clark, and Banco Santander (Counts V-VII and IX-X) because any harm arising from such conduct was sustained by Optimal U.S., the only entity that could bring suit directly.  However, I deferred ruling on whether the "Wagoner Rule" nevertheless imbues Plaintiffs with standing,[3] invited additional briefing on the issue, and indicated that I would accept renewed motions to dismiss those claims in the event they were sustained.[4]

This Opinion addresses (1) Plaintiffs' motion for reconsideration of my holding that the Santander Plaintiffs' claims are subject to the forum selection clause contained in the SBT Terms & Conditions and (2) the parties' supplemental briefing on the Wagoner Rule.  For the following reasons, Plaintiffs' motion for reconsideration is granted in part and denied in part.  I also now hold that the Wagoner Rule does not imbue Plaintiffs with standing to bring Counts V-VII and IX-X, thereby again dismissing those Counts.

## II.    DISCUSSION

### A.    Motion for Reconsideration

The Santander Plaintiffs move for reconsideration of my holding that

---

[3]      *See* Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss ("Opp. Mem.") at 21 (citing *Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114, 118 (2d Cir. 1991)).

[4]      *See In re Optimal U.S. Litig.*, 2011 WL 1676067, at *15.

Defendants –  who are non-signatories to the Santander Plaintiffs' Account Agreements with SBT – "are sufficiently 'closely related' to SBT such that enforcement of the forum selection clause [contained in the SBT Terms & Conditions] by those entities was foreseeable to the Santander Plaintiffs."[5] Although I deny the Santander Plaintiffs' motion as to Santander U.S., who may invoke the forum selection clause as to the Santander Plaintiffs' claims, I grant the Santander Plaintiffs' motion with respect to OIS, Clark, and Banco Santander.

### 1.     Legal Standard

Motions for reconsideration are governed by Local Rule 6.3 and are committed to the sound discretion of the district court.[6]  A motion for reconsideration is appropriate where "'the moving party can point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court.'"[7]  A motion for reconsideration may also be granted to "'correct a clear error or prevent

---

[5]       *In re Optimal U.S. Litig.*, 2011 WL 1676067, at \*10.

[6]       *See Patterson v. United States*, No. 04 Civ. 3140, 2006 WL 2067036, at \*1 (S.D.N.Y. July 26, 2006 ) ("The decision to grant or deny a motion for reconsideration is within the sound discretion of the district court.") (citing *McCarthy v. Manson*, 714 F.2d 234, 237 (2d Cir. 1983)).

[7]       *In re BDC 56 LLC*, 330 F.3d 111, 123 (2d Cir. 2003) (quotation omitted).

manifest injustice.'"[8]

The purpose of Local Rule 6.3 is to "'ensure the finality of decisions and to prevent the practice of a losing party examining a decision and then plugging the gaps of a lost motion with additional matters.'"[9]  Local Rule 6.3 must be "narrowly construed and strictly applied so as to avoid repetitive arguments on issues that have been considered fully by the Court."[10]  Courts have repeatedly been forced to warn counsel that such motions should not be made reflexively to reargue "'those issues already considered when a party does not like the way the original motion was resolved.'"[11]  A motion for reconsideration is not an

---

[8]     *RST (2005) Inc. v. Research in Motion Ltd.*, No. 07 Civ. 3737, 2009 WL 274467, at *1 (S.D.N.Y. Feb. 4, 2009) (quoting *Virgin Atl. Airways, Ltd. v. National Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992)).

[9]     *Grand Crossing, L.P. v. United States Underwriters Ins. Co.*, No. 03 Civ. 5429, 2008 WL 4525400, at *3 (S.D.N.Y. Oct. 6, 2008) (quoting *S.E.C. v. Ashbury Capital Partners*, No. 00 Civ. 7898, 2001 WL 604044, at *1 (S.D.N.Y. May 31, 2001)).  *Accord Commerce Funding Corp. v. Comprehensive Habilitation Servs., Inc.*, 233 F.R.D. 355, 361 (S.D.N.Y. 2005) ("[A] movant may not raise on a motion for reconsideration any matter that it did not raise previously to the court on the underlying motion sought to be reconsidered.").

[10]     *United States v. Treacy*, No. 08 CR 366, 2009 WL 47496, at *1 (S.D.N.Y. Jan. 8, 2009) (quotation marks omitted).  *Accord Shrader v. CSX Transp. Inc.*, 70 F.3d 255, 257 (2d Cir. 1995) (holding that a court will deny the motion when the movant "seeks solely to relitigate an issue already decided").

[11]     *Makas v. Orlando*, No. 06 Civ. 14305, 2008 WL 2139131, at *1 (S.D.N.Y. May 19, 2008) (quoting *In re Houbigant, Inc.*, 914 F. Supp. 997, 1001 (S.D.N.Y. 1996)).

"opportunity for making new arguments that could have been previously

advanced,"[12] nor is it a substitute for appeal.[13]

### 2.   Applicable Law

It is well established that a range of transaction participants, parties and non-parties, should benefit from and be subject to forum selection clauses.  In order to bind a non-party to a forum selection clause, the party must be closely related to the dispute such that it becomes foreseeable that it will be bound.   A non-party is closely related to a dispute if its interests are completely derivative of and directly related to, if not predicated upon the signatory party's interests or conduct.[14]

### 3.   OIS, Clark, and Banco Santander Cannot Invoke the Forum Selection Clause

The Santander Plaintiffs move for reconsideration of my holding that

Defendants are "closely related" to SBT such that they may enforce the forum

---

[12]   *Associated Press v. United States Dep't of Defense*, 395 F. Supp. 2d 17, 19 (S.D.N.Y. 2005).

[13]   *See Grand Crossing*, 2008 WL 4525400, at *3.

[14]   *Cuno Inc. v. Hayward Indus. Prod., Inc.*, No. 03 Civ. 3076, 2005 WL 1123877, at *5-6 (S.D.N.Y. May 10, 2005) (quotation marks, citations, and alterations omitted) (holding forum selection clause enforceable against non-signatory whose "rights as licensee of the disputed patents are derivative of and depend on [signatory's] rights under the Non-disclosure Agreement" containing the forum selection clause).  *Accord Roby v. Corporation of Lloyd's*, 996 F.2d 1353, 1358 (2d Cir. 1993) (quotation marks and citation omitted) (applying forum selection clause to non-signatory defendants because "[w]e believe every defendant in this action . . . is either protected directly by the [contract] clauses or [is an] intended beneficiar[y] entitled to enforce them").

selection clause contained in the SBT Terms & Conditions,[15] on the grounds that I

relied on an incomplete version of the Account Agreement.[16]  They argue that my

reliance on section 21L of the Account Agreement was in error, and that section 34

– which was not before this Court on Defendants' original motion – makes clear

that "the Account Agreement explicitly excluded the Santander Plaintiffs' claims

against Defendants."[17]

        Section 21L provides that SBT "may engage other agents or subagents

_____

[15]     The last section of the SBT Terms & Conditions contains a Bahamian
forum selection clause under which SBT account-holders

> irrevocably submit to the exclusive jurisdiction of The
> Commonwealth of The Bahamas in any action or proceeding
> arising out of or relating to the Account or this Agreement, and
> irrevocably agree that all claims in respect of any action or
> proceeding may be heard and determined in those courts.

Terms and Conditions Governing Accounts, Santander Bank & Trust Ltd. ("SBT
Terms & Conditions"), Ex. A to Plaintiffs' Memorandum of Law in Support of
Motion for Reconsideration ("Pl. Reconsideration Mem."), § 78.

[16]    *See Bild v. Konig*, No. 09-CV-5576, 2011 WL 1563576, at *2
(E.D.N.Y. Apr. 25, 2011) ("The court must reconsider its previous ruling because
the parties [did] not submit[] a complete version of the March Agreement to the
court."); *Daniels v. City of New York*, No. 99 Civ. 1695, 2007 WL 2077150, at *4
(S.D.N.Y. July 16, 2007) (granting motion for reconsideration where "[t]he actual
language of [an] Agreement" that was "provided to this Court as part of
defendants' motion . . . raise[d] new facts that were obviously overlooked by this
Court").

[17]    Pl. Reconsideration Mem. at 8.

