```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  12/21/11
```

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------X
                                                      :
IN RE OPTIMAL U.S. LITIGATION            :       **OPINION AND ORDER**
                                                      :
                                                      :       **10 Civ. 4095 (SAS)**
                                                      :
------------------------------------------------------X
SHIRA A. SCHEINDLIN, U.S.D.J.:

## I.       INTRODUCTION

              This putative class action arises out of plaintiffs' investment in the

Optimal Strategic U.S. Equity fund ("Optimal U.S." or the "Fund"), which in turn

invested one-hundred percent of its assets with Bernard L. Madoff and his firm,

Bernard L. Madoff Investment Securities LLC ("BMIS").  Plaintiffs allege that

defendants failed to conduct adequate diligence regarding Madoff, ignored "red

flags" that should have alerted them to Madoff's fraud, and made misstatements

and omissions in connection with the sale of Optimal U.S. shares, causing

plaintiffs to lose their investments and allowing defendants wrongfully to collect

management fees.[1]

---

[1]        Defendants include (1) Optimal U.S.'s investment manager, Optimal
Investment Management Services, S.A. ("OIS"); (2) an employee thereof, Jonathan
Clark; and (3) OIS's corporate parent, Banco Santander, S.A. ("Banco Santander").
Plaintiffs include (1) Pioneer International Ltd. ("Pioneer"), an investment
advisory firm incorporated in the British Virgin Islands; (2) the "Pioneer
Plaintiffs," fifty-six non-U.S. persons and entities who invested in Optimal U.S.
based on advice provided by Pioneer (whose advice was in turn based on

On May 2, 2011, I granted in part defendants' motion to dismiss plaintiffs' Second Amended Complaint ("SAC") for improper forum, lack of standing, and failure to state certain claims.[2]  *First*, I dismissed the Santander Plaintiffs from this action on the grounds that a forum selection clause contained in the Terms and Conditions governing their accounts with SBT ("SBT Terms & Conditions") required them to litigate all of their claims, against all defendants, in the Bahamas.  *Second*, I dismissed the common law claims for breach of fiduciary duty, aiding and abetting breach of fiduciary duty, gross negligence, third party breach of contract, and unjust enrichment brought by the Pioneer Plaintiffs and Santander Plaintiffs against OIS, Clark, and Banco Santander (Counts V-VII and IX-X) because any harm arising from such conduct was sustained by Optimal U.S.,

---

Defendants' misrepresentations); (3) the "Santander Plaintiffs," three foreign citizens/non-U.S. residents to whom Banco Santander International ("Santander U.S.") marketed and sold Optimal U.S., and who held their Optimal U.S. investments in accounts with non-party Santander Bank & Trust, Ltd. in the Bahamas ("SBT Bahamas" or "SBT"); and (4) Silvana Worldwide Corp. ("Silvana"), a newly-added Plaintiff who invested in Optimal U.S. from a non-Santander-affiliated bank account.  *See In re Optimal U.S. Litig.*, — F. Supp. 2d —, No. 10 Civ. 4095, 2011 WL 1676067, at *1-2 (S.D.N.Y. May 2, 2011) ("May 2 Opinion"); Fourth Amended Complaint ("FAC") ¶ 64.

[2]      *See In re Optimal U.S. Litig.*, 2011 WL 1676067, at *6-17. Defendants' motion to dismiss Plaintiffs' claims under the Securities Exchange Act of 1934 ("Exchange Act") was denied at a conference held on May 10, 2011.  *See* Transcript of 5/10/11 Conference ("5/10/11 Tr.") [Docket No. 36].  This Opinion assumes familiarity with the background and applicable law of this case, as stated in the May 2 Opinion and the May 10 bench ruling.

the only entity that could bring suit directly.

On August 26, 2011, I granted in part plaintiffs' motion for reconsideration of the May 2, 2011 Opinion and Order.[3]  I reinstated the Santander Plaintiffs' claims against OIS, Clark, and Banco Santander, but not against Santander U.S.  In addition, I held that the "Wagoner Rule does not imbue Plaintiffs with standing to bring Counts V-VII and IX-X, thereby again dismissing those Counts."[4]

On October 13, 2011, I granted in part defendants' renewed motion to dismiss federal securities fraud claims based on allegedly materially misleading statements and omissions in Explanatory Memoranda ("EMs") issued by Optimal Multiadvisors, Ltd. ("Multiadvisors") in light of the Supreme Court's recent decision in *Janus Capital Group v. First Derivative Traders*.[5]  I dismissed claims against OIS pursuant to Section 10(b) of the Exchange Act[6] and Securities and Exchange Commission Rule 10b-5[7] and against Banco Santander under Section

---

[3]     *See In re Optimal U.S. Litig.*, — F. Supp. 2d —, No. 10 Civ. 4095, 2011 WL 3809909 (S.D.N.Y. Aug. 26, 2011).

[4]     *Id.* at *1.

[5]     — U.S. —, 131 S. Ct. 2296 (2011).

[6]     15 U.S.C. § 78j(b).

[7]     17 C.F.R. § 240.10b-5.

20(a) of the Exchange Act based on its control of OIS.  I sustained Section 20(a) claims against OIS and Banco Santander based on their control of Optimal U.S.[8]

   This opinion addresses defendants' Motion to Dismiss Plaintiffs' Fourth Amended Class Action Complaint.  In this motion defendants contend that (1) the entire action should be dismissed under the doctrine of forum non conveniens; (2) plaintiffs' claims against Banco Santander for committing or assisting fraud should be dismissed; and (3) the claims of Pioneer should be dismissed.  For the reasons discussed below, defendants' motion to dismiss is granted in part and denied in part.

## II. LEGAL STANDARDS

### A. Motion to Dismiss

   In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court evaluates the sufficiency of the complaint under the "two-pronged approach" suggested by the Supreme Court in *Ashcroft v. Iqbal.*[9] First, a court "'can choose to begin by identifying pleadings that, because they are

---

   [8] *See In re Optimal U.S. Litig.*, No. 10 Civ. 4095, 2011 WL 4908745 (S.D.N.Y. Oct. 14, 2011).

   [9] 556 U.S. —, —, 129 S. Ct. 1937, 1950 (2009).

no more than conclusions, are not entitled to the assumption of truth.'"[10]
"Threadbare recitals of the elements of a cause of action, supported by mere
conclusory statements, do not suffice" to withstand a motion to dismiss.[11]  Second,
"[w]hen there are well-pleaded factual allegations, a court should assume their
veracity and then determine whether they plausibly give rise to an entitlement for
relief."[12]  To survive a Rule 12(b)(6) motion to dismiss, the allegations in the
complaint must meet a standard of "plausibility."[13]  A claim is facially plausible
"when the plaintiff pleads factual content that allows the court to draw the
reasonable inference that the defendant is liable for the misconduct alleged."[14]
Plausibility "is not akin to a probability requirement;" rather, plausibility requires
"more than a sheer possibility that a defendant has acted unlawfully."[15]

---

[10]    *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010) (quoting *Iqbal*, 129 S. Ct. at 1950).  *Accord Ruston v. Town Bd. for Town of Skaneateles*, 610 F.3d 55, 59 (2d Cir. 2010), *cert. denied*, — U.S. —, 131 S. Ct. 824 (2010).

[11]    *Iqbal*, 129 S. Ct. at 1949 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

[12]    *Id.* at 1950.  *Accord Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 124 (2d Cir. 2010), *cert. granted on other grounds*, No. 10-1491, 565 U.S. —, 2011 WL 4905479 (Oct. 17, 2011).

[13]    *Twombly*, 550 U.S. at 564.

[14]    *Iqbal*, 129 S. Ct. at 1949 (quotation marks omitted).

[15]    *Id.* (quotation marks omitted).

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint."[16]  However, the court may also consider a document that is not incorporated by reference, "where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint."[17]

## B.     Federal Rule of Civil Procedure 9(b)

Rule 9(b) provides that "the circumstances constituting fraud . . . shall be stated with particularity."  To satisfy the particularity requirement, a complaint must: "'(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'"[18]  However, "intent, knowledge, and

---

[16]     *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)).

[17]      *Id.* (quoting *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006)).  *Accord Global Network Commc'ns, Inc. v. City of N.Y.*, 458 F.3d 150, 156 (2d Cir. 2006).

[18]     *Shields v. Citytrust Bancorp., Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) (quoting *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993)).

other conditions of mind may be averred generally."[19]

## III.   APPLICABLE LAW

### A.   Forum Non Conveniens

"[F]ederal courts have the power to dismiss damages actions under the common-law forum non conveniens doctrine . . . in 'cases where the alternative forum is abroad.'"[20]   The "decision to dismiss by reason of forum non conveniens is confided to the sound discretion of the district court."[21]   "'[I]n the determination of a motion to dismiss for forum non conveniens, the court may consider affidavits submitted by the moving and opposing parties.'"[22]

The Second Circuit continues to employ a three-part test established

---

[19]     Fed. R. Civ. P. 9(b).

