```
┌──────────────────────────────────┐
│ USDC SDNY                        │
│ DOCUMENT                         │
│ ELECTRONICALLY FILED             │
│ DOC #: _____          │
│ DATE FILED: __8/10/12__          │
└──────────────────────────────────┘
```

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X
                                                           :
IN RE OPTIMAL U.S. LITIGATION              :     **OPINION AND ORDER**
                                                           :
                                                           :     **10 Civ. 4095 (SAS)**
-----------------------------------------------------------X

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.    INTRODUCTION[1]

This putative class action arises out of plaintiffs' investment in the

Optimal Strategic U.S. Equity Fund ("Optimal U.S." or the "Fund"), which in turn

invested one-hundred percent of its assets with Bernard L. Madoff and his firm,

Bernard L. Madoff Investment Securities LLC ("BMIS").  Plaintiffs allege that

defendants failed to conduct adequate diligence regarding Madoff, ignored "red

flags" that should have alerted them to Madoff's fraud, and made misstatements

and omissions in connection with the sale of Optimal U.S. shares, causing

plaintiffs to lose their investments and allowing defendants wrongfully to collect

management fees.[2]

---

[1]    Familiarity with prior Opinions, in particular the prior Opinion on forum non conveniens, is assumed. *See In re Optimal U.S. Litig.*, 837 F. Supp. 2d 244 (S.D.N.Y. 2011) ("December 20 Opinion").

[2]    Defendants include (1) Optimal U.S.'s investment manager, Optimal Investment Management Services, S.A. ("OIS"); (2) an employee thereof, Jonathan Clark; and (3) OIS's corporate parent, Banco Santander, S.A. ("Banco Santander"). Plaintiffs include (1) Pioneer International Ltd. ("Pioneer"), an investment

-1-

On December 20, 2011, I denied defendants' initial motion for forum

non conveniens.  At that time, the balance of factors was extremely close, and I

noted that the public interest factors did point slightly in favor of dismissal.

However, I denied defendants' motion based primarily on the deference owed to

plaintiffs' choice of forum, the United States' interest in enforcing violations of

federal securities law, and the due diligence efforts conducted in New York.

Defendants now move, for a second time, for dismissal on the grounds of forum

non conveniens.  Since the December 20 Opinion plaintiffs' federal securities law

claims have been dismissed and the parties have undertaken extensive discovery

efforts in Europe.  This dispute now concerns claims, governed by foreign law

under relevant choice-of-law principles, brought by foreign plaintiffs suing mostly

foreign defendants based on alleged misstatements made abroad.  Because the

balance of factors has changed and now point strongly towards dismissal,

---

advisory firm incorporated in the British Virgin Islands; (2) the "Pioneer
Plaintiffs," fifty-six non-U.S. persons and entities who invested in Optimal U.S.
based on advice provided by Pioneer (whose advice was in turn based on
Defendants' misrepresentations); (3) the "Santander Plaintiffs," three foreign
citizens/non-U.S. residents to whom Banco Santander International ("Santander
U.S.") marketed and sold Optimal U.S., and who held their Optimal U.S.
investments in accounts with non-party Santander Bank & Trust, Ltd. in the
Bahamas ("SBT Bahamas" or "SBT"); and (4) Silvana Worldwide Corp.
("Silvana"), a Plaintiff who invested in Optimal U.S. from a non-Santander-
affiliated bank account. *See In re Optimal U.S. Litig.*, 813 F. Supp. 2d 351, 356-57
(S.D.N.Y. 2011) ("May 2 Opinion"); Fourth Amended Complaint ("FAC") ¶ 64.

defendants' motion is now granted.

## II.    APPLICABLE LAW

### A.    Forum Non Conveniens

"[F]ederal courts have the power to dismiss damages actions under the common-law forum non conveniens doctrine . . . in 'cases where the alternative forum is abroad.'"[3]  The "decision to dismiss by reason of forum non conveniens is confided to the sound discretion of the district court."[4]  "'[I]n the determination of a motion to dismiss for forum non conveniens, the court may consider affidavits submitted by the moving and opposing parties.'"[5]

The Second Circuit employs a three-part test established in the seminal case of *Iragorri v. United Technologies Corporation* in addressing

---

[3]    *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 722 (1996) (quoting *American Dredging Co. v. Miller*, 510 U.S. 443, 449 n.2 (1994)).  *Accord Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007).

