# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| IN RE OPTIMAL U.S. LITIGATION | ) ) ) ) ) | No. 10-cv-4095 (SAS) ECF CASE |

## LEAD PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR RECONSIDERATION OF THE COURT'S DISMISSAL FOR FORUM NON CONVENIENS

EDWARD W. MILLER (EM-8489)
648 Franklin Avenue, 2nd Floor
Garden City, New York 11530
Tel: (516) 280-7377

LABATON SUCHAROW LLP
Javier Bleichmar (JB-0435)
Alan I. Ellman (AE-7347)
140 Broadway
New York, New York 10005
Tel: (212) 907-0700

*Counsel for Lead Plaintiffs, Lead Counsel
for the Class, and Proposed Class Counsel*

ROBBINS GELLER RUDMAN & DOWD LLP
Jack Reise
120 E. Palmetto Park Road, Suite 500
Boca Raton, Florida 33432-4809
Tel: (561) 750-3000

*Proposed Class Counsel*

GREENWALD DAVIDSON PLLC
Michael Greenwald
5550 Glades Road, Suite 500
Boca Raton, Florida 33431
Tel: (561) 826-5477

*Additional Counsel*

## TABLE OF CONTENTS

I.   Introduction ................................................................................................... 1

II.  Argument ........................................................................................................ 2

   A.  The Court Made a Clear Legal Error by Failing to Analyze the Degree of
       Deference Accorded Plaintiffs' Choice of Forum As of the Time Their Lawsuit
       Was Filed ............................................................................................... 2

   B.  The Court Credited Non-Existent Conveniences to Defendants by Restarting in
       Switzerland, While Ignoring Obvious and Devastating Inconveniences the
       Move Would Place Upon Plaintiffs .............................................................. 4

   C.  The Public Interests Do Not Strongly Favor Dismissal ............................... 10

## TABLE OF AUTHORITIES

### Cases

*Bigio v. Coca-Cola Co.*,
  448 F.3d 176 (2d Cir. 2006)................................................................................ 1, 5

*Cromer Fin. Ltd. v. Berger*,
  158 F. Supp. 2d 347 (S.D.N.Y. 2001)..................................................................... 11

*Duha v. Agrium*,
  448 F.3d 867 (6th Cir. 2006) .................................................................................. 7

*Frederiksson v. HR Textron, Inc.*,
  2012 WL 2044588 (2d Cir. June 7, 2012) ........................................................ 2, 3, 4

*Gomez v. Banco Bilbao Vizcaya, S.A.*,
  1993 WL 204990 (S.D.N.Y. June 7, 1993) ........................................................... 11

*Gross v. British Broadcasting Corp.*,
  386 F.3d 224 (2d Cir. 2004)............................................................................. 12, 13

*Henderson v. Metro. Bank & Trust Co.*,
  502 F. Supp. 2d 372 (S.D.N.Y. 2007)..................................................................... 2

*In re Optimal U.S. Litig.*,
  813 F. Supp. 2d 383 (S.D.N.Y. 2011)..................................................................... 2

*In re Ski Train Fire in Kaprun Austria on Nov. 11, 2000*
  499 F. Supp. 2d 437 (S.D.N.Y. 2007)................................................................... 11

*Ingram Micro, Inc. v. Airoute Cargo Express, Inc.*,
  2001 WL 282696 (S.D.N.Y. 2001) ....................................................................... 13

*Iragorri v. United Techs. Corp.*,
  274 F.3d 65 (2d Cir. 2001)............................................................................ 1, 2, 3, 5

*Langsam v. Vallarta Gardens*,
  2009 WL 8631353 (S.D.N.Y. June 15, 2009) ....................................................... 11

*Lopez v Rica Foods*,
  333 F. App'x 462 (11th Cir. 2009) ....................................................................... 10

*Manela v. Garantia Banking*,
  940 F. Supp. 584 (S.D.N.Y. 1996)......................................................................... 7

*Manu Int'l v. Avon Prods.*,
  641 F.2d 62 (2d Cir. 1981) ......................................................................... 10

*Mendes Jr. Int'l v. Banco Do Brasil*,
  15 F.Supp.2d 332 (S.D.N.Y. 1998) .............................................................. 7