(that may be [SBT's] affiliates) to provide investment advisory, brokerage, and other services to [SBT] for the Advisory Accounts."[18]  In the May 2 Opinion, I reasoned that

> the Santander Plaintiffs' claims against Santander U.S., Banco Santander, and OIS – all SBT affiliates – are based on those Defendants' provision, albeit indirectly, of such "investment advisory . . . services to SBT."  Thus, section 21L indicates that "the signatories [to the SBT account agreements incorporating the SBT Terms & Conditions] intended the contract to benefit related [Santander] companies" and "gave [the Santander Plaintiffs] reason to know that one of the reasons motivating [SBT] to enter the contract was a desire to confer a pecuniary benefit on related [Santander] companies."[19]

"But here," the Santander Plaintiffs argue,

> SBT did not engage Defendants Banco Santander, OIS, nor Clark. Optimal U.S. engaged OIS to provide investment advisory services to Optimal U.S.  Not even Plaintiffs engaged OIS and certainly not SBT.  OIS also did not provide any services to SBT. OIS provided investment advisory services to Optimal U.S., from which Plaintiffs, at best, were supposed to benefit indirectly. Accordingly, neither Banco Santander, OIS, nor Clark are subject to section 21L.[20]

---

[18]   SBT Terms & Conditions § 21L.

[19]   *In re Optimal U.S. Litig.*, 2011 WL 1676067, at *10 (footnotes omitted) (quoting *Direct Mail Prod. Servs. Ltd. v. MBNA Corp.*, No. 99 Civ. 10550, 2000 WL 1277597, at *4 (S.D.N.Y. Sept. 7, 2000)).  "Similarly," I observed, "the SBT Waiver distributed to the Santander Plaintiffs in 2008 'explained that the investment in Optimal U.S. was not guaranteed by [SBT] [or] *any of its affiliates.*'"  *Id.* at *10 n.133 (quoting SAC ¶ 265).

[20]   Pl. Reconsideration Mem. at 9 (citations omitted).

Instead, the Santander Plaintiffs contend, section 34 describes "exactly what happened here":[21]

> [§ 34] . . . [Y]ou understand and agree that [SBT] and its . . . employees, agents, and affiliates have no liability or responsibility for the failure or inability of an issuer [such as Optimal U.S.] to repay or perform . . . .  If an issuer of any Property purchased by [SBT] for you defaults either totally or partially in the payment or performance of its obligation, or is prevented for any reason from transferring funds owed, *[SBT's] only obligation will be to assign to you the claim against the issuer that [SBT] holds on your behalf* . . . .[22]

The Santander Plaintiffs argue that, because "the Account Agreement is clear that SBT had no obligation whatsoever other than to assign [any] claim [against an issuer] . . . , even assuming that Defendants here were 'closely related' to SBT . . . , the Account Agreement does not contemplate the Santander Plaintiffs' claims" which are "wholly outside the purview of this agreement, negating the application of any of its clauses, much less the forum selection clause . . . ."[23]

However, just because the Account Agreement does not delineate the scope of liability of SBT's *affiliates* for the failure of an issuer to repay or perform does not mean the Agreement does not "contemplate" such claims against those

---

[21]   *Id.* at 8.

[22]   SBT Terms & Conditions § 34 (emphasis added).

[23]   Pl. Reconsideration Mem. at 8.

affiliates.  To the contrary, section 34 expressly contemplates such claims, but disclaims any liability by SBT's affiliates for them.

The Santander Plaintiffs' better argument is that, even if the Account Agreement purports to insulate SBT's affiliates from such claims, according to section 78 of the Agreement, such claims must still "aris[e] out of or relat[e] to the Account or [the] Account Agreement" in order to be governed by the forum selection clause.[24]  While the language of this clause is broad – and would apply to almost any claim against SBT and its affiliates that derives in any way from their interaction with the Santander Plaintiffs in the Santander Plaintiffs' capacity as private banking clients[25] – none of the actions or omissions for which the Santander Plaintiffs are suing OIS, Clark, and Banco Santander are predicated or depend upon their private banking relationships with SBT and its affiliates.  As the Santander Plaintiffs rightly note, SBT did not engage these defendants to provide

---

[24]     SBT Terms & Conditions § 78.

[25]     *See Coregis Ins. Co. v. American Health Found., Inc.*, 241 F.3d 123, 128-29 (2d Cir. 2001); *see, e.g.*, *Anwar v. Fairfield Greenwich Ltd.*, 742 F. Supp. 2d 367, 373 (S.D.N.Y. 2010) ("*Anwar II*") ("Even were the Court to construe the forum selection clause as narrowly as possible and limit its application only to disputes arising from the Private Banking Services Agreement, the Court finds that this dispute – involving recommendations by Standard Chartered about how to best invest funds in the [] Plaintiffs' accounts – arises from the Agreement, which, together with the Application, 'governs [the Plaintiffs'] relationship with the Bank as a customer of the Bank . . . in relation to the private banking services.'").

investment advisory services to the Santander Plaintiffs; Optimal U.S. did.  My

holding to the contrary in the May 2 Opinion – which was based solely upon my

analysis of section 21L – was clear error.

   The Santander Plaintiffs, like all other Plaintiffs in this action, are

suing OIS, Clark, and Banco Santander for mismanagement of – and

misrepresentations about – Plaintiffs' investments in Optimal U.S.  Whether any

plaintiffs in this action held their Optimal U.S. investments in accounts with SBT

Bahamas (like the Santander Plaintiffs), Dresdner Bank (like Silvana), or Banc

Julius Baer (like the Pioneer Plaintiffs) is "irrelevant to their ability to invest in

Optimal U.S. and sue."[26]  Put differently, to the extent the Santander Plaintiffs are

suing these three defendants "for the failure or inability of an issuer to repay or

perform"[27] or for a "transaction or position in the Advisory Accounts,"[28] it is

simply a coincidence that the "issuer" whose securities were held in the Santander

Plaintiffs' Advisory Accounts (i.e., Optimal U.S.) also happens to be an "affiliate"

---

[26] Pl. Reconsideration Mem. at 6 n.5.  *Accord Dayhoff Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1297 (3d Cir. 1996) ("[Non-signatory defendants] should not by reason of their corporate relationship with [the signatory defendant] be able to invoke the arbitration and forum selection clauses, for there is no more reason to disregard the corporate structure with respect to such claims as there would be to disregard it with respect to other legal matters.").

[27] SBT Terms & Conditions § 34.

[28] *Id.*

of SBT.  Indeed, under any other reading of section 34, the forum selection clause "would even apply . . . to a Section 11 claim against Banco Santander, as underwriter, if an SBT account holder invested in the offering."[29]  While OIS, Clark, and Banco Santander may attempt to invoke *section 34* as a defense to the Santander Plaintiffs' claims in this action, that does not transform their claims into ones "arising out of or relating to the Account or [the Account] Agreement"[30] such that these defendants may invoke *section 78* to provide the benefit of the forum selection clause.  For these reasons, the Santander Plaintiffs' motion for reconsideration is granted with respect to OIS, Clark, and Banco Santander.

### 4.    Santander U.S. May Invoke the Forum Selection Clause

However, the Santander Plaintiffs' claims against Santander U.S. clearly arise out of or relate to their Account Agreements.  The Santander Plaintiffs are suing Santander U.S. for negligent misrepresentation, breach of fiduciary duty, gross negligence, unjust enrichment, and assisting OIS's fraud.[31]  These claims are

---

[29]    Pl. Reconsideration Reply at 5.

[30]    SBT Terms & Conditions § 78.

[31]    *See* SAC Counts III-VI, VIII & X; 4AC Counts III-VI, VIII & X.  The Santander Plaintiffs are also suing Santander U.S. for aiding and abetting OIS's breach of fiduciary duty.  For the same reasons the Santander Plaintiffs lack standing to bring this claim against Banco Santander, *see In re Optimal U.S. Litig.*, 2011 WL 1676067, at *14-15; *infra* Part II.B, they also lack standing to bring this claim, which belongs to the Fund, against Santander U.S.  Put differently, the

all based on Santander U.S.'s marketing and sales of Optimal U.S. to the Santander

Plaintiffs (for which it earned sales fees), its distribution of Optimal U.S.