[20]     *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 722 (1996) (quoting *American Dredging Co. v. Miller*, 510 U.S. 443, 449 n.2 (1994)).  *Accord Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007).

[21]     *Pollux Holding Ltd. v. Chase Manhattan Bank*, 329 F.3d 64, 70 (2d Cir. 2003) (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 257 (1981)).  *Accord ICC Indus. Inc. v. Israel Disc. Bank, Ltd.*, 170 Fed. App'x 766, 767 (2d Cir. 2006) ("'Where the district court has considered all relevant public and private interest factors, and where its balancing of these factors is reasonable, its decision deserves substantial deference.'") (quoting *Carey v. Bayerische Hypo-Und Vereinsbank*, 370 F.3d 234, 237 (2d Cir. 2004)).

[22]     *Base Metal Trading SA v. Russian Aluminum*, 253 F. Supp. 2d 681, 699 n.13 (S.D.N.Y. 2003) (quoting *Vanity Fair Mills, Inc. v. T. Eaton Co.*, 234 F.2d 633, 645 (2d Cir. 1956)), *aff'd*, 98 Fed. App'x 47 (2d Cir. 2004).

in the seminal case of *Iragorri v. United Technologies Corporation* in addressing motions to dismiss under the doctrine of forum non conveniens.[23]  "At step one, a court determines the degree of deference properly accorded the plaintiff's choice of forum.  At step two, it considers whether the alternative forum proposed by the defendants is adequate to adjudicate the parties' dispute.  Finally, at step three, a court balances the private and public interests implicated in the choice of forum."[24]

"[A] court reviewing a motion to dismiss for forum non conveniens should begin with the assumption that the plaintiff's choice of forum will stand."[25]  However, "the degree of deference given to a plaintiff's forum choice varies with the circumstances" and "the choice of a United States forum by a foreign plaintiff is entitled to less deference."[26]  In assessing the proper measure of deference,

> [f]actors disfavoring forum non conveniens dismissal "include the convenience of the plaintiff's residence in relation to the chosen forum, the availability of witnesses or evidence to the forum

---

[23]      *Iragorri v. United Techs. Corp.*, 274 F.3d 65, 70-75 (2d Cir. 2001) (en banc).

[24]      *Norex Petroleum Ltd. v. Access Indus., Inc.*, 416 F.3d 146, 153 (2d Cir. 2005).  *Accord Abdullahi v. Pfizer, Inc.*, 562 F.3d 163, 189 (2d Cir. 2009).

[25]      *Iragorri*, 274 F.3d at 71.  *Accord Giro, Inc. v. Malaysian Airline Sys. Berhad*, No. 10 Civ. 5550, 2011 WL 2183171, at *5 (S.D.N.Y. June 3, 2011).

[26]      *Iragorri*, 274 F.3d at 71.  *Accord Thai-Lao Lignite (Thailand) Co. v. Government of the Lao People's Democratic Republic*, No. 10 Civ. 5256, 2011 WL 3516154, at *9 (S.D.N.Y. Aug. 3, 2011).

> district, the defendant's amenability to suit in the forum district,
> the availability of appropriate legal assistance, and other reasons
> relating to convenience or expense. In contrast, Plaintiffs' choice
> of forum deserves *minimal deference* where that choice was
> motivated by attempts to win a tactical advantage resulting from
> local laws that favor the plaintiff's case, the habitual generosity of
> juries in the United States or in the forum district, the plaintiff's
> popularity or the defendant's unpopularity in the region, or the
> inconvenience and expense to the defendant resulting from
> litigation in that forum."[27]

Thus, "the greater the plaintiff's or the lawsuit's bona fide connection to the United

States and to the forum of choice and the more it appears that considerations of

convenience favor the conduct of the lawsuit in the United States, the more

difficult it will be . . . to gain dismissal" whereas "the more it appears that the

plaintiff's choice of a U.S. forum was motivated by forum-shopping reasons . . .

the less deference the plaintiff's choice commands."[28]

At step two, "the court must consider whether an adequate alternative

forum exists."[29]  "The defendant bears the burden of establishing that a presently

---

[27]     *Erausquin v. Notz, Stucki Mgmt. (Bermuda) Ltd.*, No. 09 Civ. 7846,
2011 WL 3734387, at *9 (S.D.N.Y. Aug. 25, 2011) (quoting *Iragorri*, 274 F.3d at
72) (emphasis added).

[28]     *Palacios v. Coca-Cola Co.*, 757 F. Supp. 2d 347, 352 (S.D.N.Y. 2010)
(quotation marks omitted).  *Accord Huang v. Advanced Battery Tech., Inc.*, No. 09
Civ. 8297, 2010 WL 2143669, at *3 (S.D.N.Y. May 26, 2010).

[29]     *Iragorri*, 274 F.3d at 73.

available and adequate alternative forum exists."[30]

> Dismissal is not appropriate if an adequate and presently available alternative forum does not exist. . . . [A] forum may . . . be inadequate if it does not permit the reasonably prompt adjudication of a dispute, if the forum is not presently available, or if the forum provides a remedy so clearly unsatisfactory or inadequate that it is tantamount to no remedy at all.[31]

However, "[a]n alternative forum is adequate if the defendants are amenable to service of process there, and if it permits litigation of the subject matter of the dispute."[32]  "An agreement by the defendant to submit to the jurisdiction of the foreign forum can generally satisfy this requirement, and only on rare occasions will the alternative forum . . . be so unsatisfactory that the forum is inadequate."[33]  Moreover, "[t]he availability of an adequate alternative forum does not depend on the existence of the identical cause of action in the other forum, nor on identical remedies."[34]

---

[30]    *Abdullahi*, 562 F.3d at 189.

[31]    *Id.*

[32]    *Pollux Holding*, 329 F.3d at 75.  *Accord Turedi v. Coca-Cola Co.*, 343 Fed. App'x 623, 625 (2d Cir. 2009); *Online Payment Solutions Inc. v. Svenska Handelsbanken AB*, 638 F. Supp. 2d 375, 384 (S.D.N.Y. 2009) ("[T]he standard imposed on a defendant to establish such adequacy is not heavy.").

[33]    *BFI Grp. Divino Corp. v. JSC Russian Aluminum*, 298 Fed. App'x 87, 91 (2d Cir. 2008) (quotation marks omitted).

[34]    *Norex Petroleum*, 416 F.3d at 158 (quotation marks omitted).  *Accord PT United Can Co. v. Crown Cork & Seal Co.*, 138 F.3d 65, 74 (2d Cir. 1998).

"At step three, Defendants must establish that a balancing of the private and public interest factors tilts heavily in favor of the alternative forum."[35] The Second Circuit employs a list of factors first stated in *Gulf Oil Corp. v. Gilbert* in weighing the private and public interests.[36] The burden is on the defendant to show "that the balance of private and public interest factors tilts heavily in favor of the alternative forum."[37] "The private interest factors include: (1) the relative ease of access to evidence; (2) the cost to transport witnesses to trial; (3) the availability of compulsory process for unwilling witnesses; and (4) other factors that make the trial more expeditious or less expensive."[38] "In considering these factors, the court is necessarily engaged in a comparison between the hardships defendant would suffer through the retention of jurisdiction and the hardships the plaintiff would suffer as the result of dismissal and the obligation to bring suit in another country."[39] However, "the concentration of evidence [overseas] weighs heavily in

---

[35] *Erausquin*, 2011 WL 3734387, at *12.

[36] *See Iragorri*, 274 F.3d at 73-74 (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947), *superseded by statute as stated by Gazis v. John S. Latsis (USA) Inc.*, 729 F. Supp. 979, 987 (S.D.N.Y. 1990)).

[37] *Abdullahi*, 562 F.3d at 189.

[38] *Maersk, Inc. v. Neewra, Inc.*, 554 F. Supp. 2d 424, 453-54 (S.D.N.Y. 2008).

[39] *Iragorri*, 274 F.3d at 74.

favor of dismissal."[40]  Moreover, American courts may not be able to "compel unwilling third-party witnesses to appear in the United States."[41]

"The public interest factors include: (1) settling local disputes in a local forum; (2) avoiding the difficulties of applying foreign law; and (3) avoiding the burden on jurors by having them decide cases that have no impact on their community."[42]  No one factor is dispositive, however, and so, for example, although "this country's interest in having United States courts enforce United States securities laws" is relevant "this interest is not outcome-determinative."[43]  In sum, "[t]he action should be dismissed only if the chosen forum is shown to be genuinely inconvenient and the selected forum significantly preferable."[44]

## B.    Common Law Fraud

"Under New York law, to state a claim for fraud a plaintiff must demonstrate: (1) a misrepresentation or omission of material fact; (2) which the

---

[40]    *Palacios*, 757 F. Supp. 2d at 361.