[4]    *Pollux Holding Ltd. v. Chase Manhattan Bank*, 329 F.3d 64, 70 (2d Cir. 2003) (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 257 (1981)).  *Accord ICC Indus. Inc. v. Israel Disc. Bank, Ltd.*, 170 Fed. App'x 766, 767 (2d Cir. 2006) ("'Where the district court has considered all relevant public and private interest factors, and where its balancing of these factors is reasonable, its decision deserves substantial deference.'") (quoting *Carey v. Bayerische Hypo-Und Vereinsbank*, 370 F.3d 234, 237 (2d Cir. 2004)).

[5]    *Base Metal Trading SA v. Russian Aluminum*, 253 F. Supp. 2d 681, 699 n.13 (S.D.N.Y. 2003) (quoting *Vanity Fair Mills, Inc. v. T. Eaton Co.*, 234 F.2d 633, 645 (2d Cir. 1956)), *aff'd*, 98 Fed. App'x 47 (2d Cir. 2004).

motions to dismiss under the doctrine of forum non conveniens.[6]  "At step one, a court determines the degree of deference properly accorded the plaintiff's choice of forum.  At step two, it considers whether the alternative forum proposed by the defendants is adequate to adjudicate the parties' dispute.  Finally, at step three, a court balances the private and public interests implicated in the choice of forum."[7]

"[A] court reviewing a motion to dismiss for forum non conveniens should begin with the assumption that the plaintiff's choice of forum will stand."[8]  However, "the degree of deference given to a plaintiff's forum choice varies with the circumstances" and "the choice of a United States forum by a foreign plaintiff is entitled to less deference."[9]  In assessing the proper measure of deference,

> [f]actors disfavoring forum non conveniens dismissal "include the convenience of the plaintiff's residence in relation to the chosen forum, the availability of witnesses or evidence to the forum district, the defendant's amenability to suit in the forum district, the availability of appropriate legal assistance, and other reasons

---

[6]     *Iragorri v. United Techs. Corp.*, 274 F.3d 65, 70-75 (2d Cir. 2001) (en banc).

[7]     *Norex Petroleum Ltd. v. Access Indus., Inc.*, 416 F.3d 146, 153 (2d Cir. 2005).  *Accord Abdullahi v. Pfizer, Inc.*, 562 F.3d 163, 189 (2d Cir. 2009).

[8]     *Iragorri*, 274 F.3d at 71.  *Accord Giro, Inc. v. Malaysian Airline Sys. Berhad*, No. 10 Civ. 5550, 2011 WL 2183171, at *5 (S.D.N.Y. June 3, 2011).

[9]     *Iragorri*, 274 F.3d at 71.  *Accord Thai-Lao Lignite (Thailand) Co. v. Government of the Lao People's Democratic Republic*, No. 10 Civ. 5256, 2011 WL 3516154, at *9 (S.D.N.Y. Aug. 3, 2011).

relating to convenience or expense." In contrast, Plaintiffs' choice of forum deserves *minimal deference* where that choice was motivated by "attempts to win a tactical advantage resulting from local laws that favor the plaintiff's case, the habitual generosity of juries in the United States or in the forum district, the plaintiff's popularity or the defendant's unpopularity in the region, or the inconvenience and expense to the defendant resulting from litigation in that forum."[10]

Thus, "the greater the plaintiff's or the lawsuit's bona fide connection to the United States and to the forum of choice and the more it appears that considerations of convenience favor the conduct of the lawsuit in the United States, the more difficult it will be . . . to gain dismissal" whereas "the more it appears that the plaintiff's choice of a U.S. forum was motivated by forum-shopping reasons . . . the less deference the plaintiff's choice commands."[11]

At step two, "the court must consider whether an adequate alternative forum exists."[12] "The defendant bears the burden of establishing that a presently available and adequate alternative forum exists."[13]

---

[10] *Erausquin v. Notz, Stucki Mgmt. (Bermuda) Ltd.*, 806 F. Supp. 2d 712, 724-25 (S.D.N.Y. 2011) (quoting *Iragorri*, 274 F.3d at 72) (emphasis added).

[11] *Palacios v. Coca-Cola Co.*, 757 F. Supp. 2d 347, 352 (S.D.N.Y. 2010) (quotation marks omitted). *Accord Huang v. Advanced Battery Tech., Inc.*, No. 09 Civ. 8297, 2010 WL 2143669, at *3 (S.D.N.Y. May 26, 2010).

[12] *Iragorri*, 274 F.3d at 73.

[13] *Abdullahi*, 562 F.3d at 189.