*Morrison v. National Australia Bank Ltd.*,
  130 S. Ct. 2869 (2010) ............................................................................. 4, 5

*Norex Petroleum Ltd. v. Access Indus., Inc.*,
  416 F.3d 146 (2d Cir. 2005) ........................................................................ 1

*O'Brien v. Goldstar Tech., Inc.*,
  812 F. Supp. 383 (W.D.N.Y. 1993) ............................................................. 7

*Palacios v. Coca-Cola Co.*,
  757 F. Supp. 2d 347 (S.D.N.Y. 2010) ..................................................... 9, 10

## **Rules**

Federal Rule of Civil Procedure 59(e) ..................................................... 1, 2

Local Rule 6.3 ......................................................................................... 1, 2

## I.    Introduction

"[T]he central purpose of any *forum non conveniens* inquiry" is, as the term suggests, "to ensure that the trial is convenient."  *Norex Petroleum Ltd. v. Access Indus., Inc.*, 416 F.3d 146 (2d Cir. 2005).  Thus, it comes as little surprise that ***even for a foreign plaintiff***, the defendant must prove that "the chosen forum is . . . genuinely inconvenient" to secure *forum non conveniens* ("FNC") dismissal.  *Bigio v. Coca-Cola Co.*, 448 F.3d 176, 178 (2d Cir. 2006) ("[E]ven a foreign plaintiff's decision to sue in a U.S. forum is entitled to some weight," and "even where the degree of deference is reduced, '[t]he action should be dismissed only if the chosen forum is shown to be genuinely inconvenient and the selected forum significantly preferable.'") (quoting *Iragorri v. United Techs. Corp.*, 274 F.3d 65, 74-75 (2d Cir. 2001)).  Simply stated, if a defendant does not carry its burden to show ***real*** problems with discovery and trial in the chosen forum, and ***real*** benefits by moving, a district court's FNC dismissal constitutes clear legal error and grounds for reversal.  *See id.*

Here, the Court's August 10, 2012 Opinion and Order (the "Order") (Dkt. #167) misapplied the governing FNC standards by (1) incorrectly considering facts occurring after the complaint was filed to diminish the level of deference owed to Plaintiffs' choice of forum; and (2) finding inconveniences where there were none and overlooking pivotal considerations in its analysis of "how great would be the inconvenience" for Plaintiffs to restart this case in Switzerland.  *Iragorri*, 274 F.3d at 75.  Specifically, the Court failed to consider the extent to which the lack of compulsory process, language barrier, financial burdens, and tremendous delay attendant to litigation in Switzerland represent potentially fatal inconveniences to Plaintiffs.

The Court's errors, independently and collectively, require reconsideration of the Order under Local Rule 6.3 and Federal Rule of Civil Procedure 59(e) because data that was overlooked might reasonably be expected to alter the conclusion reached by the Court, and in

order to correct clear error and prevent manifest injustice.  *See In re Optimal U.S. Litig.*, 813 F. Supp. 2d 383, 387 (S.D.N.Y. 2011) (Scheindlin, J.) (granting reconsideration).[1]

## II.    Argument

### A.    The Court Made a Clear Legal Error by Failing to Analyze the Degree of Deference Accorded Plaintiffs' Choice of Forum As of the Time Their Lawsuit Was Filed

Step one of the Second Circuit's three-step FNC analysis is a determination of "the degree of deference properly accorded the plaintiff's choice of forum."  *Frederiksson v. HR Textron, Inc.*, 2012 WL 2044588, at *1 (2d Cir. June 7, 2012) (vacating FNC dismissal).  Per *Iragorri*, several factors may be considered in determining the appropriate degree of deference. 274 F.3d at 71-72.  "These factors, however, imply a temporal framework.  That is, they must be analyzed in reference to a distinct point in time: for step-one purposes, that point is the time at which the complaint was filed."  *Frederiksson*, 2012 WL 2044588, at *1.