Explanatory Memoranda to those plaintiffs,[32] and the "special relationship of trust

or confidence" that developed between Santander U.S. and the Santander Plaintiffs

as a result.[33]   However, "a private banking relationship with a Santander affiliate

was the basis for Santander U.S.'s communications with investors concerning their

investments in Optimal U.S."[34]   Thus, Santander U.S.'s ability to market and sell

Optimal U.S. and earn sales fees, and its responsibility for distributing Explanatory

Memoranda, "derived from [SBT's] interests" under the Account Agreement.[35]

_____

Santander Plaintiffs have not shown that they – as opposed to the Fund –
"'suffered damage as a result of [OIS's] breach [of fiduciary duty],'" a necessary
element of this aiding and abetting claim against Santander U.S.   *In re Sharp
Intern. Corp.*, 403 F.3d 43, 49 (2d Cir. 2005) (quoting *Kaufman v. Cohen*, 760
N.Y.S.2d 157, 169 (1st Dep't 2003)).

[32]   *See* SAC ¶¶ 246-256, 262-268, 339 (aiding and abetting OIS's fraud),
347 (unjust enrichment).

[33]   *Id.* ¶¶ 303, 311 (negligent misrepresentation).   *Accord id.* ¶ 318 (gross
negligence); *id.* ¶ 326 (breach of fiduciary duty).

[34]   8/15/11 Responsive Letter from Plaintiffs to the Court ("8/15/11 Pl.
Letter") at 1.

[35]   *Rohrbaugh v. U.S. Mgmt., Inc.*, No. 05-CV-3486, 2007 WL 1965417,
at *4 (E.D.N.Y. July 2, 2007).   *Accord Great N. Ins. Co. v. Constab
Polymer-Chemie GmbH & Co.*, No. 5:01-CV-0882, 2007 WL 2891981, at *8
(N.D.N.Y. Sept. 28, 2007) ("Neither Great Northern nor Schoeller-USA are
signatories to the Agreement.   However, the enforcement of the forum selection
clause is clearly 'foreseeable' given the relationships between the parties and the

-13-

Indeed, those responsibilities depended upon the existence of a contractual banking

relationship between Santander U.S.'s clients and an SBT affiliate – a relationship

governed by terms and conditions that expressly contemplate SBT's coordination

with affiliates in the provision of private banking services.[36]  Even if SBT did not

formally "engage" or "employ" Santander U.S. to provide services on its behalf,[37]

---

basis upon which plaintiff has commenced this suit.  Therefore, the Court finds that
the forum selection clause may be invoked against plaintiff . . . ."); *Direct Mail*,
2000 WL 1277597, at *3 (quoting *Coastal Steel Corp. v. Tilghman Wheelabrator
Ltd.*, 709 F.2d 190, 203 (3d Cir. 1983)) ("[A] contractually-based forum selection
clause will also encompass tort claims if the tort claims 'ultimately depend on the
existence of a contractual relationship' between the parties . . . .").

[36]      *See* SBT Terms & Conditions § 21(d) (emphasis added) ("[SBT] may
engage other agents or subagents (*that may be Bank's affiliates*) to provide
investment advisory, brokerage, *and other services* to [SBT] for the Advisory
Accounts. . . ."); *id.* § 41 (emphasis added) (" . . . You authorize [SBT] in its sole
discretion and on your behalf, to enter into any transactions with any of its offices
worldwide or with any of the offices of any of its affiliates or subsidiaries . . . ,
*including, but not limited to, the employment of* [SBT] or *any affiliates as its
agent.*").

           Plaintiffs assert that "Santander U.S. marketed, sold, and distributed
the Explanatory Memoranda to Santander banking clients who did not execute the
bank account agreement with SBT – those banking clients who had bank accounts
with Santander U.S. or the Santander affiliate in Switzerland."  8/15/11 Pl. Letter
at 1.  To the extent those other banking clients signed Account Agreements
incorporating terms and conditions comparable to those contained in the SBT
Terms & Conditions, however, the same analysis applies.

[37]      The SAC does not make clear the contractual contours of Santander
U.S.'s relationship with SBT (or any other Santander-affiliated banking entity); it
simply alleges that "Santander U.S. served as the headquarters for Santander's
International Private Bank in Latin America."  SAC ¶ 246.

it is plausible to infer that Santander U.S. had assumed responsibility for, and acted as SBT's agent in, the provision of certain services related to those accounts and to the Account Agreements.  This inference is based on the allegations that Santander U.S. had complete control over all communications with the Santander Plaintiffs related to their Advisory Accounts.  For example, Santander U.S. not only distributed account statements on SBT's behalf, but also "ma[de] available" certain "disclosure documents" related to the "purchase or sale of [shares of Optimal U.S.]";[38] "conduct[ed] reviews of the Advisory Accounts from time to time";[39] and "provid[ed] investment advice and ma[de] recommendations whenever, in [its] judgment, developments so warrant."[40]  As I noted in the May 2 Opinion, in *Anwar*

---

[38]     SBT Terms & Conditions § 27.  *See* SAC ¶ 247 ("Santander U.S. mailed bank statements, explanatory memoranda, and other documents relating to Optimal U.S. regardless of whether the investor had an account at Santander U.S. or at a non-U.S.-based Santander banking affiliate."); *id.* ¶ 252 ("Santander Bahamas mailed Plaintiff Galinanes his account statement.  But the mailing envelope [indicates that it was mailed from Miami by Santander U.S.]."); *id.* ¶ 255 (citing an email from a Santander U.S. Vice President to a Latin American investor which "did [not] include any recipients at Santander Bahamas or Santander Switzerland" but which attached documents necessary to open accounts with both Santander affiliates as proof of Santander U.S.'s exclusive involvement in investors' opening of bank accounts at Santander affiliates for the purposes of investing in Optimal U.S.).

[39]     SBT Terms & Conditions § 22.

[40]     *Id.  See* SAC ¶ 251 (alleging that the Santander Plaintiffs "never spoke with anyone from Santander Bahamas" and that the individuals "principally responsible" for the Santander Plaintiffs' investment were Luca Majic, Nicholas

*II*, Judge Victor Marrero of this Court held that a forum selection clause contained in the "Terms and Conditions" applicable to plaintiffs' bank accounts covered plaintiffs' "dispute about [the bank]'s diligence in investigating [a Madoff feeder fund] and its representations about [that fund]."[41]  The result must be the same here, even though Plaintiffs did not name SBT as a defendant.[42]

Moreover, as I held in the May 2 Opinion, the SBT Terms & Conditions were clearly intended to benefit Santander U.S.  For example, section 34 provides that not only SBT, but also "its . . . employees, agents, and affiliates" "have no liability in connection with any other act taken or omitted by them in good faith under this Agreement (including, without limitation, negligent acts or

_____

Coubrough, and Ximena Goni, employees of Santander U.S.); *id.* ¶ 267 (quoting an email from a Santander U.S. bank representative to a client) ("'Banco Santander is recommending liquidating one of your investments. . . .  The bank considers that it is highly risky and due to the volatility in the market we prefer to be conservative and liquidate the investment.  Please call me to discuss this issue.'").

41      742 F. Supp. 2d at 371.  Like the Santander Plaintiffs, the *Anwar II* plaintiffs first signed a "Private Bank Account Application" in order to open their accounts which expressly incorporated separate "terms and conditions" containing a forum selection clause.  *See id.* at 372.