[41]    *DiRienzo v. Philip Servs. Corp.*, 294 F.3d 21, 30 (2d Cir. 2002).

[42]    *Maersk*, 554 F. Supp. 2d at 453-54.

[43]    *DiRienzo*, 294 F.3d at 28.  *Accord Allstate Life Ins. Co. v. Linter Grp. Ltd.*, 994 F.2d 996, 1002 (2d Cir. 1993) ("United States courts have an interest in enforcing United States securities laws, [but] this alone does not prohibit them from dismissing a securities action on the ground of forum non conveniens.").

[44]    *Iragorri*, 274 F.3d at 74-75.

-12-

defendant knew to be false; (3) which the defendant made with the intention of inducing reliance; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff."[45]  Because the elements of common-law fraud in New York are "substantially identical to those governing § 10(b), the identical analysis applies."[46]

   To state a claim for aiding and abetting fraud under New York law, a plaintiff must plead facts showing (1) the existence of a fraud; (2) defendant's knowledge of the fraud; and (3) that the defendant provided substantial assistance to advance the fraud's commission.[47]  "The knowledge requirement of an aiding and abetting fraud claim is satisfied by alleging actual knowledge of the underlying fraud."[48]  "Substantial assistance may only be found where the alleged aider and abettor affirmatively assists, helps conceal or fails to act when required to do so,

---

[45] *Wynn v. AC Rochester*, 273 F.3d 153, 156 (2d Cir. 2001) (citing *Lama Holding Co. v. Smith Barney, Inc.*, 88 N.Y.2d 413, 421 (1996)).

[46] *AIG Global Sec. Lending Corp. v. Banc of Am. Sec., LLC*, No. 01 Civ. 11448, 2005 WL 2385854, at *16 (S.D.N.Y. Sept. 26, 2005) (citation and quotation marks omitted).

[47] *See Wight v. BankAmerica Corp.*, 219 F.3d 79, 91 (2d Cir. 2000).

[48] *JP Morgan Chase Bank v. Winnick*, 406 F. Supp. 2d 247, 252 (S.D.N.Y. 2005) (citation omitted).

thereby enabling the breach to occur."[49]  Moreover, the plaintiff must allege that the aiding and abetting defendant proximately caused the harm on which the primary liability is predicated.[50]  At least with respect to an aiding and abetting fraud claim, the "substantial assistance" and "causation" elements are interrelated – "[w]hether the assistance is substantial or not is measured . . . by whether the action of the aider and abettor proximately caused the harm on which the primary liability is predicated."[51]

## IV.   DISCUSSION

### A.   Forum Non Conveniens

#### 1.   Plaintiffs' Choice of Forum Is Accorded Deference

Plaintiffs' choice of forum here is accorded deference.  Although foreign plaintiffs are generally accorded less deference in their selection of a forum, even foreign plaintiffs are accorded deference where their choice of forum

---

[49]     *In re Sharp Int'l Corp.*, 403 F.3d 43, 50 (2d Cir. 2005).  *Accord Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*, 446 F. Supp. 2d 163, 201 (S.D.N.Y. 2006).

[50]     *See McDaniel v. Bear Stearns & Co.*, 196 F. Supp. 2d 343, 359 (S.D.N.Y. 2002) (with respect to aiding and abetting fraud claim, "[p]roximate cause exists where defendant's actions were a substantial factor in the sequence of responsible causation, and plaintiff's injury was reasonably foreseeable or anticipated as a natural consequence") (quotation and citation omitted).

[51]     *Winnick*, 406 F. Supp. 2d at 256 (quotation and citation omitted).

is based on "valid reasons, such as convenience."[52]  Here, the *Iragorri* factors weigh in favor of  deference to plaintiffs' choice of forum.

       *First*, the "convenience of the plaintiff's residence in relation to the chosen forum"[53] does not weigh against according plaintiffs' choice of forum deference.  Because plaintiffs reside all over the world plaintiffs' choice of a distant forum does not necessarily raise any inference of forum shopping.  There simply is no forum that is convenient in relation to *all* plaintiffs' residences.  Pioneer is incorporated in the British Virgin Islands and based in Israel.[54]  Many of its clients are residents of Israel, and the remainder reside in the Island of Guernsey, the British Virgin Islands, Colombia, Mexico, Panama, the Netherlands, the Island of Jersey, and Switzerland.[55]  Silvana is based in Panama.[56]  The FAC only alleges that Broccoli and Galinanes are "foreign citizens, and not United States residents."[57]

       Given these circumstances, New York is as convenient a location as

---

[52]    *Pension Comm.*, 446 F. Supp. 2d at 177.

[53]    *Iragorri*, 274 F.3d at 72.

[54]    *See* FAC ¶ 11.

[55]    *See id.* ¶¶ 12-59.

[56]    *See id.* ¶ 64.

[57]    *Id.* ¶¶ 62-63.

any in relation to plaintiffs' various residences.  New York is a logical forum

because "it is easily accessible from almost any country,"[58] and the native language

is English – the language of international commerce and the alleged misstatements

at issue.  While these points do not suggest that New York is preferable to

Switzerland or Ireland, they do not raise any inference that plaintiffs' choice of

New York was motivated by forum shopping considerations.  Because New York

is a sufficiently convenient location for all plaintiffs to bring suit this factor does

not weigh against according plaintiffs' choice of forum deference.

   *Second*, "the availability of witnesses or evidence to the forum

district"[59] also does not weigh against deferring to plaintiffs' choice of forum.

Plaintiffs  point to witnesses and evidence in New York in support of bringing suit

here.  Plaintiffs logically selected New York as a convenient forum because (1)

OIS has had an office in New York since 1995 to conduct due diligence on

investment managers; (2) that office was "the hub of OIS's Madoff due diligence";

(3) OIS consulted with three New York law firms about its Madoff diligence; (4)

Clark and Atkins supervised Madoff from New York; and (5) the Clark Report,

which raised the red flags leading to an inference of scienter, was prepared in New

---

   [58]  Lead Plaintiffs' Opposition to Defendants' Motion to Dismiss the
Fourth Amended Class Action Complaint ("Opp. Mem.") at 9.

   [59]  *Iragorri*, 274 F.3d at 72.

York.[60]  In addition, OIS employees in Geneva called Clark in New York when Pioneer raised questions concerning OIS's diligence on the Fund.[61]

While witnesses and evidence from defendants' European operations will also be important in this litigation, they do not outweigh the evidence in New York to the extent that it suggests plaintiffs are forum shopping.  Defendants' decision-making process and policies were created outside the United States, predominantly in Switzerland.  Defendants' marketing and communications with investors also occurred outside the United States.  However, to the extent there are relevant witnesses in Europe, their testimony may be secured by letters rogatory.[62] To the extent that there is relevant documentary evidence in Europe, this consideration is given little weight due to technological advances.[63]  Accordingly, the witnesses and evidence located in New York indicate that plaintiffs' choice of forum was motivated by convenience rather than forum shopping considerations.

*Third*, "the defendant's amenability to suit in the forum district"[64]

---

[60]    Opp. Mem. at 8.

[61]    *See id.*

[62]    *See Ingram Micro, Inc. v. Airoute Cargo Express, Inc.*, No. 99 Civ. 12480, 2001 WL 282696, at *4 (S.D.N.Y. Mar. 22, 2001).

[63]    *See DiRienzo*, 294 F.3d at 30.

[64]    *Iragorri*, 274 F.3d at 72.

-17-

weighs in favor of according deference to plaintiffs' choice of forum.  Clark was

clearly amenable to suit in the United States, but his amenability to suit in

Switzerland was doubtful.  Although Clark now consents to suit in Switzerland,[65]

plaintiffs did not know that he would do so when they filed suit in New York.

Accordingly, this factor indicates that plaintiffs' choice of New York was a

legitimate attempt to obtain jurisdiction over Clark and weighs in favor of

deference to plaintiffs' choice of forum.[66]

        *Fourth*, there is no indication that plaintiffs' choice of forum was

motivated by improper considerations warranting minimal deference under

*Iragorri*.[67]  In other decisions dismissing similar suits on forum non conveniens

grounds, plaintiffs admitted that their choice of forum was based on tactical

---

[65]    *See* Defendants' Memorandum of Law in Support of Their Motion to Dismiss Fourth Amended Class Action Complaint ("Def. Mem.") at 6.

[66]    *See Norex Petroleum*, 416 F.3d at 155 (noting that a plaintiff's decision to sue outside its home forum, "where all defendants were amenable to suit" indicates that "convenience, and not tactical harassment of adversary, informed its" choice of forum).