-5-

> Dismissal is not appropriate if an adequate and presently available alternative forum does not exist. . . . [A] forum may . . . be inadequate if it does not permit the reasonably prompt adjudication of a dispute, if the forum is not presently available, or if the forum provides a remedy so clearly unsatisfactory or inadequate that it is tantamount to no remedy at all.[14]

However, "[a]n alternative forum is adequate if the defendants are amenable to service of process there, and if it permits litigation of the subject matter of the dispute."[15]  "An agreement by the defendant to submit to the jurisdiction of the foreign forum can generally satisfy this requirement, and only on rare occasions will the alternative forum . . . be so unsatisfactory that the forum is inadequate."[16]  Moreover, "[t]he availability of an adequate alternative forum does not depend on the existence of the identical cause of action in the other forum, nor on identical remedies."[17]

"At step three, Defendants must establish that a balancing of the

---

[14]     *Id.*

[15]     *Pollux Holding*, 329 F.3d at 75.  *Accord Turedi v. Coca-Cola Co.*, 343 Fed. App'x 623, 625 (2d Cir. 2009); *Online Payment Solutions Inc. v. Svenska Handelsbanken AB*, 638 F. Supp. 2d 375, 384 (S.D.N.Y. 2009) ("[T]he standard imposed on a defendant to establish such adequacy is not heavy.").

[16]     *BFI Grp. Divino Corp. v. JSC Russian Aluminum*, 298 Fed. App'x 87, 91 (2d Cir. 2008) (quotation marks omitted).

[17]     *Norex Petroleum*, 416 F.3d at 158 (quotation marks omitted).  *Accord PT United Can Co. v. Crown Cork & Seal Co.*, 138 F.3d 65, 74 (2d Cir. 1998).

private and public interest factors tilts heavily in favor of the alternative forum."[18]

In weighing the private and public interests, the Second Circuit employs a list of factors first stated in *Gulf Oil Corp. v. Gilbert*.[19]  "The private interest factors include: (1) the relative ease of access to evidence; (2) the cost to transport witnesses to trial; (3) the availability of compulsory process for unwilling witnesses; and (4) other factors that make the trial more expeditious or less expensive."[20]  "In considering these factors, the court is necessarily engaged in a comparison between the hardships defendant would suffer through the retention of jurisdiction and the hardships the plaintiff would suffer as the result of dismissal and the obligation to bring suit in another country."[21]  However, "the concentration of evidence [overseas] weighs heavily in favor of dismissal."[22]

Moreover, American courts may not be able to "compel unwilling third-party

---

[18]     *Erausquin*, 806 F. Supp. 2d at 726.

[19]     *See Iragorri*, 274 F.3d at 73-74 (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947), *superseded by statute as stated by Gazis v. John S. Latsis (USA) Inc.*, 729 F. Supp. 979, 987 (S.D.N.Y. 1990)).

[20]     *Maersk, Inc. v. Neewra, Inc.*, 554 F. Supp. 2d 424, 453-54 (S.D.N.Y. 2008).

[21]     *Iragorri*, 274 F.3d at 74.

[22]     *Palacios*, 757 F. Supp. 2d at 361.

witnesses to appear in the United States."[23]

"The public interest factors include: (1) settling local disputes in a local forum; (2) avoiding the difficulties of applying foreign law; and (3) avoiding the burden on jurors by having them decide cases that have no impact on their community."[24]  No one factor is dispositive, however, and so, for example, although "this country's interest in having United States courts enforce United States securities laws" is relevant "this interest is not outcome-determinative."[25]  In sum, "[t]he action should be dismissed only if the chosen forum is shown to be genuinely inconvenient and the selected forum significantly preferable."[26]

### B.    Choice of Law

To resolve choice-of-law conflicts in tort cases, New York applies an "interest analysis" to identify the jurisdiction that has the greatest interest in the litigation based on the occurrences within each jurisdiction, or contacts of the parties with each jurisdiction, that "'relate to the purpose of the particular law in

---

[23]    *DiRenzo v. Philip Servs. Corp.*, 294 F.3d 21, 30 (2d Cir. 2002).

[24]    *Maersk*, 554 F. Supp. 2d at 453-54.

[25]    *DiRenzo*, 294 F.3d at 28.  *Accord Allstate Life Ins. Co. v. Linter Grp. Ltd.*, 994 F.2d 996, 1002 (2d Cir. 1993) ("United States courts have an interest in enforcing United States securities laws, [but] this alone does not prohibit them from dismissing a securities action on the ground of forum non conveniens.").