In the Order, the Court stated that one of the primary reasons behind the denial of Defendants' first FNC motion was "the deference owed to plaintiffs' choice of forum."  Order at 2.  However, as in *Frederiksson*, in conducting its step-one analysis on Defendants' renewed motion, the Court erroneously reassessed the level of deference based on "facts that arose or came to light long after the complaint was filed."  2012 WL 2044588, at *1.  Here, it was only after re-weighing the *Iraggori* convenience factors "as discovery in this case has progressed," and finding that the "focus of discovery is in Europe," that the Court newly concluded "that plaintiffs' choice of forum is entitled to some, but little, deference."  Order at 11-12, and 15.

---

[1] "The standards governing motions to alter or amend judgment pursuant to [Federal] Rule 59(e) and motions for reconsideration or reargument pursuant to Local Rule 6.3 are the same." *Henderson v. Metro. Bank & Trust Co.*, 502 F. Supp. 2d 372, 375 (S.D.N.Y. 2007) (Scheindlin, J.) (granting reconsideration of FNC dismissal).

Because the Court failed to analyze the degree of deference afforded Plaintiffs' choice of forum *as of the time they filed their complaint*, it applied an incorrect legal standard and thus committed clear error in dismissing Plaintiffs' case. *Frederiksson*, 2012 WL 2044588, at \*2 ("By erroneously relying on post-complaint facts to grant only 'some deference' to Appellants' choice of forum, the district court applied an incorrect legal standard and abused its discretion.").

Indeed, Defendants explicitly filed their renewed FNC motion based upon events occurring after the filing of the complaint, namely, the dismissal of federal claims. However, the true basis for the undersigned originally filing this case in New York is clear when viewed through the appropriate prism, *i.e.* the point in time at which the undersigned filed the complaint, May 2010. This case was filed pre-*Morrison v. National Australia Bank Ltd.*, 130 S. Ct. 2869 (2010), and dealt with a fund specially created for the purchase of U.S. securities through a New York-based broker-dealer, with the most direct misrepresentations made to Plaintiffs by Defendant Jonathan Clark, a U.S. citizen and employee of Defendant OIS, who made his statements from the New York offices of OIS.

After *Morrison*, Plaintiffs did not withdraw their federal claims in light of a Santander contract note indicating that the place of purchase of their securities was New York. Defendants then submitted an affidavit representing that the words "New York" had been written in error. That Plaintiffs believed that "WE BOUGHT FOR YOUR ACCOUNT IN: NEW YORK" meant that the purchase had occurred in New York, and not otherwise as claimed by Defendants, was hardly an outrageous position.

Simply stated, Plaintiffs did not improperly utilize questionable federal claims as a pretext to file a case in this Court that did not belong here. Rather, Plaintiffs filed federal claims with a strong jurisdictional basis that became much weaker after *Morrison*, but nevertheless

3

remained viable and merited the further discovery that was conducted prior to their dismissal. Upon reconsideration, Plaintiffs respectfully submit that the deference owed their choice of forum is no less substantial than originally determined.  *See* Dec. 21, 2011 Opinion and Order at 14-22 (Dkt. #87).

However, the Court's error goes beyond the theoretical "level of deference" owed Plaintiffs' selection of forum, since, as discussed below, even at the lowest level of deference, the defendant must prove that "the chosen forum is shown to be genuinely inconvenient" and that the proposed change creates significantly more convenience for the parties.  *Bigio*, 448 F.3d at 178.  As detailed below, the Order identifies no genuine inconvenience for Defendants to complete this case in New York while ignoring the huge and obvious burdens that will be imposed upon Plaintiffs by restarting in Switzerland.

**B.**   **The Court Credited Non-Existent Conveniences to Defendants by Restarting in Switzerland, While Ignoring Obvious and Devastating Inconveniences the Move Would Place Upon Plaintiffs**

**Availability of Compulsory Process.**  The Court found that the private interests weigh in favor of Switzerland due to the supposed "relative ease of access to evidence" provided by the "availability of compulsory process for unwilling witnesses" in Switzerland. Order at 16-18.[2] Specifically, the Order stated "that critical testimony will come from defendants' former employees, who cannot be compelled to appear at trial in New York."  *Id.* at 18.  The Court erred for the following reasons.