42      *See Anselmo v. Univision Station Grp., Inc.*, No. 92 Civ. 1471, 1993 WL 17173, at *2 (S.D.N.Y. Jan. 15, 1993) (quotation marks omitted) ("A forum selection clause should not be defeated by artful pleading of claims not based on the contract containing the clause if those claims grow out of the contractual relationship, or if the gist of those claims is a breach of that relationship.").

omissions)."[43]  Section 34 further provides that private banking clients agree to indemnify not only SBT, but also

> its . . . employees, agents, and affiliates against . . . any liability, cost, and expense . . . *that . . . its . . . employees, agents, and affiliates may incur or be subjected to* with respect to the Advisory Accounts or any transaction or position in the Advisory Accounts.[44]

These provisions bolster my prior holding that "'the signatories [to the SBT account agreements incorporating the SBT Terms & Conditions] intended the contract to benefit related [Santander] companies' and 'gave [the Santander Plaintiffs] reason to know that one of the reasons motivating [SBT] to enter the contract was a desire to confer a pecuniary benefit on related [Santander] companies.'"[45]  Not only that, but the pecuniary benefit was intended to benefit affiliates like Santander U.S. in the precise scenario that, by the Santander

---

[43]    SBT Terms & Conditions § 34.  *See also id.* § 43 (providing that nondeposit investment products are not guaranteed by SBT "OR ANY OF ITS AFFILIATES"); *id.* § 63(A)-(B) (providing that SBT's "offices, branches and affiliates . . . may not at any time incur any liability to you . . . in connection with," *inter alia*, any claims, causes of action, and suits which may be "asserted against [SBT], in any way relating to or arising out of" the Account Agreement, any Account, and any transaction effectuated through an Account).

[44]    *Id.* § 34 (emphasis added) ("[Y]ou agree to reimburse [SBT] on demand for . . . *any cost incurred by* [SBT *and its . . . employees, agents, and affiliates*] *in successfully defending against any claims asserted by you.*").

[45]    *In re Optimal U.S. Litig.*, 2011 WL 1676067, at *4 (quoting *Direct Mail*, 2000 WL 1277597, at *4) (alterations in original).

-17-

Plaintiffs' own admission, was "exactly what happened here."[46]

The Santander Plaintiffs argue that section 64, which purports to insulate SBT from liability for its affiliates' acts and omissions,[47] "precludes a finding that SBT and Defendants are closely related" for two reasons: *first*, because it "creates an unequivocal distinction and separation between SBT (as signatory) and its affiliates (as non-signatories) with respect to lawsuits by the Santander Plaintiffs";[48] and, *second*, because "Defendants' misconduct cannot serve as a basis for a lawsuit against SBT."[49]  The language also "negates the conclusion reached in

---

[46]    Pl. Reconsideration Mem. at 8.  *See* SBT Terms & Conditions § 34 (emphasis added) ("[Y]ou understand and agree that [SBT] *and its . . . employees, agents, and affiliates* have no liability or responsibility for the failure or inability of an issuer [such as Optimal U.S.] to repay or perform.").

[47]    *See* SBT Terms & Conditions § 64 ("[SBT] is not liable to you for any act, omission, error, misconduct, negligence, default or insolvency of any of its representative offices, . . . affiliates or subsidiaries and *each . . . affiliate . . . or subsidiary is liable for its own acts, omissions, misconduct or negligence*.").

[48]    Pl. Reconsideration Mem. at 4 ("[T]he implication and foreseeable expectation arising from this clause is that the Account Agreement []did not apply to affiliates' misconduct."); *id.* (citing *Wendt v. Handler, Thayer & Duggan, LLC*, 613 F. Supp. 2d 1021, 1031-32 (N.D. Ill. 2009)) ("It would be absurd for SBT to disclaim all liability to the Santander Plaintiffs for claims of misconduct by SBT's affiliates, yet intend its affiliates to invoke the forum selection clause in defense of the Santander Plaintiffs' claims for misconduct.").

[49]    *Id.* at 5 (quoting *Rohrbaugh*, 2007 WL 1965417, at *4) ("Accordingly, the interests or misconduct of the Defendants, as non-parties, cannot be 'completely derivative of,' nor 'directly related to, if not predicated upon,' SBT's interest or conduct.").  According to Plaintiffs, none of their interests

the Order that Defendants were intended beneficiaries of the forum selection clause" because "[s]ection 64 indicates that SBT did not want to have anything to do with any claims for misconduct against Defendants" and therefore "could not have intended for the forum selection clause to apply to Defendants in a lawsuit only predicated on Defendants' misconduct."[50]

Of course, SBT also disclaimed liability for an issuer's failure to repay or perform,[51] acts taken or omitted by SBT in good faith under the Agreement,[52] any loss in value of nondeposit investment products maintained in any Advisory Account,[53] and any inability to contact private banking clients regarding particular investment decisions or recommendations.[54]  Yet lawsuits against SBT based on such events would clearly "aris[e] out of or relat[e] to the Account or th[e] Agreement"[55] and therefore be subject to the forum selection

---

in this case is "derived from" SBT's interests or conduct and none of their causes of action is "predicated on" the Account Agreement.  *See id.* at 6.

[50]     *Id.* at 6.

[51]     *See* SBT Terms & Conditions § 34.

[52]     *See id.*

[53]     *See id.* § 43.

[54]     *Id.* § 22.

[55]     *Id.* § 78.

clause.  Under Plaintiffs' logic, not even *SBT* could invoke the forum selection

clause with respect to any of the "Indemnified Liabilities" which are defined to

include causes of action "in any way relating to or arising out of: (a) this

Agreement . . . [and] (b) any Account."[56]  In other words, just because SBT

disclaims liability for certain activity does not mean lawsuits based on that activity

are not governed by the forum selection clause.  Similarly, just because SBT

disclaims liability for actions taken by its affiliates (Santander U.S.) does not mean

lawsuits based on certain of those actions do not "aris[e] out of or relat[e] to the

Account or th[e] Agreement."[57]  For these reasons, the Santander Plaintiffs'

argument fails, and their motion for reconsideration is denied as to Santander U.S.,

who may invoke the forum selection clause found in the Santander Plaintiffs'

Account Agreements.

### B.    The "Wagoner" Rule/In Pari Delicto

---

[56]    *Id.* § 63(A).

[57]    *Id.* § 78.  *Accord* Defendants' Opposition to Plaintiffs' Motion for
Reconsideration ("Opp. Reconsideration Mem.") at 3 ("[Section 64] simply
clarifies that SBT and each of its affiliates are individually liable for their own
misconduct, despite their close relationship to one another."); *id.* at 3-4 ("Section
64 does not bar an SBT account holder from suing an SBT affiliate; it simply states
that SBT will not answer for claims made against an affiliate.  Consistent with this,
[the forum selection clause] provides that all claims 'arising out of or relating to'
an SBT account – whether asserted against SBT directly for its conduct or against
affiliated entities – must be brought in The Bahamas.").

In the May 2 Opinion, I held that the Pioneer Plaintiffs' direct claims against OIS, Clark, and Banco Santander[58] in Counts V-VII and IX-X belonged to the Fund, and therefore could not be asserted directly by those Plaintiffs.[59] Plaintiffs declined my invitation to replead the claims as derivative. They maintain their position that, "[a]part from any other basis for standing, Plaintiffs have standing to bring claims that would otherwise belong to the Fund because of the 'Wagoner Rule.'"[60]

### 1.    Applicable (New York) Law[61]

---

[58]    To the extent the Pioneer Plaintiffs and Silvana also bring these claims against Santander U.S., they are now dismissed for the reasons set forth *infra* Part II.C.

[59]    The Santander Plaintiffs and Silvana also assert these claims against OIS, Clark, and Banco Santander. However, because I had dismissed the Santander Plaintiffs from this action prior to assessing whether these claims belonged to the Fund or to its investors in the May 2 Opinion, I did not explicitly dismiss the Santander Plaintiffs' claims for lack of standing. Nonetheless, these claims – which are no longer dismissed for improper forum, *see supra* Part II.A.3 – are identical to the Pioneer Plaintiffs' claims, as are Silvana's. Therefore, my prior ruling that those claims may only be brought by the Fund or by the Pioneer Plaintiffs derivatively also applies to the Santander Plaintiffs and to Silvana, as does my discussion of the Wagoner Rule. Accordingly, "Plaintiffs," as used in this section, refers to the Pioneer Plaintiffs, the Santander Plaintiffs, and Silvana.

[60]    Opp. Mem. at 21 (citing *Wagoner*, 944 F.2d at 118).