[67]    *See Iragorri*, 274 F.3d at 72 ("Plaintiffs' choice of forum deserves minimal deference where that choice was motivated by attempts to win a tactical advantage resulting from local laws that favor the plaintiff's case, the habitual generosity of juries in the United States or in the forum district, the plaintiff's popularity or the defendant's unpopularity in the region, or the inconvenience and expense to the defendant resulting from litigation in that forum.").

considerations such as the availability of the class action mechanism.[68]  Although

such considerations may have played a part in plaintiffs' choice of forum here,

plaintiffs' choice of New York is supported by sufficient genuine grounds due to

convenience that I accord plaintiffs' choice of forum deference.

   *Fifth*, plaintiffs raise an additional argument that it is defendants that

are forum shopping.  Plaintiffs argue that Clark's supposed preference for

Switzerland or Ireland could not possibly be based on convenience.  In addition,

they argue that defendants' request to argue this litigation in multiple fora –

previously requesting the Bahamas,[69] now requesting Switzerland or Ireland –

makes clear their intention to avoid the United States at all costs.  Although this

argument is immaterial because I have already found that plaintiffs' choice of

forum is entitled to deference because it was chosen based on convenience, I am

not prepared to conclude that defendants are engaging in impermissible forum

shopping.

   Defendants' location indicates that they are legitimately seeking a

forum closer to their European operations.  The location of many witnesses and

evidence in Switzerland and Ireland also indicate that defendants are motivated by

---

[68]  *See infra* note [74].

[69]  *See* Defendants' Memorandum of Law in Support of Their Motion to Dismiss Second Amended Class Action Complaint [Docket No. 15]  at 29, n.22.

convenience.[70]  Although defendants previously sought to adjudicate the dispute in the Bahamas because of a forum selection clause binding plaintiffs to litigate in the Bahamas,[71] that issue is now moot because I have dismissed claims by those plaintiffs bound by the forum selection clause.[72]

In sum, I find that neither plaintiffs' initial choice of forum nor defendants' request for dismissal in favor of Switzerland or Ireland are motivated by forum shopping considerations.  The balance of the *Iragorri* factors favor giving plaintiffs' choice of forum deference because – despite plaintiffs non-U.S. citizenship – their choice of New York as a forum appears to be motivated by legitimate concerns and convenience.

Although four other judges have reached the contrary conclusion in cases involving foreign investors in foreign funds that allegedly suffered losses due to the Madoff Ponzi scheme, those cases are distinguishable.[73]  In *In re Herald,*

---

[70]     Defendants' request for two equally convenient fora is not inappropriate.  *See Niv v. Hilton Hotels Corp.*, 710 F. Supp. 2d 328, 347 (S.D.N.Y. 2008) (dismissing under forum non conveniens doctrine where "this dispute is more appropriately adjudicated in Egypt or Israel"), *aff'd*, 358 Fed. App'x 282 (2d Cir. 2009).

[71]     *See id.*

[72]     *See In re Optimal U.S. Litig.*, 2011 WL 1676067, at *6-17.

[73]     *See In re Herald, Primeo, & Thema Sec. Litig.*, No. 09 Civ. 289, 2011 WL 5928952, at *12 (S.D.N.Y. Nov. 29, 2011) (granting plaintiffs' choice of

*Primeo, and Thema Securities Litigation* plaintiffs explicitly stated that their

choice of forum was motivated by factors strongly indicative of forum shopping –

taking "advantage of the [U.S.] class action device," avoiding "costly fee shifting,"

and pursuing "claims under RICO."[74]  Likewise, in *Banco Santander* "Plaintiffs

acknowledge[d] that their decision to sue in the United States [was], to a

considerable extent, based on the availability of advantageous procedural

mechanisms such as the class action and contingency fee arrangements."[75]  Such

---

forum "very limited deference" where plaintiffs sought to take advantage of the
U.S. class action device, avoid fee-shifting rules, achieve higher damages, and take
advantage of Madoff's notoriety in New York); *Erausquin*, 2011 WL 3734387, at
*10 ("On balance, Plaintiffs' choice of this District appears to have been based
more on forum shopping considerations than on legitimate reasons."); *Anwar v.
Fairfield Greenwich Ltd.*, 742 F. Supp. 2d 367, 375-78 (S.D.N.Y. 2010) (granting
plaintiffs' choice of forum "limited deference" where plaintiffs from Dubai
brought suit on "representations made . . . in Singapore and Dubai" even though
the litigation had world-wide scope); *In re Banco Santander Sec.-Optimal Litig.*,
732 F. Supp. 2d 1305, 1336 (S.D. Fla. 2010) (granting plaintiffs' choice of forum
"some, but little, deference" where "none of the Plaintiffs, and only two of the
twelve Defendants, are citizens of the United States," "[t]he relevant investment
funds were incorporated in the Bahamas," and availability of the class action and
contingent fee mechanisms factored in the choice of forum), *aff'd sub nom.
Inversiones Mar Octava Limitada v. Banco Santander S.A.*, No. 10-14012, 2011
WL 3823284 (11th Cir. Aug. 30, 2011) (per curiam).

[74]     *In re Herald, Primeo, & Thema Sec. Litig.*, 2011 WL 5928952, at *12
(quotations omitted).

[75]     *Banco Santander*, 732 F. Supp. 2d at 1336.  I also note that the *Banco
Santander* decision, while based on the law of the Eleventh Circuit and not
considering the *Iragorri* factors, focused its inquiry on whether the plaintiffs'
choice of forum was truly based on convenience.  *See id.*

"attempts to win a tactical advantage resulting from local laws" support giving a foreign plaintiffs' choice of forum minimal deference.[76]  In contrast, plaintiffs here argue that their choice of forum was based on the evidence available in New York.  In *Erausquin* the court noted that "Plaintiffs do not bring a single claim under federal law," and weighed that factor against according deference to plaintiffs' choice of forum.[77]  Here, plaintiffs bring federal securities law claims against defendants.[78]  Finally, in *Anwar*, all of the plaintiffs were residents of Dubai.[79]  As a result, their location indicated that they selected New York as a result of forum shopping.  Here, the plaintiffs are scattered across the world and their location does not indicate that New York was more inconvenient than other possible locations.  Accordingly, while these cases inform my analysis, they are not determinative on the issue of how much deference to give to plaintiffs' choice of forum.

### 2.  Adequacy of Alternative Fora

Switzerland and Ireland are adequate fora.  Both possible fora satisfy

---

[76]     *Iragorri*, 274 F.3d at 72.

[77]     *Erausquin*, 2011 WL 3734387, at *10.

[78]     *See DiRienzo*, 294 F.3d at 28 (holding that plaintiffs had a "valid reason" to sue in United States federal court where seeking to enforce United States federal law).

[79]     *See Anwar*, 742 F. Supp. 2d at 377.

the two-part test for an adequate forum, and plaintiffs do not contest their adequacy.

   *First*, Switzerland and Ireland are adequate fora because the defendants are "amenable to service of process there."[80]  Defendants have consented to the jurisdiction of the courts of Switzerland and Ireland,[81] and this consent is sufficient to render defendants "amenable to service of process" for purposes of forum non conveniens analysis.[82]

   *Second*, Ireland and Switzerland are adequate fora because they "permit[] litigation on the subject matter of the dispute and offer[] remedies for the wrong the plaintiff alleges."[83]  Another court considering similar claims concluded that Ireland was an adequate forum because it recognized "causes of actions for fraud, negligence, breach of contract, and other causes similar to common law

---

[80] *Id.*

[81] *See* Def. Mem. at 6.

[82] *See BFI Grp. Divino Corp.*, 298 Fed. App'x at 91 (noting that "[a]n agreement by the defendant to submit to the jurisdiction of the foreign forum can generally satisfy this requirement") (quotation marks omitted); *see also Banco Santander*, 732 F. Supp. 2d at 1332 ("The Court will honor the Defendants' consents to submit to personal jurisdiction in Ireland but will retain jurisdiction to try this case in the event that any of the Defendants do not submit to the jurisdiction of the Irish courts.").

[83] *Anwar*, 742 F. Supp. 2d at 377.

claims in the United States."[84]  Although Irish causes of action may differ

somewhat from those in this country, that "does not render Ireland inadequate."[85]

The forum must simply offer "remedies for the wrong the plaintiff alleges,"[86] and

Irish causes of action, particularly for fraud, do offer plaintiffs a potential remedy.

Likewise, courts have recognized Switzerland as an adequate forum

for lawsuits such as this one.  *Erausquin* held that Switzerland permitted litigation

of plaintiffs' claims, where plaintiffs alleged that "Defendants deceived Plaintiffs

and/or breached their duties with respect to the performance, custody, and

oversight of . . . investments" including "false statements concerning . . .

investment strategy."[87]  Although Switzerland's statute of limitations could

potentially preclude plaintiffs from obtaining a remedy,[88] defendants have agreed

not raise any defense related to the timeliness of an action in Switzerland.[89]

Accordingly, Switzerland is an adequate forum for this case.