[26]    *Iragorri*, 274 F.3d at 74-75.

conflict.'"[27]

> Under the interest-analysis test, torts are divided into two types, those involving the appropriate standards of conduct, rules of the road, for example and those that relate to allocating losses that result from admittedly tortious conduct . . . such as those limiting damages in wrongful death actions, vicarious liability rules, or immunities from suit.[28]

"Conduct-regulating rules have the prophylactic effect of governing conduct to prevent injuries from occurring."[29]  When such rules are at issue, the law of the place of the tort — commonly known as *lex loci delicti* — "will generally apply because that jurisdiction has the greatest interest in regulating behavior within its borders."[30]   In the end, "[i]f the choice of law analysis leads to the application of foreign law, a court may refuse to apply that law only if its application would be violative of fundamental notions of justice or prevailing

---

[27]    *GlobalNet Financial.com v. Frank Crystal & Co.*, 449 F.3d 377, 384 (2d Cir. 2006) (quoting *Schultz v. Boy Scouts of Am., Inc.*, 65 N.Y.2d 189, 197 (1985)).  *Accord Finance One Pub. Co. v. Lehman Bros. Special Fin., Inc.*, 414 F.3d 325, 337 (2d Cir. 2005) (citation omitted) (explaining that the interest analysis is a "flexible approach intended to give controlling effect to the law of the jurisdiction which, because of its relationship or contact with the occurrence or the parties, has the greatest concern with the specific issue raised in the litigation").

[28]    *GlobalNet Financial.com*, 449 F.3d at 384 (quotation marks and citations omitted).

[29]    *Padula v. Lilarn Props. Corp.*, 84 N.Y.2d 519, 522 (1994).

[30]    *Cooney v. Osgood Mach., Inc.*, 81 N.Y.2d 66, 72 (1993).

concepts of good morals."[31]

## III.   DISCUSSION

### A.   Deference Accorded to Plaintiffs' Choice of Forum

Generally, a foreign plaintiff's choice of forum is accorded less deference, unless the choice of forum is based on "valid reasons, such as convenience."[32]  In the December 20 Opinion on forum non conveniens, I held that plaintiffs' choice of forum was accorded deference.[33]  In doing so, I distinguished four opinions holding that plaintiffs' choice of forum was not accorded significant deference in similar cases involving foreign investors in foreign funds that allegedly suffered losses due to the Madoff Ponzi scheme.[34]  In reevaluating the *Iragorri* factors, I now conclude that plaintiffs' choice of forum is "entitled to

---

[31]     *Curley v. AMR Corp.*, 153 F.3d 5, 12 (2d Cir. 1998) (citing *Brink's Ltd. v. South African Airways*, 93 F.3d 1022, 1031 (2d Cir. 1996)).

[32]     *Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*, 446 F. Supp. 2d 163, 177 (S.D.N.Y. 2006).

[33]     *See Optimal*, 837 F. Supp. 2d at 253-56.

[34]     *See In re Herald, Primeo, & Thema Sec. Litig.*, No. 09 Civ. 289, 2011 WL 5928952 (S.D.N.Y. Nov. 29, 2011); *Erausquin v. Notz, Stucki Mgmt. (Bermuda) Ltd.*, 806 F. Supp. 2d 712 (S.D.N.Y. 2011); *Anwar v. Fairfield Greenwich Ltd.*, 742 F. Supp. 2d 367, 375-78 (S.D.N.Y. 2010) ; *In re Banco Santander Sec.-Optimal Litig.*, 732 F. Supp. 2d 1305, 1336 (S.D. Fla. 2010), *aff'd sub nom. Inversiones Mar Octava Limitada v. Banco Santander S.A.*, No. 10-14012, 2011 WL 3823284 (11th Cir. Aug. 30, 2011) (per curiam).

some, but little, deference."[35]

     *First*, the "convenience of the plaintiff's residence in relation to the chosen forum,"[36] was not a significant factor in my prior analysis.  As I previously noted, "plaintiffs reside all over the world" and "[t]here simply is no forum that is convenient in relation to *all* plaintiffs' residences."[37]  Accordingly, "[w]hile [this factor] do[es] not suggest that New York is preferable to Switzerland . . ., [it] do[es] not raise any inference that plaintiffs' choice of New York was motivated by forum shopping considerations."[38]

     *Second*, "the availability of witnesses or evidence to the forum district"[39] now weighs against according significant deference to plaintiffs' choice of forum.  I previously noted that there was a significant amount of evidence in New York as well as in Europe, and held that this factor did not weigh heavily in either direction.[40]  However, as discovery in this case has progressed, it has become clear that the focus of discovery is in Europe, which weighs against according

---

[35]    *In re Banco Santander Sec.-Optimal Litig.*, 732 F. Supp. 2d at 1336.