First, the Court only identified one such witness, Manuel Echeverria.  The Order did not identify any other former employees.  In the process, the Court overlooked that Defendants,

---

[2]  The Court found the second, fourth and fifth *Iragorri* factors not implicated in this case. Regarding the first *Iragorri* factor, ease of access to evidence, the Court stated that, "the focus of discovery is in Europe," but for specifics referred the reader to the Court's analysis of factor three, compulsory service.  Order at 17.

4

despite ample opportunity, never pursued a letter rogatory to obtain and preserve Mr. Echeverria's testimony. *Id.* at 17-18. Defendants themselves were careful not to claim that they had any interest in his testimony when they referred to him as a "critical witness" ***for Plaintiffs***. *See* Defs. July 30, 2012 Reply at 5 ("The emphasis that Plaintiffs have placed on both witnesses cannot be overstated."). However, Plaintiffs also elected not to pursue a letter rogatory for Mr. Echeverria, nor did they intend to call him as a witness at trial for an obvious reason.

While Plaintiffs do not dispute that Mr. Echeverria stands at the center of Defendants' fraud, Mr. Echeverria will not offer any relevant testimony because, as Defendants point out, he is the subject of a Swiss criminal action stemming from the Optimal U.S. Fund fraud. *See id.* at 2. Swiss law, like U.S. law, provides an individual with a right against self-incrimination. *See* Decl. of Titus Van Stiphout ("Van Stiphout Decl."), dated Aug. 24, 2012, at 3. Thus, a Swiss court cannot compel Mr. Echeverria to give "critical testimony," a point overlooked by the Court.

Second, Defendants identified three other former employees for whom they claim it is necessary to move the case to Switzerland in order to gain compulsory process over unwilling witnesses. *See* Defs. July 30, 2012 Reply at 5 and 5, n.8. Defendants' contention lacks merit, and, perhaps for this reason, the Court did not even rely on it in the Order. The first witness, Mr. Burnaby-Atkins, could hardly be described as an unwilling witness. He resides in the U.K. and,

████████████████████████████████████████████████████

████ Burnaby-Atkins Dep. Tr. 297:21-298:1. In any event, as a U.K. resident, he is not subject to compulsory process in Switzerland. *See* Van Stiphout Decl. at 3.

The other witnesses, Ms. Courvoisier (who left OIS in 2005, leaving her critical evidence in the form of self-explanatory memoranda which OIS ignored, and who as an attorney would all

but certainly assert attorney-client privilege) and Mr. Prince (who played a minor role of little interest to Plaintiffs), were never the subject of any discovery efforts by the parties.  Moreover, had Defendants issued letters rogatory for these two individuals and could now claim to need their testimony, a party seeking to transfer the case on the grounds that individuals are unwilling to testify must prove that such individuals are in fact unwilling to testify and what the substance of that testimony would be.[3]   Here, Defendants made no effort to prove either and have thus failed to carry their burden.  If Defendants' failure to serve letters rogatory on these witnesses does not reflect a lack of desire for their testimony, it reflects the lack of any need to compel it.

Third, while there is no real problem with the lack of compulsory process on former OIS employees that must be cured by moving the case from New York, moving this case to Switzerland does prevent both parties from obtaining deposition and/or trial testimony of numerous individuals, including the following ***U.S. residents***: (1) Claire Ikeda-Thew (noticed for deposition by both parties);[4] (2) Bernard Madoff (Court order granting Defendants' request for deposition); (3) Aviram Nahum (noticed by Defendants); (4) Juan Andres Yanes (noticed by