[61]    I apply New York law because the Wagoner Rule – to the extent it is recognized in New York – is "an affirmative defense, not a matter of standing." *Kirschner v. KPMG LLP*, 15 N.Y.3d 446, 459 n.3 (2010). In other words, because the internal affairs doctrine does not govern the choice-of-law inquiry, I do not

The Wagoner Rule provides that "[a] claim against a third party for defrauding a corporation with the cooperation of management accrues to creditors, not to the guilty corporation."[62]  The Wagoner Rule "derives in significant part from federal bankruptcy law, and is a prudential limitation on standing under federal law."[63]  However, it "is not part of New York law except as it reflects the [affirmative defense] in pari delicto,"[64] which

> mandates that the courts will not intercede to resolve a dispute between two wrongdoers.  This principle has been wrought in the

---

apply "'the law of the place of incorporation.'"  *In re Optimal U.S. Litig.*, 2011 WL 1676067, at *13 (quoting *Anwar v. Fairfield Greenwich Ltd.*, 728 F. Supp. 2d 372, 401 n.8 (S.D.N.Y. 2010)) (applying New York law to the question of shareholder standing only because Defendants conceded that New York law is in accord with Bahamian law, the place of the Fund's incorporation).  I have already held that Plaintiffs' tort claims, to which the Wagoner Rule is an affirmative defense, are governed by New York law.  *See id.* at *13, *15 n.215.

[62]    *Wagoner*, 944 F.2d at 120.

[63]    *Kirschner*, 15 N.Y.3d at 459 n.3.  *Accord Picard v. HSBC Bank PLC*, --- B.R. ----, Nos. 11 Civ. 763, 11 Civ. 836, 2011 WL 3200298, at *2 (S.D.N.Y. July 28, 2011) (citing *Kirschner*, 15 N.Y.3d 446 and *Wagoner*, 944 F.2d at 118) (citations omitted) ("Although, under New York State law, in pari delicto is an affirmative defense, in federal court prudential considerations deprive a bankruptcy trustee of standing to even bring a claim that would be barred by in pari delicto.").

[64]    *Kirschner*, 15 N.Y.3d at 459 n.3.  *Accord Picard*, WL 3200298, at *9 ("[U]nder New York law, which substantively governs the common law claims here asserted, the in pari delicto doctrine is an affirmative defense (albeit one strictly enforced), rather than a bar to standing.").  Although in pari delicto is an affirmative defense, it "may be resolved on the pleadings in a state court action in an appropriate case."  *Kirschner*, 15 N.Y.3d at 459 n.3.

> inmost texture of our common law for at least two centuries. The doctrine survives because it serves important public policy purposes. First, denying judicial relief to an admitted wrongdoer deters illegality. Second, in pari delicto avoids entangling courts in disputes between wrongdoers.[65]

Thus, in *Kirschner v. KPMG LLP*, in pari delicto was held to bar a derivative action brought on behalf of American International Group, Inc. ("AIG") against PricewaterhouseCoopers LLP (PwC) on the theory that PwC failed to detect or report fraud perpetrated by AIG's senior officers.  In arguing for an expansion of the so-called "adverse interest exception" to the doctrine of in pari delicto, the derivative plaintiffs had argued that "although they [] stand in the shoes of corporate malefactors, any recovery they achieve will, in fact, benefit blameless . . . shareholders . . . at the expense of defendants who allegedly assisted the fraud or were negligent."[66]  The New York Court of Appeals was

> not persuaded, however, that the equities are quite so obvious. In particular, why should the interests of innocent stakeholders of corporate fraudsters trump those of innocent stakeholders of the outside professionals who are the defendants in these cases? . . . In a sense, plaintiffs' proposals may be viewed as creating a double standard whereby the innocent stakeholders of the corporation's outside professionals are held responsible for the sins of their errant agents while the innocent stakeholders of the corporation itself are not charged with knowledge of their wrongdoing agents. . . .  The owners and creditors of . . . PwC

---

[65]   *Kirschner*, 15 N.Y.3d at 464 (citations omitted).

[66]   *Id.* at 475.

-23-

may be said to be at least as "innocent" as . . . AIG's stockholders.
. . .   We are also not convinced that altering our precedent to
expand remedies for these or similarly situated plaintiffs would
produce a meaningful additional deterrent to professional
misconduct or malpractice. . . .   Indeed, . . . [i]n the AIG securities
fraud litigation, PwC settled with shareholder plaintiffs last year
for $97.5 million. . . .   [T]he approach advocated by . . . the
derivative plaintiffs would allow the creditors and shareholders of
the company that employs miscreant agents to enjoy the benefit of
their misconduct without suffering the harm.[67]

## 2.    In Pari Delicto Does Not Imbue Plaintiffs with Standing

Plaintiffs argue that, because their assertion of any derivative claims

against OIS on behalf of Optimal U.S. "would be subject to an unclean hands

defense" by OIS – because OIS "collaborat[ed] with the Board of Optimal U.S.

(through [Optimal U.S.'s Director Manuel] Echeverria) in promulgating and

promoting the Madoff Ponzi scheme"[68] – "the Court should apply the Wagoner

rule as provided under New York law and allow the claims at issue to proceed

directly."[69]

Plaintiffs' argument is self-defeating.   This Court has already ruled

---

[67]     *Id.* at 475-77.  *Accord Picard*, 2011 WL 3200298, at *2 ("Under New York law, the exceptions to the application of the bar of in pari delicto are few and narrow . . . .").

[68]     Plaintiffs' Reply Memorandum of Law Concerning the Wagoner Rule ("Pl. Wagoner Reply") at 3 (quotation marks omitted).

[69]     Plaintiffs' Memorandum of Law Concerning the Wagoner Rule ("Pl. Wagoner Mem.") at 2.

that Counts V-VII and IX-X allege claims that belong to the Fund, not to Plaintiffs. As I explained in the May 2 Opinion, Plaintiffs' claims for breach of fiduciary duty, aiding and abetting breach of fiduciary duty, gross negligence and unjust enrichment against OIS, Clark, and Banco Santander are "'based on the alleged mismanagement of the [] Fund through the failure to conduct adequate due diligence and to discover and act upon red flags.'"[70]  Such "'allegations of mismanagement or diversion of assets by officers or directors to their own enrichment, without more, plead a wrong to the corporation only, for which a shareholder may sue derivatively but not individually.'"[71]  Similarly, I held that Plaintiffs' third party beneficiary breach of contract claim against OIS was "derivative in nature" because Plaintiffs "'could not demonstrate an injury (a breach of that contract) independent of injury to [Optimal U.S.] (the promisee and

---

[70]     *In re Optimal U.S. Litig.*, 2011 WL 1676067, at *14 (quoting *Newman v. Family Mgmt. Corp.*, 748 F. Supp. 2d 299, 315 (S.D.N.Y. 2010)).

[71]     *Id.* at *13 (quoting *Abrams v. Donati*, 66 N.Y.2d 95, 953 (1985)). *Accord ABF Capital Mgmt. v. Askin Capital Mgmt., L.P.*, No. 96 Civ. 2978, 1997 WL 317365, at * 3 (S.D.N.Y. June 12, 1997) ("*ABF Capital Mgmt. II*") (summarizing the holding of *ABF Capital Mgmt. v. Askin Capital Mgmt., L.P.*, 957 F. Supp. 1308, 1333 (S.D.N.Y. 1997) ("*ABF Capital Mgmt. I*")) ("Any injury that befell the plaintiff investors as a result of that breach was derivative of the injury to the Funds.  These injuries were undifferentiated among the plaintiffs, who suffered loss proportional to their ownership interest, and thus the claim may not be maintained in a direct action.").

primary beneficiary of the contract).'"[72]  Thus, I held, Plaintiffs could only pursue

these claims derivatively on behalf of the Fund.

But to the extent the Wagoner Rule applies to shareholder derivative

claims – as opposed to claims asserted by trustees in bankruptcy (the factual

scenario presented by *Shearson Lehman Hutton, Inc. v. Wagoner*) – it operates to

*bar* such claims because, as derivative claimants, Plaintiffs stand in the shoes of

the corporation whose "unclean hands" bar *it* from bringing suit.[73]  Nothing in

*Kirschner* supports the notion that a corporation's unclean hands – potentially

barring derivative claims – will yet allow the corporation's *shareholders* to sue

directly.  Quite to the contrary, *Kirschner* expressly rejected the argument that

----

[72]    *Id.* (quoting *Stephenson v. Citco Group Ltd.*, 700 F. Supp. 2d 599, 611
(S.D.N.Y. 2010)).