### 3.      Private and Public Interest Factors

---

[84]     *Banco Santander*, 732 F. Supp. 2d at 1332.

[85]     *Id.*

[86]     *Anwar*, 742 F. Supp. 2d at 377.

[87]     *Erausquin*, 2011 WL 3734387, at *2, 11.

[88]     *See id.* at *11.

[89]     *See* Def. Mem. at 7.

-24-

### a.    Private Interests

*First*, the "relative ease of access to evidence"[90] does not weigh

significantly in either direction.  Defendants rely heavily on the *Banco Santander*

decision to argue that this factor points to a European forum. *Banco Santander*

noted that despite the presence of two U.S. defendants, most of the parties and

witnesses within their control were non-U.S. citizens.[91]  Indeed, there is evidence

here that is more accessible in Europe.  All of the plaintiffs are foreign.  Of the 121

defendants and third-parties plaintiffs believed likely to have discoverable

information, thirty-five have Swiss addresses and twenty-three have addresses in

other European countries, mainly Ireland.  Only a handful are in New York.[92]  The

*Banco Santander* court did not accord much weight to Madoff and related New

York witnesses, and the *Erausquin* court gave heavy weight to witnesses in

Switzerland.[93]

---

[90]    *Maersk*, 554 F. Supp. 2d at 453-54.

[91]    *See Banco Santander*, 732 F. Supp. 2d at 1336-37.

[92]    *See* Def. Mem. at 9.

[93]    *Banco Santander*, 732 F. Supp. at 1338 ("Nor is the Court persuaded that Madoff and DiPascali possess information that is necessary to the pertinent issues in this case, namely any Defendant's state of mind, the nature of the Defendants' due diligence, and any Plaintiffs' reliance on the Defendants' actions and representations."); *see also Erausquin*, 2011 WL 3734387, at *12 ("[T]he Complaint's most prominently featured individual, Echevarria, resides in

However, as *Banco Santander* noted, "Defendants' due diligence"[94] is an important issue in this case, and much of that evidence is in New York or nearby.  Clark, a New Jersey resident, directed defendants' Madoff due diligence from 2003 to 2008 in New York, met with Madoff in New York, and received copies of Madoff's documents in New York.  Clark drafted key documents in this litigation, including the Clark Report, in New York.  The two years worth of diligence reflected in the Report concerned contacts between Madoff and third parties in New York.  Plaintiffs have been pursuing discovery of these third parties, including an initial document production from the Madoff Trustee.  Moreover, *Erausquin*'s emphasis on witnesses in Switzerland is distinguishable because it is based on former employees of the defendant not "subject to compulsory process" in New York.[95]  Here, many Swiss witnesses are current OIS employees and, therefore, under the control of defendants.  Finally, I note that documentary evidence abroad within defendants' control is accorded little weight in this analysis due to technological advances.[96]

---

Switzerland and, as a former Notz Stucki employee, is not subject to compulsory process in New York.").

[94]     *Banco Santander*, 732 F. Supp. at 1338.

[95]     *Erausquin*, 2011 WL 3734387, at *12.

[96]     *See DiRienzo*, 294 F.3d at 30.

In sum, the evidence relevant to this case is scattered all over the globe.  There is important evidence in New York, Switzerland, Ireland, and elsewhere.  Accordingly, this factor fails to "tilt[] strongly in favor of trial in the foreign forum"[97] such that the deference due to plaintiffs' choice of forum is overcome.

*Second*, the "cost to transport witnesses to trial"[98] is not a significant factor in the forum non conveniens analysis in this instance.  Although defendants may complain about the cost of flying employees to New York, this is a cost of their choice to do business in New York with Madoff.  Defendants were not inconvenienced to visit New York for business purposes; any inconvenience caused by travel to New York for this litigation will not be oppressive.[99]

*Third*, the "availability of compulsory process for unwilling

---

[97]     *Omollo v. Citibank, N.A.*, No. 07 Civ. 9259, 2008 WL 1966721, at *3 (S.D.N.Y. May 6, 2008), *aff'd*, 361 Fed. App'x 288 (2d Cir. 2010).

[98]     *Maersk*, 554 F. Supp. 2d at 453-54.

[99]     *See Cromer Fin. Ltd. v. Berger*, 158 F. Supp. 2d 347, 362 (S.D.N.Y. 2001) ("[W]hile it is important to weigh from every relevant perspective the burden on the Bermuda defendants of litigation in New York as opposed to in their own home, any fair evaluation of the extent of that burden must also take into account that these defendants expressed no reluctance to perform work emanating from the United States, or to travel to the United States, when seeking employment by the Fund.  In short, they expressed a desire to perform on a global stage when it was in their interest to do so.").

-27-

witnesses"[100] does not weigh heavily in either direction.  Defendants contend that

most relevant witnesses are in Europe and that letters rogatory are an appropriate

mechanism for securing testimony from relevant witnesses in the United States.[101]

However, plaintiffs argue this factor favors New York because "[t]he unwilling

witnesses and evidence located in New York are qualitatively and quantitatively

more important than the witnesses and evidence located in Switzerland."[102]

       Much of the due diligence team – important witnesses in this litigation

– remain in New York or New Jersey and are subject to compulsory process.[103]

Defendants' employees in Europe are within defendants' control and subject to

compulsory process.  Letters rogatory are an appropriate mechanism for securing

the testimony of other "witnesses who cannot be compelled to appear in this

Court."[104]  Accordingly, because a significant number of witnesses are subject to

compulsory process in New York this factor does not support dismissal in favor of

---

[100]    *Maersk*, 554 F. Supp. 2d at 453-54.

[101]    *See Banco Santander*, 732 F. Supp. 2d at 1338 (noting that letters rogatory "are freely granted by district courts in the United States").

[102]    Opp. Mem. at 13.

[103]    *See* 10/6/11 Declaration of Jerome C. Pontrelli, Director of Investigations for plaintiffs' counsel,  in Support of Lead Plaintiffs' Opposition to Defendants' Motion to Dismiss ¶¶ 4-8.

[104]    *Ingram Micro*, 2001 WL 282696, at *4.

Switzerland or Ireland.

*Fourth*, defendants' attempt to point to "other factors that make the trial more expeditious or less expensive"[105] is unavailing.  Defendants argue that Swiss privacy laws will result in additional costs procuring Swiss documents.[106] However, Swiss privacy laws will have to be decided regardless of the forum.[107] To the extent the application of foreign law weighs against a United States forum, that is properly considered in the analysis of public interest factors.[108]

In sum, the private interest factors fail to weigh heavily in either direction.  Defendants have failed to show that the private interest factors tilt "strongly in favor of trial in the foreign forum."[109]

### b.   Public Interests

*First*, the fora's relative interests[110] weighs slightly in favor of New

---

[105]     *Maersk*, 554 F. Supp. 2d at 453-54.

[106]     *See* Def Mem. at 10 n.9.

[107]     *See* 10/6/11 Declaration of Titus van Stiphout, plaintiffs' Swiss law expert, at 5 (concluding that "application of the Swiss privacy statutes and statutes protecting business secrets does not depend on whether the Case is proceeded in a Swiss court or a US court").

[108]     *See infra* Part IV.A.3.b.

[109]     *Omollo*, 2008 WL 1966721, at *3.

[110]     *See Maersk*, 554 F. Supp. 2d at 453-54.

York.  Defendants rely primarily on the *Banco Santander* and *Erausquin* opinions

to argue that the United States "has little interest in adjudicating claims by foreign

plaintiffs against primarily foreign defendants involving Madoff-related

investments."[111]  Specifically, the *Banco Santander* court concluded

> The United States' interest in policing conduct within its borders
> has been affirmed already with the prosecution of Madoff, who
> will spend the remainder of his life in a federal prison.
> Furthermore, the Securities and Exchange Commission is fully
> capable of validating the United States' interest in policing the
> securities market by bringing suit on its own, which it has already
> done. As is common knowledge, numerous lawsuits have also
> been filed by domestic plaintiffs asserting domestic causes of
> action arising out of the unfortunate Madoff affair. The United
> States has ample mechanisms in place to punish fraudulent
> conduct; it is not necessary for foreign plaintiffs to bring lawsuits
> in our courts in order to validate those interests. In fact, it is
> apparent from the briefing that the Plaintiffs' choice of forum rests
> largely on the procedural mechanisms available to Plaintiffs in the
> United States, such as the opt-out class action and contingency fee
> arrangements. The want of these processes does not render Ireland
> an unavailable or less convenient forum.
>
> Furthermore, the Plaintiffs did not have a reasonable expectation
> of a United States venue for claims arising out of their investment
> in the Optimal funds. All of them purchased shares in a foreign
> fund with foreign directors, a foreign investments manager, a
> foreign custodian, a foreign administrator, and a foreign auditor.
> And, of course, the Plaintiffs themselves are all foreign. In
> addition, half of the Plaintiffs, in account agreements with their
> Banco Santander affiliate banks, explicitly agreed to forum
> selection provisions requiring them to sue in forums other than the

---

[111]    Def. Mem. at 14.