[36]    *Iragorri*, 274 F.3d at 72.

[37]    *Optimal*, 837 F. Supp. 2d at 253 (emphasis in original).

[38]    *Id.* at 254.

[39]    *Iragorri*, 274 F.3d at 72.

[40]    *See Optimal*, 837 F. Supp. 2d at 254.

plaintiffs' choice of forum deference.  As of July 16, plaintiffs had noticed or taken

two depositions in New York, while fourteen deposition had been noticed or taken

in Europe.[41]  Moreover, plaintiffs have resisted sitting for depositions in New York

arguing that it would "requir[e] disruptive and expensive international travel for

each Plaintiff."[42]  Finally, the document discovery has been focused abroad –

fourteen letters rogatory have been issued seeking discovery in the United

Kingdom, Ireland, Spain, Switzerland, Netherlands, and Israel.[43]  Plaintiffs have

submitted declarations detailing the scope of relevant evidence located in the

United States.[44]  However, these declarations mainly detail the documentary

evidence relating to diligence efforts in the United States, which does not change

my analysis that the significance of the United States evidence is outweighed by

that located in Europe.

      Although plaintiffs suggest that there is a possibility of deposing

several additional U.S. residents,[45] the focus of their discovery has been in Europe.

---

[41]    *See* 7/16/12 letter from Paulo R. Lima, defendants' counsel, to the Court.

[42]    7/13/12 letter from Javier Bleichmar, plaintiffs' counsel, to the Court.

[43]    *See* 7/16/12 letter at 3.

[44]    *See* 8/6/12 and 8/8/12 Declarations of Javier Bleichmar, plaintiffs' counsel.

[45]    *See* 8/6/12 Declaration of Javier Bleichmar, plaintiffs' counsel, ¶ 6.

As discussed below, several key witnesses are former employees of OIS and not subject to compulsory service to attend a trial in New York.  Accordingly, while in my prior opinion I noted that letters rogatory are an appropriate mechanism for securing testimony and that technological advances make international document production less burdensome,[46] it is now clear that the location abroad of the vast bulk of the evidence weighs against according significant deference to plaintiffs' choice of forum.

*Third*, "the defendant's amenability to suit in the forum district,"[47] as discussed previously, still weighs in favor of according some deference to plaintiffs' choice of forum despite defendants' consent to jurisdiction in Switzerland.[48]  However, I do not weigh this factor heavily because no plaintiff is a U.S. citizen and only one defendant is a U.S. citizen.

*Fourth*, I previously found that there was no indication that plaintiffs' choice of forum was motivated by improper tactical considerations.[49]  Given that the focus of discovery has not been the United States, I am less inclined to infer

---

[46]     *See Optimal*, 837 F. Supp. 2d at 254.

[47]     *Iragorri*, 274 F.3d at 72.

[48]     *See Optimal*, 837 F. Supp. 2d at 254-55.

[49]     *See id.* at 255.

that plaintiffs' choice of forum was motivated by genuine convenience rather than tactical considerations. Indeed, in a prior action based on similar facts brought by many of the same plaintiffs' counsel, the court noted that plaintiffs "acknowledge[d] that their decision to sue in the United States [was], to a considerable extent, based on the availability of advantageous procedural mechanisms such as the class action and contingency fee arrangements."[50] Accordingly, I find that this factor does not favor deference to plaintiffs' choice of forum.

*Fifth*, I previously concluded that there was no indication that defendants were forum shopping.[51]  Plaintiffs now argue that the fact that defendants' Swiss employees requested to be deposed in Spain indicates that defendants are forum shopping.  However, because defendants have corporate headquarters in both Spain and Switzerland, I cannot conclude that their choice of one forum for a handful of depositions and the other for the proposed venue of this lawsuit represents improper forum shopping.

In reweighing the *Iragorri* factors, the locus of discovery counsels that the deference accorded to plaintiffs' choice of forum should be limited.  I had

---

[50]     *In re Banco Santander Sec.-Optimal Litig.*, 732 F. Supp. 2d at 1336.