---

[3] *See Mendes Jr. Int'l v. Banco Do Brasil*, 15 F.Supp.2d 332, 339 (S.D.N.Y. 1998) ("Defendants have not identified any potential witnesses who would be unwilling to testify….Bare allegations by movants who carry the burden of proof on this motion are insufficient to tip the balance of convenience in their favor.") (citing *O'Brien v. Goldstar Tech., Inc.*, 812 F. Supp. 383, 387 (W.D.N.Y. 1993) (party seeking to transfer case on ground that witnesses are unwilling or unable to testify must prove that such witnesses are in fact unwilling to testify and indicate what the substance of their testimony would be)).  Indeed, these three witnesses' status as former employees "supports an inference that [they] would be willing" to testify, *Duha v. Agrium*,448 F.3d 867, 877 n.7 (6th Cir. 2006), as does Mr. Burnaby-Atkins' ████████ ██████████   *See also Manela v. Garantia Banking*, 940 F. Supp. 584, 593 n.14 (S.D.N.Y. 1996) ("Some courts have presumed, in the absence of evidence to the contrary, that former employees are willing to testify on behalf of their former employers.").  Thus, the Court erroneously equated "former employees" with "unwilling witnesses."

[4] Ms. Ikeda-Thew is an important witness to Plaintiffs because ████████████████ ████████████████████   *see* Ex. 1, ████████████████ ████████   *See* Ex. 2.  Due to her lack of ties to Defendants, Ms. Ikeda-Thew is a non-partisan whose testimony is completely credible.  While she is subject to compulsory process in the U.S., she is not in Switzerland.

Plaintiffs); (5) Jorge Moran (noticed by Plaintiffs);[5] and (6) the trial testimony of Balkir Zihnali, who was deposed in New York.[6]  Thus, as illustrated by the attached chart, dismissing this case in favor of Switzerland places a single peripheral witness, Rafael Rodriguez, within compulsory process at the cost of eliminating ten witnesses who have yet to be deposed.  *See* Ex. 3 at 1.

Finally, the attached chart shows that the remaining depositions are primarily in the U.S., and that past depositions have been roughly equally split between the U.S. and a variety of European countries (with none in Switzerland), all contrary to the Court's conclusion that the clear focus of discovery is Europe.[7]

**Ease of Access to Evidence.**  In granting Defendants' renewed FNC motion, the Court not only overlooked the above negative consequences to Plaintiffs, but also simply ignored several much larger and more obvious hardships.  Instead of analyzing the cost, time delays, and

---

[5] Unlike a New York court, a Swiss court ***cannot*** compel the testimony of unwilling managing agents or current employees of Defendants who reside in the U.S. or Spain (*see* Van Stiphout Decl. at 3), including certain current Banco Santander employees with critical testimony for Plaintiffs.  For instance, Mr. Yanes ███████████████████████████  Mr. Moran was ████████████████████████████████████████████████████████████  OIS 30(b)(6) Dep. Tr. at 35:1-5; 79:9-13. ████████████████████████████████████████████████ Santander 30(b)(6) Dep. Tr. at 83:25-84:2; 91:17-92:3.  The testimony of these witnesses goes to the heart of Plaintiffs' allegations that "connect Banco Santander to the allegedly fraudulent statements and omissions in the EMs" and "[which] lead to a plausible inference that [it] actively oversaw the [due diligence] process…"  Dec. 21, 2011 Opinion and Order at 41.  Likewise, a Swiss court, unlike a New York court, cannot compel the testimony of the four Santander directors who reside in Spain and who are alleged to have knowledge of red flags. *See* Ex. 3 at 2.

[6] As an initial and critical error underlying the Order, the Court found that, "[a]s of July 16, plaintiffs had ***noticed*** or taken two depositions in New York, while fourteen depositions had been noticed or taken in Europe."  Order at 12 (emphasis added).  This is factually incorrect. The Court overlooked Plaintiffs' Declaration that explained that Plaintiffs had noticed or taken nine depositions of U.S. witnesses (ten including Defendant Clark) – not two.  *See* Bleichmar Decl., dated Aug. 6, 2012, at ¶4-7; *see also* Ex. 3.

[7] The Court also overlooked the document discovery already obtained from U.S. witnesses. While the Court cited the fourteen letters rogatory that had been issued seeking documents from foreign witnesses, *see* Order at 12, the Court overlooked the seventeen document subpoenas that Plaintiffs issued to U.S.-resident witnesses.  *See* Bleichmar Decl., dated Aug. 6, 2012, at ¶ 8.

linguistic complications imposed upon Plaintiffs by changing both court and country mid-case, the Order simply notes that the evidence acquired here can be used there.  Order at 19.  It is hardly so simple.