[73]    *Cf. Bullmore v. Ernst & Young Cayman Islands*, 20 Misc.3d 667, 678
(N.Y. 2008) ("[A]dopting an innocent successor exception . . . for the benefit of the
Fund's investors would be inconsistent with the well-settled principle that a
negligence claim against a corporate accountant belongs to the corporation-client,
unless there is privity between the accountant and the nonclient claiming harm.
The [bankruptcy trustee has] not even alleged that [the Fund's accountant] could be
held liable to the Fund's investors in negligence, because [the Fund's accountant]
and the investors are not in privity or in a relationship approaching privity.  The
Fund, as [the accountant's] client, is the only party that is permitted to recover
against [the accountant] for its alleged negligence stemming from the audit, and
not the Fund's investors.  However, because the investment managers' alleged
wrongdoing while acting within the scope of their employment is imputed to the
Fund, the [trustee], suing on behalf of the Fund, [is] barred from asserting that
claim.").

"innocent stakeholders of the corporation itself [should] not [be] charged with knowledge of their wrongdoing agents."[74]  This "presumption of imputation reflects the recognition that principals, rather than third parties, are best suited to police their chosen agents and to make sure they do not take actions that ultimately do more harm than good."[75]

In *In re Refco Inc. Securities Litigation*, plaintiffs made a similar argument which was rejected by a Special Master whose reasoning was adopted by the court:

> The Plaintiffs argue that *Wagoner* itself establishes their standing to pursue [claims previously dismissed by the Special Master as derivative] because the *Wagoner* court states that if the Trustee is barred by imputation, a claim against a third party 'accrues to creditors, not to the guilty corporation.'  [*Wagoner*, 944 F.2d at 120.]  But the *Wagoner* court's statement obviously does not mean that creditor corporations can collect on the claims if they, themselves, are barred by the wrongdoing of their own corporate agents that is imputed to them.  *Wagoner* by definition bars claims that would otherwise accrue to parties but for imputation of wrongdoing.  So even assuming the claims of the Refco Estate now accrue to the Plaintiffs as creditors, the Plaintiffs will be

---

[74]    *Kirschner*, 15 N.Y.3d at 475.

[75]    *Id.* at 468 (citing *Cenco Inc. v. Seidman & Seidman,* 686 F.2d 449, 455-56 (7th Cir. 1982) ("[I]f the owners of the corrupt enterprise are allowed to shift the costs of its wrongdoing entirely to the [third-party] auditor, their incentives to hire honest managers and monitor their behavior will be reduced."); Restatement (Third) of Agency § 5.03, Comment b ("Imputation creates incentives for a principal to choose agents carefully and to use care in delegating functions to them")).

barred if in pari delicto/*Wagoner* applies to them.[76]

Regarding plaintiffs' argument that this would result in "a wrong without a

remedy," the Special Master observed that

> [t]he New York Court of Appeals was quite clear that an application of the in pari delicto doctrine can leave a wrong without a remedy for the corporation, but was comfortable with that outcome because it found no reason to choose the corporation's innocent stakeholders over the innocent stakeholders of third parties.[77]

To the extent this seems like an inequitable result, I note that I have

sustained Plaintiffs' direct claims for both fraud and negligent misrepresentation

against OIS – claims that are not tainted by Optimal U.S.'s unclean hands, because

they accrue to Optimal U.S.'s shareholders, not Optimal U.S.  This outcome is

consistent with *Wagoner*'s first holding regarding the trustee's claim against a

third-party broker for aiding, abetting, and unduly influencing the corporation's

sole shareholder in making bad trades that dissipated corporate funds: "to the

extent this claim alleges money damages to the 'clients of [the corporation,

HMK],' it belongs only to the creditors and the trustee has no standing to assert

---

[76]     *In re Refco Inc. Sec. Litig.*, Nos. 07 MD 1902, 08 Civ. 3065, 08 Civ. 3086, 08 Civ. 7416, 08 Civ. 8267, 2010 WL 6549830, at *9 (Dec. 6, 2010 S.D.N.Y.) (Report and Recommendation of Capra, Daniel J., Special Master), *adopted in part (and rejected on other grounds)*, --- F. Supp. 2d ----, 2011 WL 1542508 (S.D.N.Y. Apr. 25, 2011).

[77]     *Id.*

it."[78]  Indeed, had Optimal U.S. gone bankrupt, its trustee in bankruptcy would

likely be barred from asserting fraud claims against OIS, not only because of its

unclean hands, but also because such claims – to the extent they allege

"inducement such that recovery would only flow to those individuals who were so

induced"[79] – would "belong[] only to the creditors [of Optimal U.S.]," depriving

the trustee of "standing to assert [them]."[80]

        Nor is this outcome inconsistent with *Wagoner*'s second holding that

"to the extent the [trustee's claim] alleges money damages to HMK itself, . . . [that]

---

[78]    *Wagoner*, 944 F.2d at 119-20.

[79]    *In re Optimal U.S. Litig.*, 2011 WL 1676067, at *14 (quotation marks and alterations omitted).

[80]    *Wagoner*, 944 F.2d at 120-21.  *Accord Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1093 (2d Cir. 1995) ("[When creditors, such as the investors in the Colonial limited partnerships, have a claim for injury that is particularized as to them, they are exclusively entitled to pursue that claim, and the bankruptcy trustee is precluded from doing so. . . .  It follows that claims predicated upon the distribution of misleading [Private Placement Memoranda] to investors in Colonial limited partnerships are the property of those investors, and may be asserted only by them and to the exclusion of [the bankruptcy trustee].  We note in this regard that class actions are being vigorously litigated in behalf of the investors."); *Picard*, 2011 WL 3200298, at *2 ("[E]ven though a bankruptcy trustee can seek to recover monies on behalf of the debtor's estate that will ultimately be used to help satisfy creditors' claims, it is settled law that the federal Bankruptcy Code . . . does not itself confer standing on a bankruptcy trustee to assert claims against third parties on behalf of the estate's creditors themselves, because the trustee stands in the shoes of the debtor, not the creditors.").

claim . . . accrues to creditors, not to the guilty corporation."[81]  Plaintiffs here are

the *shareholders* in a solvent, allegedly "guilty" corporation, not the *creditors* of a

bankrupt "guilty" corporation.  *Wagoner* itself demonstrates that, in the absence of

some exception, the "unclean hands" of a corporation's agent are imputed to the

entire corporation, which includes its shareholders.  That HMK's "sole

stockholder" had unclean hands – because he was the same person as HMK's "sole

. . . decisionmaker" – was irrelevant to *Wagoner*'s holding that the trustee's claim

accrued to HMK's creditors; certainly nothing in *Wagoner* suggests that, had

HMK's "sole stockholder" been "innocent," the trustee's claim would have

accrued to that stockholder as opposed to the corporation's creditors.[82]  As

*Kirschner* makes clear, the so-called "innocence" of shareholders is irrelevant to

the principle of imputation that is part and parcel of the in pari delicto defense.

> To the extent Plaintiffs are arguing that they are similarly situated to

the creditors in *Wagoner* – Jehovah's Witnesses to whom Kirschner issued HMK

*Notes* and HMK *Loan Agreements* – they disregard the important legal significance

---

[81]    *Wagoner*, 944 F.2d at 120.

[82]    *Accord ABF Capital Mgmt. I*, 957 F. Supp. at 1332-33 (rejecting
plaintiffs' arguments that where management and third parties acted in concert to
the detriment of investors, the investors could assert breach of fiduciary duty
claims individually, rather than through the corporation, because claims belonged
to the Funds in bankruptcy and not to investors as individuals).

attached to the distinction between shareholders and creditors in bankruptcy.[83]

Plaintiffs assert that, outside of bankruptcy, "'the relative priorities between

creditors and shareholders are without significance.'"[84]   However, Plaintiffs cite no

authority for the proposition that this Court should (1) limit *Wagoner*'s creditor-

shareholder distinction to the bankruptcy context and then (2) apply it outside the

bankruptcy context to imbue Plaintiffs with standing in a shareholder derivative

suit in New York – a state where in pari delicto (i) does not govern standing and

(ii) operates to *bar* Plaintiffs' derivative claims.   In any event, this argument is in

direct conflict with *Kirschner* – controlling authority in New York – which

expressly rejected the argument that "the innocent stakeholders of [a] corporation

---

[83]      *See, e.g.*, *In re Med Diversified, Inc.*, 461 F.3d 251, 258 (2d Cir. 2006) (quotation marks omitted) ("When a corporation becomes bankrupt, the temptation to lay aside the garb of a stockholder, on one pretense or another, and to assume the role of a creditor, is very strong, and all attempts of that kind should be viewed with suspicion."); *Matter of Stirling Homex Corp.*, 579 F.2d 206, 213 (2d Cir. 1978) (quotation marks, alterations, and citation omitted) ("Where the debtor corporation is insolvent and is about to undergo complete liquidation, the equities favor the conventional general creditors rather than the allegedly defrauded stockholders.  In such circumstances, the real party against which (the stockholders) are seeking relief is the body of general creditors of their corporation. . . .  We will not allow stockholders whose claims are based solely on the alleged fraud that took place in the issuance of stock to deplete further the already meager pool of assets presently available to the general creditors.").