United States.[112]

In response plaintiffs argue that New York has a strong interest in federal securities fraud claims arising from New York based conduct – due diligence performed in New York and Clark's false and misleading statements made from New York.  In addition, plaintiffs argue that the resources expended by this Court on previous motions, and by the parties on discovery, support New York's interest in this action.

While defendants accurately note that the United States' interest in the Madoff fraud has been vindicated by a federal prosecution, an SEC suit, and several private lawsuits by domestic plaintiffs, New York's interest in this case is broader than in the other Madoff-related cases cited by defendants.  Unlike previous cases, here plaintiffs did have a reasonable expectation of a United States forum because they allege that the due diligence occurred mainly in New York and that Clark made misstatements in New York.  While other alleged conduct occurred abroad, this forum has "at least as great an interest in this dispute as" as Switzerland or Ireland because of the conduct in New York and the interest in policing fraudulent misrepresentations made in the United States.[113]

---

[112]     *Banco Santander*, 732 F. Supp. 2d at 1343-44 (citations omitted).

[113]     *Manela v. Garantia Banking Ltd.*, 940 F. Supp. 584, 595 (S.D.N.Y. 1996) ("The United States . . . has a strong interest in policing fraudulent

Other interests of the possible forums do not weigh heavily in my consideration. The interest in "settling local disputes in a local forum"[114] has little applicability where plaintiffs and evidence are scattered across the globe. The interest in "avoiding the burden on jurors by having them decide cases that have no impact on their community"[115] is not applicable because, as discussed above, it cannot be said that this case will have *no* impact on the local community – due diligence efforts were conducted in New York and one of the defendants resides nearby. Finally, "'administrative difficulties . . . for courts when litigation is piled up in congested centers'"[116] do weigh against adding another case to the congested docket of the Southern District of New York – although I note that my docket is not particularly congested. However, I give that concern less weight than the other public interest factors and find it insufficient to favor dismissal in favor of Switzerland or Ireland.

*Second*, the interest in "avoiding the difficulties of applying foreign

---

misrepresentations made within this country in connection with the purchase and sale of securities regardless of the nationality of the victim, the tortfeasor, or the issuer.").

[114]   *Maersk*, 554 F. Supp. 2d at 454.

[115]   *Id.*

[116]   *Iragorri*, 274 F.3d at 74 (quoting *Gulf Oil*, 330 U.S. at 508-09).

law"[117] does weigh slightly in favor of dismissal.  Although the court is not required to conduct a full choice-of-law analysis or determine precisely what law applies, if foreign law is likely to apply, this factor weighs in favor of dismissal.[118] To resolve conflicts in tort cases, New York applies an "interest analysis" to identify the jurisdiction that has the greatest interest in the litigation based on the occurrences within each jurisdiction, or contacts of the parties with each jurisdiction, that "'relate to the purpose of the particular law in conflict.'"[119]  When the law is one which regulates conduct, "the law of the jurisdiction where the tort occurred will generally apply because that jurisdiction has the greatest interest in regulating behavior within its borders."[120]  A tort occurs in "the place where the

---

[117]     *Maersk*, 554 F. Supp. 2d at 453-54.

[118]     *See Palacios*, 757 F. Supp. 2d at 363; *PT United Can Co. v. Crown Cork & Seal Co.*, No. 96 Civ 3669, 1997 WL 31194, at *10 (S.D.N.Y. Jan. 28, 1997), *aff'd*, 138 F.3d 65 (2d Cir. 1998).

[119]     *GlobalNet Financial.com v. Frank Crystal & Co.*, 449 F.3d 377, 384 (2d Cir. 2006) (quoting *Schultz v. Boy Scouts of Am., Inc.*, 65 N.Y.2d 189, 197 (1985)).  *Accord Finance One Pub. Co. v. Lehman Bros. Special Fin., Inc.*, 414 F.3d 325, 337 (2d Cir. 2005) (the interest analysis is a "flexible approach intended to give controlling effect to the law of the jurisdiction which, because of its relationship or contact with the occurrence or the parties, has the greatest concern with the specific issue raised in the litigation") (citation omitted).

[120]     *GlobalNet Financial.com*, 449 F.3d at 384.

injury was inflicted," which is generally where the plaintiffs are located.[121] Accordingly, as none of the plaintiffs are located in the United States, it is likely that questions of foreign law will arise.  In addition, issues of Swiss privacy law may arise.  But I accord the issue of Swiss privacy little weight because it is not unusual for courts in this district to consider such issues in connection with discovery in cases with a global scale.[122]  On the other hand, there will be important questions of U.S. law to adjudicate.  This Court has sustained federal securities law claims against defendants, and there "is a strong interest in having a[] [U.S.] court interpret and apply U.S. securities law claims."[123]  Thus, this case will likely involve important questions of U.S. law as well as questions of foreign law.  Accordingly, because of the U.S. interest in applying U.S. securities law, the likely presence of questions of foreign law only weighs minimally in favor of dismissal.

---

[121]     *Cromer Fin. Ltd. v. Berger*, 137 F. Supp. 2d 452, 492 (S.D.N.Y. 2001) (citation and quotation marks omitted).  *Accord Sack v. Low*, 478 F.2d 360, 365-66 (2d Cir. 1973) (interpreting New York law).  However, plaintiffs are located in many foreign jurisdictions – all of which have their own law.

[122]     *See, e.g.*, *Minpeco, S.A. v. Conticommodity Servs., Inc.*, 116 F.R.D. 517, 519 (S.D.N.Y. 1987) ("At issue is BPS' refusal to provide certain documents and interrogatory answers containing information whose disclosure BPS contends would violate Swiss bank secrecy laws.").

[123]     *E.On AG v. Acciona, S.A.*, 468 F. Supp. 2d 559, 588 (S.D.N.Y. 2007).

In sum, the public interest factors barely tip the scales in favor of a foreign forum.  Defendants have failed to show that the public interest factors – especially combined with the private interest factors – tilt "strongly" in favor of Ireland or Switzerland such that defendants can overcome the deference due to plaintiffs' choice of forum.[124]  Because an action should be dismissed under the doctrine of forum non conveniens "only if the chosen forum is shown to be genuinely inconvenient and the selected forum significantly preferable"[125] defendants' motion for dismissal on that ground is denied.

**B.     Fraud Claims Against Banco Santander**

**1.     False Statement**

Defendants argue that the common law fraud claims against Banco Santander must be dismissed because plaintiffs do not point to any misstatements by Banco Santander.  Rather, plaintiffs accuse defendants generally of making statements that appeared in Explanatory Memoranda ("EMs") issued by Optimal Multiadvisors Ltd. ("Multiadvisors") and in oral communications between Clark and Pioneer.  Defendants contend that plaintiffs' reliance on the group pleading doctrine and scheme liability is misplaced in light of the Supreme Court's decision

---

[124]     *Omollo*, 2008 WL 1966721, at *3.

[125]     *Iragorri*, 274 F.3d at 74-75.

in *Janus*.

Initially, I note what this decision does *not* concern – whether the group pleading doctrine for *federal securities law* claims survives *Janus*.  Rather, this decision concerns only whether the group pleading doctrine for *common law fraud* claims is still viable after *Janus*.[126]  I conclude that it is.

Although the analysis for common law fraud claims mostly mirrors the analysis for federal securities law claims,[127] several aspects of *Janus* indicate that it applies uniquely to federal securities law claims.  *First*, the holding of *Janus* is based on the limited scope given to implied rights of action.  The Court considered that "in analyzing whether [defendant] 'made' the statements for purposes of Rule 10b-5, we are mindful that we must give 'narrow dimensions . . . to a right of action Congress did not authorize when it first enacted the statute and did not expand when it revisited the law.'"[128]  Limitations imposed on a cause of action because it is an implied right of action under a federal statute should not be used to limit the common law.

---

[126]   A more extensive discussion of the *Janus* opinion appears in the October 14 Opinion.  *See In re Optimal U.S. Litig.*, 2011 WL 4908745, at *1-2.

[127]   *See AIG Global Sec. Lending Corp.*, 2005 WL 2385854, at *16.

[128]   *Janus*, 131 S. Ct. at 2302 (quoting *Stoneridge Inv. Partners v. Scientific-Atlanta*, 552 U.S. 148, 167 (2008)).