[51]     *See Optimal*, 837 F. Supp. 2d at 255.

previously distinguished the *Banco Santander* decision, based on a similar case, noting that "plaintiffs here argue that their choice of forum was based on the evidence available in New York."[52]  Given that I now find that plaintiffs' argument has less force, I agree with that court's conclusion that plaintiffs' choice of forum is "entitled to some, but little, deference."[53]

### B.    Adequacy of Switzerland as an Alternative Forum

I previously held that Switzerland was an adequate alternative forum for this action.[54]  Defendants have consented to waive any defenses in a Swiss court arising out of lack of jurisdiction or any applicable statute of limitations, and dismissal is contingent on such a waiver.  Plaintiffs have not raised any argument that changes my prior decision that Switzerland provides an adequate forum.[55]

---

[52]    *See id.* at 256.

[53]    *In re Banco Santander Sec.-Optimal Litig.*, 732 F. Supp. 2d at 1336.

[54]    *See Optimal*, 837 F. Supp. 2d at 256-57.

[55]    I briefly note that the unavailability of the class action mechanism in Switzerland does not render it an inadequate forum.  *See Aguinda v. Texaco, Inc.*, 303 F.3d 470, 478 (2d Cir. 2002) (holding that joinder, where there is no class action mechanism, "is not so burdensome as to deprive the plaintiffs of an effective alternative forum").  While the lack of a class action mechanism may be relevant to the convenience analysis in the private interest factors, this carries little weight when there are no U.S. plaintiffs and the other factors weigh strongly in favor of dismissal.  *See Gilstrap v. Radianz Ltd.*, 443 F. Supp. 2d 474, 488 (S.D.N.Y. 2006).

### C.    Private and Public Interest Factors

### 1.    Private Interests

*First*, I previously held that the "relative ease of access to evidence"[56] did not weigh significantly in either direction.[57]  I noted that certain factors considered by the *Erausquin* and *Banco Santander* courts weighed against the United States as a forum:  all plaintiffs are foreign; and "[o]f the 121 defendants and third-parties plaintiffs believed likely to have discoverable information, thirty-five have Swiss addresses and twenty-three have addresses in other European countries, mainly Ireland.  Only a handful are in New York."[58]

On the other hand, I noted that evidence concerning due diligence efforts was focused in New York.  It is now clear, however, that the focus of discovery is in Europe.  As will be discussed below under the third factor, a number of key witnesses are former employees of defendants and no longer subject to compulsory process to attend a trial in New York.  Thus, the "relative ease of

---

56      *Maersk*, 554 F. Supp. 2d at 453-54.

57      *See Optimal*, 837 F. Supp. 2d at 257-58.

58      *Id.* at 257-58.

access to evidence"[59] weighs in favor of Switzerland over New York.[60]

   *Second*, I previously held that the "cost to transport witnesses to trial"[61] is not a significant factor in the forum non conveniens analysis in this instance.[62] Nothing in defendants' renewed motion changes that conclusion.

   *Third*, I previously held that the "availability of compulsory process for unwilling witnesses"[63] did not weigh heavily in either direction.[64] In doing so, I again relied on the importance of the witnesses located in the United States and the presence of the due diligence team in New York and New Jersey and considered

---

[59]   *Maersk*, 554 F. Supp. 2d at 453-54.

[60]   On August 9, 2012, plaintiffs' counsel sent a letter to the Court attaching the August 6, 2012 Memorandum Decision and Order in *Viking Global Equities LP v. Porsche Automobil Holding SE*, Index No. 650435/11 (Sup. Ct. N.Y. Co. Aug. 6, 2012), arguing that the decision counsels in favor of weighing the New York based diligence evidence heavily and discounting the burden of applying foreign law. However, that case is easily distinguishable because (1) the court "afforded great weight" to plaintiffs' choice of forum; (2) the plaintiffs' "principal places of business [were] in New York"; and (3) the alleged misrepresentations were "purportedly made directly to plaintiffs in New York." *Id.* at 10. For these reasons, none of which exist here, the court held that "New York clearly has a vested interest" in the action. *Id.* at 12.

[61]   *Id.*

[62]   *See Optimal*, 837 F. Supp. 2d at 258.

[63]   *Maersk*, 554 F. Supp. 2d at 453-54.

[64]   *See Optimal*, 837 F. Supp. 2d at 259.

that testimony from other witnesses could be secured through letters rogatory.[65]

However, it now appears that critical testimony will come from defendants' former

employees, who cannot be compelled to appear at trial in New York.  These

witnesses include perhaps the most critical witness in this case – Manuel

Echeverria, former CEO of OIS.  Because of that, I now find that the "availability

of compulsory process for unwilling witnesses"[66] weighs in favor of Switzerland.