In Switzerland, there would be enormous costs in translating the English discovery obtained here to a language used by a Swiss court, namely French.  *See* Van Stiphout Decl. at 2.  This complication and resulting financial burden was ignored in the Order, partly because of the Court's improper comparison between the U.S. and "Europe" for purposes of its private interests analysis.  "Europe" was not presented – nor could it have been presented – as an adequate alternative forum for this litigation.  While the Court cites *Palacios v. Coca-Cola Co.*, 757 F. Supp. 2d 347, 361 (S.D.N.Y. 2010), to support FNC dismissal where evidence is concentrated "overseas," *see* Order at 7, in actuality, the *Palacios* court transferred the plaintiffs' action to Guatemala because it was obvious that "the bulk of the relevant evidence" was located ***in Guatemala***.  *Palacios*, 757 F. Supp. 2d at 362.  Of particular significance to the *Palacios* court was the avoidance of translating to English all Spanish language testimony and relevant documents, which would have been costly and burdensome.  *See id.* at 362.[8]  Here, such translation costs will only be necessary ***as a result*** of transfer.

Of the total documents produced by Defendants (consisting of 4.4 million pages),

---

[8]  Similarly, in *Lopez v Rica Foods*, 333 F. App'x 462, 464 (11th Cir. 2009), FNC was granted at an advanced stage in the litigation only because it had emerged that the alternate forum had the dominant common language of the documents and witnesses.  Here, it is precisely the opposite since the dominant common language of the documents, parties, and witnesses is English.  *See Manu Int'l v. Avon Prods.*, 641 F.2d 62, 65 (2d Cir. 1981) ("First, there is the language issue . . . All of the other individuals whose names have been mentioned as possible witnesses . . . speak English. The documents which have come to light to date are all in English. Thus, the translation problem would appear to be much less serious in New York than in Taiwan.").  Indeed, Plaintiffs' counsel has not found a single case dismissing a lawsuit from a U.S. forum sharing the dominant common language of the documents and witnesses in favor of a foreign forum that did not share the dominant common language of the documents and witnesses.

approximately 148,000 are in English (3.6 million pages), 30,000 are in Spanish (750,000 pages), and only 3,000 are in French (40,000 pages).  Assuming conservatively that only 100,000 pages (or less than 3%) of the English documents would need to be translated for the Swiss proceedings, which does not take into account any deposition transcripts (which are all in English) or costs of translating witness testimony (or live translation of the trial for the benefit of the Plaintiffs), the estimated cost of translation is ***$4 million***.  *See* Ex. 4.  "It would indeed be 'incomprehensibly cumbersome, incredibly costly and time-consuming' to attempt to obtain and translate all of this testimony and tangible evidence."  *In re Ski Train Fire in Kaprun Austria on Nov. 11, 2000*, 499 F. Supp. 2d 437, 448-449 (S.D.N.Y. 2007) (Scheindlin, J.); *see also Langsam v. Vallarta Gardens*, 2009 WL 8631353, at *9-10 (S.D.N.Y. June 15, 2009) ("We agree that the cost of document translation from English to Spanish and the potential for the delay of proceedings during the translation favor retention of this case.").  Because the aggregate amount of Plaintiffs' claims is approximately $8 million, *see* Pls. Certifications (Dkt # 46 and 90), and the median amount of each Plaintiff's claim is approximately $65,000, *see id.*, the cost of translation alone makes litigation in Switzerland economically unviable.[9]

The Court also assumed, without holding Defendants to meet their burden, that the recommencement of the proceedings in Switzerland would cause no material delay.  If Plaintiffs immediately recommence this case in Switzerland, it would take approximately three years until the case is decided, *see* Van Stiphout Decl. at 3-4, obviously resulting in a substantial delay.  *See Cromer Fin. Ltd. v. Berger*, 158 F. Supp. 2d 347, 355-56 (S.D.N.Y. 2001) (foreign court's

---

[9]  In addition, Switzerland does not allow for contingency fee arrangements, *see* Van Stiphout Decl. at 4, a private interest factor that makes litigation there even more economically unviable. *See Gomez v. Banco Bilbao Vizcaya, S.A.*, 1993 WL 204990 at *3 (S.D.N.Y. June 7, 1993) ("The lack of a contingency fee system in the alternative forum is, to the extent that it erects a pecuniary barrier to the plaintiff's commencement of a lawsuit there, a significant, though not determinative, factor in *forum non conveniens* analysis.").

disposition within two years of recommencement constituted a material delay weighing against dismissal).[10]  In sum, recommencing this action in Switzerland will not save Defendants from any "genuine inconveniences" associated with completing this case in New York but will cause tremendous inconveniences to Plaintiffs.