[84]      Pl. Wagoner Reply at 4 (quoting *In re Granite Partners, L.P.*, 208 B.R. 332, 337 (Bankr. S.D.N.Y. 1997)).

[should] not [be] charged with knowledge of their wrongdoing agents."[85]

It bears noting that in pari delicto "does not apply to the actions of fiduciaries who are insiders in the sense that they either are on the board or in management, *or in some other way control the corporation*."[86]  Thus, given Plaintiffs' argument that Optimal U.S. "was nothing more than a corporate shell created by OIS simply as a pass-through vehicle to invest in Madoff,"[87] their decision not to pursue these claims as derivative – and then *refute* any in pari delicto defense asserted by *OIS* on the grounds that OIS controlled Optimal U.S. –

---

[85]    *Kirschner*, 15 N.Y.3d at 474.

[86]    *Refco*, 2010 WL 6549830, at *16 (emphasis added).  *See, e.g.*, *Global Crossing Estate Representative v. Winnick*, No. 04 Civ. 2558, 2006 WL 2212776, at * 15 (S.D.N.Y. Aug. 3, 2006) ("[T]o the extent plaintiff can establish that defendants' alleged control and domination of Global Crossing rendered them corporate insiders and fiduciaries, *Wagoner* and the 'in pari delicto' rules will not bar plaintiff's fiduciary duty claims.") (citing *In re Mediators, Inc.*, 105 F.3d 822, 826-27 (2d Cir. 1997)); *In re KDI Holdings, Inc.*, 277 B.R. 493, 518 (Bankr. S.D.N.Y. 1999) ("[T]he Committee has alleged sufficient facts with regard to Austin's and Schneider's insider status through domination and control to render the in pari delicto defense inapplicable in this case.").

[87]    Pl. Wagoner Mem. at 8.  *Accord id.* at 9 (quoting *Key Items, Inc. v. Ultima Diamonds, Inc.*, No. 09 Civ. 3729, 2010 WL 3291582, at *8 (S.D.N.Y. Aug. 17, 2010)) ("In such circumstances where a defendant had 'complete domination of the corporation in respect to the transaction attacked; and that such domination was used to commit a fraud or wrong against the plaintiff,' the Court may, in its discretion, disregard the corporate form and treat the two legal entities as one.").

is curious.[88]  Plaintiffs' contention that "even if Plaintiffs were to sue derivatively

and obtain a recovery for Optimal U.S., it would benefit OIS because OIS would

be indemnified by Optimal U.S. under the Investment Management Agreement"[89]

("IMA") is similarly puzzling, given that the IMA expressly excepts from

indemnification "any matter as to which [OIS] shall have been adjudicated to have

acted with willful default or not to have acted honestly[,] in good faith[,] or in the

reasonable belief that such Indemnitee's action was in the best interest of the

Fund."[90]  Moreover, although OIS owns voting shares in Optimal U.S.'s parent

(Optimal Multiadvisors Ltd (Bahamas)), those shares confer no right upon OIS to

participate in any investment return or any recovery by the Fund, including an

award of damages in the Fund's favor.[91]  Thus, there is no "plausible concern here

that the traditional rule vesting standing in Optimal U.S. alone could unjustly

---

[88]     Moreover, Plaintiffs' argument that I should "ignore the *de jure* legal
separations between two entities in favor of the *de facto* reality of their unified
common function and purpose" makes no sense.  *Id.* at 9.  "[T]reat[ing] the two
legal entities as one," *id.*, would not enable Plaintiffs to bring direct claims against
OIS, although it might permit them to bring derivative claims against OIS on the
theory that OIS "had complete domination of [Optimal U.S.] in respect to the
transaction attacked."  *Key Items*, 2010 WL 3291582, at *8.

[89]     Pl. Wagoner Reply at 1.

[90]     IMA, Ex. A to Pl. Wagoner Reply, § 4(c).

[91]     *See* SAC ¶¶ 70-71.

enrich alleged wrongdoers (the policy underlying the in pari delicto defense, which *Wagoner* purports to implement)."[92]

   For all of these reasons, I again dismiss Counts V-VII and IX-X as to OIS, Clark, and Banco Santander, because Plaintiffs lack standing to pursue the claims directly and have now waived their right to pursue them derivatively.[93]

## C. Santander U.S. Is Dismissed from this Action

   In the May 2 Opinion, I dismissed the Santander Plaintiffs from this action because I determined that all of their claims against all Defendants must be litigated in the Bahamas.  However, as discussed in Part II.A, I now conclude that OIS, Clark, and Banco Santander may not invoke the forum selection clause because the Santander Plaintiffs' claims against them do not arise out of or relate to their Accounts or Account Agreements with SBT.  Accordingly, the Santander

---

[92] Defendants' Opposition to Plaintiffs' Memorandum of Law Concerning the Wagoner Rule at 4.

[93] Although the May 2 ruling did not explicitly apply to the Santander Plaintiffs, and could not have applied to Silvana (because it had not yet been added as a plaintiff), Plaintiffs amended their complaint knowing that I would be considering the Santander Plaintiffs' motion for reconsideration (creating the possibility that those plaintiffs would re-enter this lawsuit).  More importantly, as investors in Optimal U.S., these three sets of plaintiffs are situated identically with respect to their common law claims against OIS, Clark, and Banco Santander, and are represented by the same counsel.  Therefore, in declining my invitation to replead these claims as derivative as to the Pioneer Plaintiffs, counsel implicitly declined that invitation as to *all* plaintiffs asserting these claims – and waived any further right to replead them.

Plaintiffs' claims may proceed against those Defendants, to the extent they have not been dismissed on other grounds such as lack of standing.

However, Santander U.S. must be dismissed from this action.  This is because (1) all of the Santander Plaintiffs' remaining claims against Santander U.S. arise out of or relate to the Santander Plaintiffs' private banking relationship with SBT (and must therefore be litigated in the Bahamas) and because, as described below, (2) the Pioneer Plaintiffs and Silvana fail to state, or lack standing to bring, any claims against Santander U.S.[94]

In the 4AC (and SAC), "Plaintiffs" – who include the Pioneer Plaintiffs, the Santander Plaintiffs, and Silvana[95] – assert the following claims against Santander U.S.: aiding and abetting OIS's breach of fiduciary duty (VII), breach of fiduciary duty (VI), gross negligence (V), negligent misrepresentation

---

[94]     Although Defendants did not move to dismiss these claims, I dismiss them *sua sponte* because this result is required both by my prior rulings and those I make today.  I note that the Court received an unanticipated letter from Defendants today, August 26, 2011, arguing for a similar result.  Lest there be any concern that this Court ruled on the basis of Defendants' letter without hearing from Plaintiffs, I wish to make clear that Defendants' letter – which arrived within an hour of my signing this Opinion –  played no role in my determination that Santander U.S. must be dismissed from this action.

[95]     *See* 4AC ¶ 65.