*Second*, the Court's holding is based on a construction of the language appearing in Rule 10b-5.  The Court relies on dictionary definitions.[129]  Whatever merit the use of dictionaries in judicial opinions has, this is traditionally a tool of statutory construction, not common law reasoning.[130]  Accordingly, I have no reason to believe that the decision of a federal court interpreting federal statutory law by looking to dictionaries contemporaneous with the Exchange Act would have any impact on the scope of a common law fraud claim.  I am bound to follow the decisions of the courts of the State of New York in determining the scope of common law fraud in New York.  Because those courts have not yet applied *Janus* to common law fraud claims – and because I have no reason to believe that they will do so – I cannot apply the holding of *Janus* to limit New York common law fraud claims.  Accordingly, while *Janus* calls into question the viability of the

---

[129]     *See id.* ("One 'makes' a statement by stating it. When 'make' is paired with a noun expressing the action of a verb, the resulting phrase is 'approximately equivalent in sense' to that verb. For instance, 'to make a proclamation' is the approximate equivalent of 'to proclaim,' and 'to make a promise' approximates 'to promise.'  The phrase at issue in Rule 10b-5, '[t]o make any . . . statement,' is thus the approximate equivalent of 'to state.'") (quoting the 1933 edition of the Oxford English Dictionary and the 1934 edition of Webster's New International Dictionary).

[130]     *See, e.g.*, A. Raymond Randolph, *Dictionaries, Plain Meaning, and Context in Statutory Interpretation*, 17 Harv. J.L. & Pub. Pol'y 71, 73 (1994) ("Dictionary citing in judicial opinions . . . imply that the meaning of the words used in a statute equal the meaning of the statute.  This is demonstrably false or, as Judge Easterbrook has put it, 'silly.'") (citations omitted).

group pleading doctrine for federal securities law claims, its application to common law fraud claims is unaffected by *Janus*.

Under the group pleading doctrine, plaintiffs need not identify a specific statement made by Banco Santander; rather, they may satisfy Rule 9(b) by referring to an offering memorandum.[131] Thus, the statements in the Multiadvisors EMs fall within the scope of the group pleading doctrine if plaintiffs can demonstrate that Banco Santander's "involvement in the fraud [is] sufficient to render it an 'insider [or affiliate]' for the purposes of the group pleading doctrine."[132] However, Banco Santander's liability cannot be predicated on Clark's alleged misstatements because the group pleading doctrine applies only to written statements. Defendants contend that the group pleading doctrine is inapplicable here because plaintiffs have not alleged that Banco Santander was an "individual[] with direct involvement in the everyday business" of Multiadvisors

---

[131]  *See Ouaknine v. MacFarlane*, 897 F.2d 75, 80 (2d Cir. 1990) ("[R]eference to an offering memorandum satisfies [Rule] 9(b)'s requirement of identifying time, place, speaker, and content of representation where, as here, defendants are insiders or affiliates participating in the offer of securities."); *Luce v. Edelstein*, 802 F.2d 49, 55 (2d Cir. 1986) ("[N]o specific connection between fraudulent representations in [an] Offering Memorandum and particular defendants is necessary where . . . defendants are insiders or affiliates participating in the offer of the securities in question.").

[132]  *King County, Wash. v. IKB Deutsche Industriebank AG*, 751 F. Supp. 2d 652, 658-59 (S.D.N.Y. 2010).

such that it would be considered an insider or affiliate for purposes of the group pleading doctrine.[133]

Although the group pleading doctrine often is used to plead liability for directors and officers, the Second Circuit has permitted the doctrine to be used to impose liability on corporations.  Indeed, it originally developed the doctrine with respect to corporations acting as limited partners – not as shareholders in another corporate entity.[134]  The law on when a corporation can be liable under the group pleading doctrine as an "insider or affiliate" is less well developed than in the context of directors and officers.  For example, one court has held that two corporations that owned stock in (and shared directors with) the entity that allegedly issued misstatements could not be liable under the group pleading doctrine because "there is simply no allegation of interaction among or between

---

[133]    *In re Smith Barney Transfer Agent Litig.*, 765 F. Supp. 2d 391, 401 (S.D.N.Y. 2011).

[134]    *See Ouaknine*, 897 F.2d at 80; *DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.3d 1242, 1248-49 (2d Cir. 1987) (allowing plaintiffs, investors in a limited partnership, to use the group pleading doctrine to proceed against the limited partnership itself, the corporation that was the general partner, and the corporate parent of the corporation that was the general partner, but affirming dismissal of claims where plaintiffs merely made conclusory allegations that defendants were affiliated entities); *Luce*, 802 F.2d at 52, 54-55.  While *DiVittorio* did hold that the complaint stated a claim against the corporate parent of the general partner, the court did not provide an explanation of how that relationship justified sustaining the claim.  *See* 822 F.3d at 1249.

these corporate entities sufficient to justify [their] treatment . . . as insiders."[135]
Another decision held corporate entities were properly included in the group
pleading doctrine where those "defendants were intimately involved both in
negotiating the Offer and in drafting the allegedly fraudulent Solicitation and
Tender Offer Statement."[136]  Likewise, another court found allegations of corporate
relationships sufficient to satisfy the group pleading exception where the related
corporations had a common officer/director who allegedly participated in drafting
the fraudulent document.[137]  In sum, mere allegations of a corporate relationship
are insufficient to render a corporation liable as an insider or affiliate under the
group pleading doctrine.  Rather, plaintiffs must allege interaction between the
corporate entities relating to the subject matter of the alleged fraudulent
misstatement or omission that is more than conclusory.

     Plaintiffs have pled a relationship between Banco Santander and the

---

[135]    *Brickman v. Tyco Toys, Inc.*, 722 F. Supp. 1054, 1061 (S.D.N.Y. 1981).

[136]    *Polar Int'l Brokerage Corp. v. Reeve*, 108 F. Supp. 2d 225, 238 (S.D.N.Y. 2000).

[137]    *See Adler v. Berg Harmon Assocs.*, 816 F. Supp. 919, 927-28 (S.D.N.Y. 1993) ("The two parent corporations are Berg Harmon insiders who are alleged to have participated in the drafting of the PPMs through the actions taken on their behalf by Berg, their high ranking officer.  Thus, the allegations against [the parent corporations] are sufficiently specific under Rule 9(b).") (citation omitted).

subject of the allegedly fraudulent statements in Multiadivsors' EMs sufficient to satisfy the group pleading doctrine.  Plaintiffs rely on the allegations that Banco Santander (1) owned one-hundred percent of OIS (2)  was aware of the red flags raised in the Courvoisier memoranda; and (3) oversaw OIS's due diligence of the Fund.[138]  The first allegation is insufficient to satisfy Rule 9(b) under the group pleading doctrine because it merely alleges a corporate relationship.  However, the second and third allegations do allege a relationship in which Banco Santander exercised oversight over the due diligence efforts of OIS that were the basis for the allegedly fraudulent statements in the EMs.  In sum, plaintiffs do not simply aver that Banco Santander is an "insider or affiliate" because of its corporation relationship; rather, they connect Banco Santander to the allegedly fraudulent statements and omissions in the EMs by raising allegations that lead to a plausible inference that Banco Santander actively oversaw the process – and *reviewed* key *documents* providing the basis for – the statements and omissions at issue.

### 2.    State of Mind

Defendants also contend that the FAC fails to allege that Banco Santander acted with scienter, with respect to the fraud claims,[139] or "actual

---

[138]    *See* 5/10/11 Tr. at 11-12.

[139]    *See In re NovaGold Res. Inc. Sec. Litig.*, 629 F. Supp. 2d 272, 303 (S.D.N.Y. 2009) (holding that plaintiff must "plead scienter for each defendant").

knowledge," with respect to the aiding and abetting claim.[140]  Although plaintiffs have alleged that "Defendants' knowledge of Madoff's ongoing fraud on the SEC was evidenced in internal memoranda prepared by OIS,"[141] defendants argue that there is no allegation that anyone at Banco Santander received the 2002 Courvoisier memoranda.  Plaintiffs argue that the May 10 bench ruling is dispositive on this issue.

The May 2 Opinion expressly left open the issue of whether plaintiffs have adequately pled a common law fraud claim or an aiding and abetting claim against Banco Santander.[142]  However, in discussing the section 20(a) claim against Banco Santander I made rulings bearing on Banco Santander's state of mind.

---

[140]     *Winnick*, 406 F. Supp. 2d at 252.

[141]     FAC ¶ 88.

[142]     *See In re Optimal U.S. Litig.*, 2011 WL 1676067, at *17 n.234 ("Defendants do not explicitly attack Plaintiffs' aiding and abetting claim for failure to allege Banco Santander's 'actual knowledge of the underlying fraud,' a required element. . . . [I]f and when Defendants revisit this argument in the context of (once again) moving to dismiss Plaintiffs' fraud claims, they are invited to seek dismissal of Plaintiffs' aiding and abetting claims on this ground as well.") (citations omitted); *id.* at *16 ("[T]here is a dearth of briefing on the adequacy of Plaintiffs' common law fraud allegations as to the third defendant named in Counts I–II, Banco Santander—no doubt due to the page limits imposed by this Court. Therefore, I defer ruling on the issue. Defendants are invited to revisit their argument that Plaintiffs have failed to state a claim for fraud against Banco Santander, either in a renewed motion to dismiss (if Plaintiffs file a third amended complaint) or in conjunction with their proposed forum *non conveniens* motion.").