  *Fourth*, I previously found defendants' attempt to point to "other

factors that make the trial more expeditious or less expensive"[67] unavailing.[68]  I

continue to find that defendants' arguments concerning foreign law are properly

considered under the public interest factors rather than the private interest factors.

  *Fifth*, plaintiffs argue that the advanced stage of this litigation

counsels against dismissal based on forum non conveniens.  Although plaintiffs are

correct on this point,[69] it is not determinative in this action.  Plaintiffs observe that

---

[65]  *See id.*

[66]  *Maersk*, 554 F. Supp. 2d at 453-54.

[67]  *Id.*

[68]  *See Optimal*, 837 F. Supp. 2d at 259.

[69]  *See Lony v. E.I. DuPont de Nemours & Co.*, 935 F.2d 604, 614 (3d
Cir. 1991) ("[W]henever discovery in a case has proceeded substantially so that the
parties already have invested much of the time and resources they will expend
before trial, the presumption against dismissal on the grounds of *forum non
conveniens* greatly increases.").

extensive discovery has occurred and that this Court has expended a great deal of resources on this case, and this would normally weigh against dismissal.  However, much of that effort was required because of the action's minimal connection to New York.  In the course of five written opinions, thirteen of plaintiffs' eighteen claims have been dismissed.  In particular, the federal securities law claims survived a motion to dismiss based on a tenuous theory, only to be dismissed later when plaintiffs conceded that the transactions did not occur in the United States.  Likewise, the extensive discovery that has occurred does not counsel against dismissal because defendants have consented to permit such discovery to be used in a Swiss proceeding and dismissal is conditioned on plaintiffs' ability to use discovery already obtained in this case when the case is re-filed in Switzerland.[70]  While starting the proceedings anew in Switzerland will cause some procedural delay, such delay will be minimized by the extensive discovery available from this litigation, which is likely much broader discovery than a Swiss court would permit.

Although I previously found that the private interest factors "fail to weigh heavily in either direction," I now find, based on the course of discovery, that private interests in this dispute between foreign plaintiffs and mainly foreign defendants arising from statements made abroad and based on transactions not

---

[70]     *See* Defendants' Reply in Support of Their Renewed Motion to Dismiss Based on *Forum non Conveniens* at 4.

governed by U.S. securities law, weigh in favor of a foreign forum; namely, Switzerland.

### 2.   Public Interests

*First*, I previously found that the fora's relative interests[71] weigh slightly in favor of New York.[72]  In doing so, I distinguished *Banco Santander* and *Erausquin*, which held that the United States interests had been affirmed in the criminal prosecution of Madoff, a Securities and Exchange Commission lawsuit, and numerous lawsuits filed by domestic plaintiffs alleging domestic causes of action relating to the Madoff fraud.[73]  I found that New York had some interest in this case because of an "interest in federal securities fraud claims arising from New York based conduct."[74]  However, plaintiffs' federal securities law claims have subsequently been dismissed.[75]  In addition, the role of the New York based conduct is now less substantial.  While Clark made his alleged misstatements from New York, he did so on a telephone call to Switzerland.  The other alleged

---

[71]   *See Maersk*, 554 F. Supp. 2d at 453-54.

[72]   *See Optimal*, 837 F. Supp. 2d at 259-61.

[73]   *See id.*

[74]   *Id.* at 260.

[75]   *See In re Optimal U.S. Litig.*, — F. Supp. 2d —, No. 10 Civ. 4095, 2012 WL 1988713, at *1 (S.D.N.Y. June 4, 2012).

misstatements emanated from OIS, based in Switzerland, which has a stronger

interest in policing such conduct.  Indeed, a Swiss prosecutor has brought a

criminal action against Echeverria arising out of the same facts at issue in this

litigation.[76]  Given the extensive proceedings in the United States arising out of the

Madoff fraud that have affirmed its interests, and Switzerland's interest in policing

conduct by its corporations and officers, I find that the fora's relative interests now

weigh in favor of Switzerland.  As noted in the prior opinion on forum non

conveniens, the other factors concerning the fora's relative interests do not weigh

heavily in either direction.[77]

   *Second*, I previously acknowledged that the interest in "avoiding the

difficulties of applying foreign law"[78] does weigh in favor of dismissal.[79]  Without

conclusively making a decision on applicable law, I reasoned that it was likely that

foreign law would apply because none of the plaintiffs are located in the United

States.[80]

---

[76] *Procédure Pénale n⁰ P/4010/2009 Franck Berlamont c/Manuel Echeverria.*

[77] *See Optimal*, 837 F. Supp. 2d at 260-61.