### C.     The Public Interests Do Not Strongly Favor Dismissal

The Court incorrectly concluded that the public interest factors tilted "strongly" in favor of Switzerland.  In addition to overlooking the significance of the U.S.-based witnesses and conduct, the Court incorrectly relied on its holding that Plaintiffs' claims were governed by Swiss law to find that the public interest factors tilted "strongly" in favor of Switzerland.  *See* Order at 20-22.  In *Gross v. British Broadcasting Corp*., 386 F.3d 224, 233-234 (2d Cir. 2004), the Second Circuit held that the public interest factors tilted only "somewhat … but not significantly" in favor of the foreign forum.  In *Gross*, like this case, the plaintiff did not allege claims under federal law.  Also, the plaintiff's claims were governed by foreign (English) law, "which suggest some preference for England," but "the district court did not comment on the application of English law, and we do not believe application of such law creates a burden on the court."  *Id*.[11]  In *Gross*, the plaintiff was from New York and the defendant was from the United Kingdom, "so each forum can claim a connection to one of the parties," *id*. at 234, as in this case. Accordingly, the Second Circuit held, "[o]verall the public interest factors may tip somewhat in favor of England, but not significantly.  Once again, this is insufficient to support dismissal."  *Id*.

---

[10]  The Court minimized the procedural delay of starting the proceedings anew in Switzerland because of "the extensive discovery available from this litigation."  Order at 19.  However, the availability of this action's discovery is assumed by the Plaintiffs' expert's estimated timeframe of three years.  *See* Van Stiphout Decl. at 3-4.

[11]  Here, Defendants "have not demonstrated that the application of [Swiss] law would be difficult."  *Ingram Micro, Inc. v. Airoute Cargo Express, Inc*., 2001 WL 282696, at *5 (S.D.N.Y. 2001) (Scheindlin, J.).

Date:  August 28, 2012

Respectfully submitted,

*Edward J. Miller*

**EDWARD W. MILLER** (EM-8489)
648 Franklin Avenue, 2nd Floor
Garden City, New York 11530
Tel: (516) 280-7377
edmilleresq@aol.com

**LABATON SUCHAROW LLP**
Javier Bleichmar (JB-0435)
Alan I. Ellman (AE-7347)
140 Broadway
New York, New York 10005
Tel: 212-907-0700
jbleichmar@labaton.com
aellman@labaton.com

*Counsel for Lead Plaintiffs, Lead Counsel for
the Class, and Proposed Class Counsel*

**ROBBINS GELLER RUDMAN
& DOWD LLP**
Jack Reise (*pro hac vice*)
120 E. Palmetto Park Road, Suite 500
Boca Raton, Florida 33432-4809
Tel: (561) 750-3000
jreise@rgrdlaw.com

*Proposed Class Counsel*

**GREENWALD DAVIDSON PLLC**
Michael Greenwald (*pro hac vice*)
5550 Glades Road, Suite 500
Boca Raton, Florida 33431
Tel: (561) 826-5477
mgreenwald@mgjdlaw.com

*Additional Counsel*

## CERTIFICATE OF SERVICE

I hereby certify that on August 28, 2012, I electronically served the foregoing document

on Defendants' counsel Gustavo J. Membiela, Hunton & Williams LLP, 1111 Brickell Avenue,

Suite 2500, Miami, Florida 33131, at gmembiela@hunton.com.


By: _____
EDWARD W. MILLER (EM-8489)
648 Franklin Avenue, 2nd Floor
Garden City, New York 11530
Tel: (516) 280-7377
edmilleresq@aol.com

12