(III & IV), and unjust enrichment (X).[96]  I address each in turn.  *First*, the Pioneer

Plaintiffs and Silvana lack standing to bring a claim against Santander U.S. for

aiding and abetting OIS's breach of fiduciary duty (VII), a necessary element of

which is "'that *plaintiffs* [as opposed to the Fund] suffered damage as a result of

[OIS's] breach.'"[97]  This follows from my analysis of Plaintiffs' standing to bring

the same claim against Banco Santander.[98]  Alternatively, the Pioneer Plaintiffs and

Silvana fail to state a claim against Santander U.S. for aiding and abetting OIS's

alleged breach of fiduciary duty.  This is because  Santander U.S.'s alleged "active

and integral participa[tion]" in OIS's breach[99] – marketing and selling Optimal

U.S. *to the Santander Plaintiffs* – did not proximately cause any of the *other*

*plaintiffs'* alleged damages.[100]

---

[96]    I have already dismissed the Pioneer Plaintiffs' – and now dismiss Silvana's identical – claim against Santander U.S. for aiding and abetting OIS's fraud (VIII).  *See In re Optimal U.S. Litig.*, 2011 WL 1676067, at *17.

[97]    *In re Sharp Intern. Corp.*, 403 F.3d at 49 (quoting *Kaufman*, 760 N.Y.S.2d at 169) (emphasis added).

[98]    *See In re Optimal U.S. Litig.*, 2011 WL 1676067, at *14-15; *supra* Part II.B.

[99]    4AC ¶ 339.

[100]    *See Kolbeck v. LIT Am., Inc.*, 939 F. Supp. 240, 249 (S.D.N.Y. 1996) (quotation marks omitted) ("Aiding and abetting liability arises only when plaintiffs' injury was a direct or reasonably foreseeable result of the complained-of conduct.").

*Second*, the basis for these "Plaintiffs'" breach of fiduciary duty claim against Santander U.S. is its "substantial discretion and control over marketing Optimal U.S. and communications with Plaintiffs."[101]  But, as I discussed extensively in Part II.A.3, "a private banking relationship with a Santander affiliate was the basis for Santander U.S.'s communications with investors concerning their investments in Optimal U.S.,"[102] and only the Santander Plaintiffs had such a relationship with Santander affiliates.  Therefore, there was no fiduciary duty for Santander U.S. to breach with respect to the Pioneer Plaintiffs or Silvana,[103] foreclosing Count VI.

*Third*, as alleged, Santander U.S. had no "special relationship" with the Pioneer Plaintiffs or Silvana that could "g[i]ve rise to a duty to exercise due care in the management of Plaintiffs' assets invested in Optimal U.S.,"[104] foreclosing their claims for gross negligence (V) and negligent misrepresentation

---

[101]    4AC ¶ 332.

[102]    8/15/11 Pl. Letter at 1.

[103]    *See Flickinger v. Harold C. Brown & Co.*, 947 F.2d 595, 599 (2d Cir. 1991) (quoting *Mandelblatt v. Devon Stores, Inc.*, 521 N.Y.S.2d 672, 676 (1st Dep't 1987)) ("A fiduciary relationship exists under New York law 'when one [person] is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation.'").

[104]    4AC ¶ 324.

(III & IV).[105]

*Fourth*, to the extent Santander U.S. was unjustly enriched by the "sales charges" it charged the Santander Plaintiffs "at the time of the[ir] investment,"[106] that enrichment was not "at the expense" of the Pioneer Plaintiffs or Silvana, foreclosing their claim for unjust enrichment.[107]  To the extent Santander U.S. is alleged to have been unjustly enriched by the annual management fee it shared with OIS,[108] the Pioneer Plaintiffs' and Silvana's claim

---

[105]    *See Hydro Investors, Inc. v. Trafalgar Power Inc.*, 227 F.3d 8, 20 (2d Cir. 2000) ("Under New York law, the [first] element[] for a negligent misrepresentation claim [is] that (1) the defendant had a duty, as a result of a special relationship, to give correct information . . . ."); *Cromer Fin. Ltd. v. Berger*, 137 F. Supp. 2d 452, 495 (S.D.N.Y. 2001) (quotation marks omitted) ("Under New York law, a prima facie case of . . . gross negligence . . . requires the plaintiff to show: (1) a duty to the plaintiff; (2) a breach of duty; (3) a reasonably close causal connection between the contact and the resulting injury; and (4) actual loss, harm or damage.").  Nor have these plaintiffs alleged that Santander U.S. "made a false representation" to them on which they "reasonably relied . . . to [their] detriment." *Hydro Investors*, 227 F.3d at 20 (reciting the second and fifth elements of a claim for negligent misrepresentation).

[106]    4AC ¶ 263.

[107]    *Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 306 (2d Cir. 2004) (citing *Clark v. Daby*, 751 N.Y.S.2d 622, 623 (2002)) (emphasis added) ("The basic elements of an unjust enrichment claim in New York require proof that (1) defendant was enriched, (2) *at plaintiff's expense*, and (3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover.").

[108]    *See* 4AC ¶ 263.

for disgorgement of that fee belongs to the Fund, for the same reasons their unjust enrichment claims against OIS, Clark, and Banco Santander belong to the Fund.[109] Finally, these plaintiffs' unjust enrichment claim is also foreclosed by the attenuated connection between them and Santander U.S.[110]  Therefore, these plaintiffs fail to state a (direct) claim for unjust enrichment (X) against Santander U.S.

Because there are no remaining claims against Santander U.S., it is dismissed from this action.

## III.   CONCLUSION

For the aforementioned reasons, Plaintiffs' motion for reconsideration is granted in part and denied in part; Counts V-VII and IX-X are dismissed either as derivative, for improper forum, or for failure to state claims; and Santander U.S. is dismissed from this action.  The Clerk of the Court is directed to close the

---

[109]    *See In re Optimal U.S. Litig.*, 2011 WL 1676067, at *14-15; *supra* Part II.B.

[110]    *See Sperry v. Crompton Corp.*, 8 N.Y.3d 204, 215-16 (2007) ("While . . . a plaintiff need not be in privity with the defendant to state a claim for unjust enrichment, . . . such a claim does not lie under the circumstances of this case. Here, the connection between the purchaser . . . and the producers . . . is simply too attenuated to support such a claim."); *see also State ex rel. Spitzer v. Daicel Chemical Indus.*, 840 N.Y.S.2d 8, 12 (1st Dep't 2007) (citing *Sperry*, 8 N.Y.3d at 215-16); *Benedict v. Whitman Breed Abbott & Morgan*, 722 N.Y.S.2d 586 (2d Dep't 2001).

motion for reconsideration [Docket No. 33].

The following claims remain in this action: common law fraud, negligent misrepresentation, and gross negligence[111] against OIS, Clark, and Banco Santander (Counts I-IV and XVI-XVII); aiding and abetting fraud against Banco Santander (Count VIII); and federal securities fraud against OIS (Counts XI and XIII), Clark (Count XII), and Banco Santander (Counts XIV-XV). A motion to dismiss the federal securities fraud claims is currently pending before this Court.[112] As stated at the May 10 conference, Defendants' must file their *forum non conveniens* motion together with their motion to dismiss (1) Counts I-II and VIII (as to Banco Santander only) and (2) Counts XVI-XVIII by September 16, 2011 (25 pages). Plaintiffs' opposition (25 pages) is due by October 7, 2011, with Defendants' reply (10 pages) due by October 21, 2011. A conference is scheduled for August 31, 2011 at 3:00 p.m.

---

[111]     Pioneer (the investment advisor) is the only plaintiff whose claim for gross negligence has not (yet) been dismissed.

[112]     *See* Docket No. 50.

SO ORDERED:

_____
Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            August 26, 2011

**- Appearances -**

**For Plaintiffs:**

Edward W. Miller, Esq.
575 Lexington Avenue
Suite 2840
New York, New York 10022
(212) 758 1625

Alan Ian Ellman, Esq.
Javier Bleichmar, Esq.
Joel H. Bernstein, Esq.
Labaton Sucharow, LLP
140 Broadway
New York, New York 10005
(212) 907-0877

**For Defendants:**

Gustavo J. Membiela, Esq.
Samuel A. Danon, Esq.
Hunton & Williams
1111 Brickell Avenue
Miami, Florida 33131
(305) 810-2500

Paulo Roberto Lima, Esq.
Shawn Patrick Regan, Esq.
Hunton & Williams, LLP(NYC)
200 Park Avenue, 52nd Floor
New York, New York 10166
(212) 309-1395