Although plaintiffs correctly note that the October 14 Opinion concerning *Janus* reversed the May 2 Opinion and May 10 Bench Ruling in part, that decision was solely on the ground that OIS had not made an actionable statement under *Janus*.[143] The October 14 Opinion does not supersede previous rulings concerning Banco Santander's state of mind.  In sustaining the section 20(a) claim against Banco Santander in the May 10 Bench Ruling I concluded that plaintiffs adequately pled that "Banco Santander had actual knowledge of the numerous red flags detailed in the [Courvoisier] memorandum created at its instruction" sufficient the satisfy the "culpable participation requirement" of section 20(a).[144]  This holding is dispositive as to whether Banco Santander acted with "actual knowledge" necessary to sustain an aiding and abetting claim.  Moreover, I also noted that "Santander also directly oversaw OIS's due diligence" and "Santander and OIS were well aware that Madoff's self-custody . . . made it virtually impossible to verify the existence of assets as well as the integrity of the account statements issued by BMIS."[145]

Although the standard for pleading scienter in a fraud claim is higher than pleading a section 20(a) claim, plaintiffs have adequately alleged scienter to

---

[143]    *See In re Optimal U.S. Litig.*, 2011 WL 4908745, at *9.

[144]    5/10/11 Tr. at 12.

[145]    *Id.*

support the common law fraud claim against Banco Santander for the same reasons discussed in the May 10 bench ruling.  As stated previously, the Courvoisier memoranda raised many red flags sufficient to allege scienter.  Although defendants contend that there is no allegation that Banco Santander actually received the memoranda, one can draw a strong inference that Banco Santander did, in fact, receive the memoranda.  Banco Santander requested that the memorandum be created, and it directly oversaw OIS's due diligence.[146] Accordingly, the allegations with respect to the Courvoisier memorandum are sufficient to sustain the fraud claim against Banco Santander based on the statements in the EMs.  I note that there is no allegation that Banco Santander actually knew of Clark's alleged oral misstatement.  Thus, the FAC does not adequately plead that Banco Santander acted with scienter based on Clark's misstatement.

### C.   Pioneer's Claims

Defendants argue that claims by Pioneer for fraud, negligent misrepresentation, and gross negligence should be dismissed because Pioneer has not alleged a compensable injury.  Pioneer never invested in Optimal U.S.  Pioneer seeks compensation for "loss of business," "reputational damage," and "loss of

---

[146]     *See id.*

fees" that it otherwise "would [have] earned had the Pioneer Plaintiffs continued to invest in Optimal U.S."[147]  Defendants contend that these types of losses are not compensable – they are barred by the "out-of-pocket rule" and the economic loss doctrine.  In addition, defendants allege that plaintiffs have failed to plead the "special relationship" required in a negligent misrepresentation claim.

### 1.    Fraud and Negligent Misrepresentation Claims

Because Pioneer did not invest in the Fund and did not suffer any direct losses its claims for fraud and negligent misrepresentation are dismissed. The New York Court of Appeals has held that "[d]amages are to be calculated to compensate plaintiffs for what they lost because of the fraud, not to compensate them for what they might have gained.  Under the out-of-pocket rule, there can be no recovery of profits which would have been realized in the absence of fraud."[148] Applying this doctrine, courts have barred recovery for lost profits, loss of customers, and injury to business reputation.[149]

Plaintiffs attempt to avoid the out-of-pocket rule by arguing that they

---

[147]    FAC ¶¶ 412, 419.

[148]    *Lama Holding Co.*, 88 N.Y.2d at 421.

[149]    *See Kulas v. Adachi*, No. 96 Civ. 6674, 1997 WL 256957, at *10 (S.D.N.Y. May 16, 1997) (no recovery for loss of customers and injury to business reputation); *Spanierman Gallery Profit Sharing Plan v. Arnold*, No. 95 Civ. 4468, 1997 WL 139522, at *3 (S.D.N.Y. Mar. 27, 1997) (no recovery for lost profits).

seek to be made whole for the loss of "quantifiable and non-speculative fees," not recoveries for what *might* have been gained absent the fraud.[150]   In doing so, they rely on caselaw allowing recovery of reputational damages and injury to "career path" in the context of fraudulent inducement of employment.[151]   *Cole v. Kobs & Draft Advertising*, cited by plaintiffs, is distinguishable because in that case the fraudulent statements related directly to the plaintiff's career growth and development.[152]   Here, the statements related to an investment that Pioneer never made and, as a result, suffered no losses.   Plaintiffs' argument that Pioneer would continue to receive fees from its customers but for defendants' fraud is exactly the type of speculative lost profits theory that New York does not recognize for fraud actions.   Such an argument *is* speculative because it is dependent on Pioneer's customers not only maintaining their accounts with Pioneer, but also maintaining their accounts in a manner that would result in Pioneer receiving similar fees.

---

[150]     Opp. Mem. at 25.

[151]     *See Stewart v. Jackson & Nash*, 976 F.2d 86, 87-90 (2d Cir. 1992) (holding that fraudulent inducement to employment was not barred by principle of at-will employment, but not considering damages); *Cole v. Kobs & Draft Adver., Inc.*, 921 F. Supp. 220, 226 (S.D.N.Y. 1996) (sustaining fraud claims seeking reputational damages and damages to "career path").

[152]     *See Cole*, 921 F. Supp. at 223 ("Cole commenced the present action, alleging fraudulent inducement in connection with Fantom's statements that she would be promoted to account director and that she would have 'a great future' if she remained at Kobs rather than accepting JWT Direct's employment offer.").

However, it is likely that any investment would have incurred losses during the financial crisis and resulted in diminished fees for Pioneer.  Because Pioneer has not alleged any out-of-pocket losses resulting from defendants' alleged fraud and negligent misrepresentation – but has only alleged speculative lost profits – Counts XVI and XVII are dismissed.

### 2.    Gross Negligence

In the May 2 Opinion, I held that similar gross negligence claims asserted against OIS and Clark were "derivative because '[e]ach is based on the alleged mismanagement of the [ ] Fund through the failure to conduct adequate due diligence and to discover and act upon red flags.'"[153] Accordingly, I dismissed those claims.[154]  Plaintiffs, in Count XVIII, raise the same allegations that were dismissed as derivative with regards to OIS and Clark.  Thus, for the reasons stated in my May 2 Opinion,[155] Pioneer's claim for gross negligence is a derivative claim properly belonging to the Fund and Pioneer lacks standing to bring such a claim. Count XVIII is dismissed.

## V.    CONCLUSION

---

[153]    *In re Optimal U.S. Litig.*, 2011 WL 1676067, at *14 (quoting *Newman v. Family Mgmt. Corp.*, 748 F. Supp. 2d 299, 315 (S.D.N.Y.2010)).

[154]    *See id.* at *15.

[155]    *See id.* at *14-15.

For the foregoing reasons, defendants' motion to dismiss is granted in part and denied in part. Defendants' motion for dismissal under the doctrine of forum non conveniens is denied. Counts XVI-XVIII are dismissed. Counts I-II and VIII are sustained. The Clerk of the Court is directed to close this motion [Docket No. 66].

The following claims remain in this action: common law fraud and negligent misrepresentation against OIS, Clark, and Banco Santander (Counts I-IV); aiding and abetting fraud against Banco Santander (Count VIII); and federal securities fraud against OIS (Count XIII), Clark (Count XII), and Banco Santander (Count XV).

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:    New York, New York
          December 20, 2011

-48-

**- Appearances -**

**For Plaintiffs:**

Edward W. Miller, Esq.
648 Franklin Avenue, 2nd Floor
Garden City, New York 11530
(516) 280-7377

Alan Ian Ellman, Esq.
Javier Bleichmar, Esq.
Labaton Sucharow, LLP
140 Broadway
New York, New York 10005
(212) 907-0877

Jack Reise, Esq.
Michael L. Greenwald, Esq.
Robbins Geller Rudman & Dowd LLP
120 E. Palmetto Park Road, Suite 500
Boca Raton, Florida 33432-4809
(561) 750-3000

**For Defendants:**

Gustavo J. Membiela, Esq.
Samuel A. Danon, Esq.
Hunton & Williams, LLP
1111 Brickell Avenue
Miami, Florida 33131
(305) 810-2500

Paulo Roberto Lima, Esq.
Shawn Patrick Regan, Esq.
Hunton & Williams, LLP (NYC)
200 Park Avenue, 52nd Floor
New York, New York 10166
(212) 309-1395