[78] *Maersk*, 554 F. Supp. 2d at 453-54.

[79] *See Optimal*, 837 F. Supp. 2d at 261-62.

[80] *See id.*

Plaintiffs have made no further arguments that would indicate New York law can be applied on a classwide basis.  While plaintiffs make a convincing argument that the location of the tort should not be decisive,[81] their arguments do not point in the direction of New York law.  Plaintiffs rely on the due diligence efforts conducted in New York to argue that New York law applies.  However, this lawsuit involves claims that are conduct-regulating rules, which serve to prevent injuries from occurring.[82]  Switzerland has the strongest interest in regulating the conduct of OIS, which issued the alleged misstatements.[83]  Accordingly, as I previously ruled, the difficulties of applying foreign law (to adjudicate claims between foreign plaintiffs and mostly foreign defendants) weigh in favor of dismissal.  While I previously found that the public interest factors weighed slightly in favor of a foreign forum, now that the federal claims are no longer present and exclusively foreign law will govern, I find that the public interest factors weigh heavily in favor of Switzerland.

---

[81]    *See LaSala v. TSB Bank, PLC*, 514 F. Supp. 2d 447, 465-66 (S.D.N.Y. 2007) (reasoning that situations where misconduct in one jurisdiction causes injury in another country present a scenario where the locus of the tort might not align with the jurisdiction with the greatest interest).

[82]    *See Padula v. Lilarn Props. Corp.*, 84 N.Y.2d 519, 522 (1994).

[83]    Although Clark did issue misstatements from New York, these misstatements were made in a telephone call to Switzerland.

### D.    Waiver

Plaintiffs argue that defendants' waived their right to raise a forum non conveniens defense.[84]  This argument is misplaced.  Plaintiffs' argument is based on a New York forum selection clause in an agreement between Santander Central Hispano Investment Securities ("SCHIS") and OIS.  SCHIS was the predecessor to the New York-based Santander subsidiary that employed Clark and the New York analysts who conducted the Madoff diligence.  In connection with those services, OIS submitted to jurisdiction in New York.  However, this language does not require OIS to submit to jurisdiction in New York for claims arising from investments in Madoff's funds, by investors who were not signatories to the agreement between OIS and SCHIS.  Nor is there any indication from the agreement that Optimal U.S. investors were intended third-party beneficiaries.  At most, this agreement shows that OIS agreed to litigate disputes, between the Santander subsidiaries concerning diligence efforts, in New York.  It does not demonstrate any waiver of defendants' right to raise a forum non conveniens defense in a dispute with Optimal U.S. investors.  Nor does it bear on whether New York is the most convenient forum in which to litigate *this* dispute.

## IV.   CONCLUSION

---

[84]    *See* 7/26/12 letter from Javier Bleichmar, plaintiffs' counsel, to the Court.

For the foregoing reasons, defendants' renewed motion for dismissal on grounds of forum non conveniens is granted. Plaintiffs' motion for class certification and appointment of class representatives and class counsel is denied as moot. The Clerk of the Court is directed to close these motions [Docket No. 105][85] and this case.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            August 10, 2012

---

[85]      Defendants' renewed motion for dismissal based on forum non conveniens was raised in defendants' 7/16/12 letter to the Court requesting a pre-motion conference, which I instructed the parties I would treat as a motion, but was not docketed as a motion.

-24-

## - Appearances -

**For Plaintiffs:**

Edward W. Miller, Esq.
648 Franklin Avenue, 2nd Floor
Garden City, New York 11530
(516) 280-7377

Alan Ian Ellman, Esq.
Javier Bleichmar, Esq.
Labaton Sucharow, LLP
140 Broadway
New York, New York 10005
(212) 907-0877

Jack Reise, Esq.
Michael L. Greenwald, Esq.
Robbins Geller Rudman & Dowd LLP
120 E. Palmetto Park Road, Suite 500
Boca Raton, Florida 33432-4809
(561) 750-3000

**For Defendants:**

Gustavo J. Membiela, Esq.
Samuel A. Danon, Esq.
Hunton & Williams, LLP
1111 Brickell Avenue
Miami, Florida 33131
(305) 810-2500

Paulo Roberto Lima, Esq.
Shawn Patrick Regan, Esq.
Hunton & Williams, LLP (NYC)
200 Park Avenue, 52nd Floor
New York, New York 10166
(212) 309-1395